**REED SMITH LLP**
Terence N. Hawley (State Bar No. 179106)
thawley@reedsmith.com
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Phone:  (415) 543-8700
Fax:  (415) 391-8269

Gerard M. Stegmaier (*pro hac vice*)
gstegmaier@reedsmith.com
Mark D. Quist (*pro hac vice*)
mquist@reedsmith.com
1301 K Street, N.W., Suite 1000 - East Tower
Washington, DC 20005
Phone:  (202) 414-9200
Fax:  (202) 414-9299

James L. Rockney (*pro hac vice*)
jrockney@reedsmith.com
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Phone:  (412) 288-4046
Fax:  (202) 288-3063

*Attorneys for Defendant AddShoppers, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| OATHER MCCLUNG, ABBY LINEBERRY, TERRY MICHAEL COOK and GREG DESSART, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADDSHOPPERS, INC., PRESIDIO BRANDS, INC., PEET'S COFFEE, INC., and JOHN DOE COMPANIES.<br><br>Defendants. | Case No. 3:23-cv-01996-VC<br><br>**DEFENDANT ADDSHOPPERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  July 27, 2023<br>Time:  10:00 AM<br>Place:  San Francisco Courthouse<br>  Courtroom 4 – 17th Floor<br>Judge:  Hon. Vince Chhabria |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 27, 2023, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4, 17th Floor, of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Vince Chhabria, Defendant AddShoppers, Inc. ("AddShoppers"), by and through counsel, will and hereby does move, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), for an order dismissing Plaintiffs' Class Action Complaint (ECF No. 1). AddShoppers bases this Motion on the grounds discussed in the Memorandum of Points and Authorities in Support of this Motion, the complete files in this action, the arguments of counsel, and other further matters as this Court may consider.

WHEREFORE, AddShoppers respectfully requests that the Court issue an order GRANTING this Motion with prejudice and awarding AddShoppers such other and further relief as the Court deems just.

## STATEMENT OF ISSUES TO BE DECIDED

Should the Court dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure?

## RELIEF REQUESTED

AddShoppers requests that the Court dismiss the Complaint with prejudice.

DATED:  June 20, 2023                    **REED SMITH LLP**


By: /s/ *Terence N. Hawley*
Terence N. Hawley


Attorney for Defendant
ADDSHOPPERS, INC.

1

**TABLE OF CONTENTS**

2

Page

3   I.    INTRODUCTION ........................................................................................... 1

4   II.   STATEMENT OF RELEVANT FACTS ...................................................... 3

5   III.  LEGAL STANDARD .................................................................................... 4

6   IV.   ARGUMENT .................................................................................................. 5

7         A.    Failure to Plead Personal and Subject Matter Jurisdiction ......................... 5

8               1.    No Conduct Expressly Aimed at the Forum (Personal Jurisdiction). .......... 5

9               2.    Failure to Plead Concrete Harm (Article III Standing). ............................... 7

10        B.    Plaintiffs' Statutory Claims Fail to State a Claim ......................................... 8

11              1.    The Rule of Lenity Discourages Extending Penal Statutes to Apply to
12                    Conduct that Federal and California Law Otherwise Expressly Permit. ...................... 8

13              2.    Plaintiffs Fail to Plead Wiretapping Under CIPA § 631 (Count 1). ......................... 10

14              3.    Plaintiffs Fail to State a CDAFA Claim (Count 2). ....................................... 11

15              4.    Plaintiffs' Statutory Larceny and Unfair Competition Claims Fail Because
                      "Personal Information" Is Not "Property" (Counts 3 and 4). ................................... 12

16

17        C.    Plaintiffs' Common Law Claims Fail as a Matter of Law ........................................ 13

18              1.    Plaintiffs' Invasion of Privacy Claim Fails Because They Do Not Allege a
                      Reasonable Privacy Expectation or Highly Offensive Conduct (Count 9)............... 13

19              2.    Plaintiffs Fail to Allege a Trespass to Chattels Claim (Count 5)............................. 14

20              3.    Plaintiffs' Unjust Enrichment Claim Fails to State a Claim (Count 6)...................... 14

21        D.    Plaintiffs' Doe Counts (Counts 7 and 8) Fail to State a Claim ................................. 15

22        E.    Plaintiffs' Consent to AddShoppers' Clients' Privacy Policies Bars
23              Plaintiffs' Corresponding Claims Against AddShoppers .......................................... 15

24   V.   CONCLUSION ............................................................................................... 15

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*AMA Multimedia, LLC v. Wanat*,

5

    970 F.3d 1201 (9th Cir. 2020) ...................................................................................6, 7

6

*Archer v. United Rentals, Inc.*,

    195 Cal. App. 4th 807 (2011) ........................................................................................12

7

*Ashcroft v. Iqbal*,

8

    556 U.S. 662 (2009)........................................................................................................5

9

*Astiana v. Hain Celestial Grp., Inc.*,

10

    783 F.3d 753 (9th Cir. 2015) .........................................................................................15

11

*Bartnicki v. Vopper*,

    532 U.S. 514 (2001).........................................................................................................9

12

*Bell Atl. Corp. v. Twombly*,

13

    550 U.S. 544 (2007).................................................................................................5, 10

14

*Cahen v. Toyota Motor Corp.*,

15

    717 F. App'x 720 (9th Cir. 2017) ...................................................................................8

16

*Daimler AG v. Bauman*,

    571 U.S. 117 (2014).........................................................................................................5

17

*Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*,

18

    956 F.3d 589 (9th Cir. 2020) ..........................................................................................7

19

*ESG Cap. Partners, LP v. Stratos*,

20

    828 F.3d 1023 (9th Cir. 2016) .......................................................................................15

21

*Folgelstrom v. Lamps Plus, Inc.*,

    195 Cal. App. 4th 986 (2011) ..........................................................................7, 13, 14

22

*Goldstein v. Costco Wholesale Corp.*,

23

    559 F. Supp. 3d 1318 (S.D. Fla. Sept. 9, 2021) ..............................................................7

24

*Hernandez v. Hillsides, Inc.*,

    47 Cal. 4th 272 (2009) ...................................................................................................13

25

*Hill v. NCAA*,

26

    7 Cal. 4th 1 (1994) .........................................................................................................13

27

*IMDB.com v. Becerra*,

28

    962 F.3d 1111 (9th Cir. 2020) ........................................................................................9

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT ADDSHOPPERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 3:23-CV-01996

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
802 F. Supp. 2d 1070 (N.D. Cal 2011) ....................................................................15

*In re Doubleclick Inc. Priv. Litig.,*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..............................................................11, 13

*In re Facebook Priv. Litig.,*
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) ...................12

*In re Google Android Consumer Priv. Litig.,*
No. 11-MD-02264-JSW, 2013 U.S. Dist. LEXIS 42724 (N.D. Cal. Mar. 26, 2013).............12

*In re Google, Inc. Priv. Policy Litig.,*
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................13

*In re Google, Inc. Priv. Policy Litig.,*
No. C-12-01382-PSG, 2013 U.S. Dist. LEXIS 171124 (N.D. Cal. Dec. 3, 2013) ...................8

*In re Zoom Commc'ns Priv. Litig.,*
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .....................................................................11

*Intel Corp. v. Hamidi,*
30 Cal. 4th 1342 (2003) .............................................................................................14

*Jacome v. Spirit Airlines,*
No. 2021-000947-CA-01, 2021 Fla. Cir. LEXIS 1435 (Fla. 11th Cir. Ct. June 17,
2021) .....................................................................................................................10, 11

*Katz-Lacabe v. Oracle Am., Inc.,*
No. 22-cv-04792-RS, 2023 U.S. Dist. LEXIS 61306 (N.D. Cal. Apr. 6, 2023).....................15

*LaCourt v. Specific Media, Inc.,*
No. SACV-10-1256, 2011 U.S. Dis. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ......................14

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.),*
715 F.3d 716 (9th Cir. 2013) ........................................................................................4

*Licea v. Cinmar, LLC,*
No. CV 22-6454-MWF, 2023 U.S. Dist. LEXIS 38233 (C.D. Cal. Mar. 7, 2023) ................10

*Low v. LinkedIn Corp.,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................13

*M.K. v. Google, LLC,*
No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 51895 (N.D. Cal. Mar. 27, 2023) .............12

*Martinez v. Aero Caribbean,*
764 F.3d 1062 (9th Cir. 2014) .......................................................................................5

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

iii

*Massie v. Gen. Motors Co.*,
   No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945 (E.D. Cal. May 25, 2021) ................7

*Med. Lab. Mgmt. Consultants v. ABC*,
   306 F.3d 806 (9th Cir. 2002) .................................................................................................13

*Nat'l Pork Producers Council v. Ross*,
   143 S. Ct. 1142 (2023)............................................................................................................9

*Packingham v. North Carolina*,
   582 U.S. 98 (2017)..................................................................................................................2

*Parziale v. HP, Inc.*,
   No. 19-cv-05363-EJD, 2020 U.S. Dist. LEXIS 179738 (N.D. Cal. Sept. 29, 2020)...............14

*Pike v. Bruce Church*,
   397 U.S. 137 (1970)................................................................................................................9

*Reno v. ACLU*,
   521 U.S. 844 (1997)................................................................................................................2

*Rowan v. U.S. Post Off. Dep't*,
   397 U.S. 728 (1970)............................................................................................................2, 8

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (Ct. App. 2014)..................................................................................15

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................................................6, 13

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..................................................................................................4

*Soc'y for Human Res. Mgmt. v. Zrowth LLC*,
   No. 21-cv-07684-VC, 2022 U.S. Dist. LEXIS 71203 (N.D. Cal. Apr. 18, 2022)
   (Chhabria, J.)........................................................................................................................5, 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...........................................................................................................5, 7

*Tekle v. United States*,
   511 F.3d 839 (9th Cir. 2007) ..................................................................................................8

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
   813 F. App'x 316 (9th Cir. 2020) ...........................................................................................6

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)......................................................................................................5, 7

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) ........................................................................9, 10, 11

*Valenzuela v. Keurig Green Mt., Inc.*,
  No. 22-cv-09042-JSC, 2023 U.S. Dist. LEXIS 95199 (N.D. Cal. May 24, 2023) .................10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................6

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................5

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...............................................................12

**Statutes**

15 U.S.C. § 7701 ...........................................................................................................2

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .................................................................4, 12

Cal. Civ. Code § 1798.100 ........................................................................................2, 10

Cal. Civ. Code § 1798.120 ..............................................................................................11

Cal. Civ. Code § 1798.140 ..............................................................................................11

Cal. Penal Code § 484 .............................................................................................4, 9, 12

Cal. Penal Code § 496 .............................................................................................4, 9, 12

Cal. Penal Code § 502 .....................................................................................3, 4, 9, 11, 12

Cal. Penal Code § 631 .......................................................................................3, 4, 9, 10

**Other Authorities**

Restatement (Second) of Torts § 218 cmt. e. (Am. L. Inst. 1965) ...............................14

U.S. Const. art. I., Sec. 8., cl. 3 ......................................................................................9

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT ADDSHOPPERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 3:23-CV-01996

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

AddShoppers sends emails with money-saving offers to consumers who visit its clients' websites.  Emails are sent without regard to the clients' or the consumers' locations.  The email contents reflect information gleaned from consumers' website visits.  Federal and California law expressly permit and regulate this information collection and the resulting email communications. Combined, they lay out a comprehensive legal framework that delineates consumers' reasonable expectations of privacy and AddShoppers' corresponding obligations, while respecting First Amendment and other constitutional interests.  This framework, notably, does not contain a relevant private right of action.  Nor does it create any basis for Plaintiffs' damages claims in this case. Plaintiffs may feel surprised that they received these emails, but their indignation is not actionable. More fundamentally, Plaintiffs do not adequately allege a basis for the assertion of personal jurisdiction over AddShoppers:  the only relevant California connection is that two of the named Plaintiffs claim to be California residents who accessed websites from and received emails in California.  But it is the purposefully directed actions of AddShoppers towards California (or lack thereof), not Plaintiffs' actions and place of residence, that must drive the jurisdictional analysis. Because Plaintiffs fail to show that AddShoppers expressly aimed intentional conduct at California, the Complaint must be dismissed.

In addition to failing to demonstrate personal jurisdiction, Plaintiffs' allegations do not confer Article III standing or amount to a well-pleaded cause of action under the common law or the statutes cited in the Class Action Complaint ("Complaint" or "Compl.").  Plaintiffs seek to reimagine statutory and common law causes of action in order to create a vehicle for seeking relief.  These efforts, even if well-intentioned, would upset the careful balance between privacy and open communication struck by Federal and California law.  Plaintiffs' theories are ultimately untenable.  First, Plaintiffs assert rights that cannot be squared with existing, comprehensive privacy laws or any recognized right to privacy.  Second, Plaintiffs' novel interpretations would unduly burden First Amendment interests and interstate commerce, violate the due process principles underlying the rule of lenity, undermine the gatekeeping role of federal courts, and infringe related constitutional protections.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Even if the Court could hear this matter, Plaintiffs ground their theory of recovery on non-

2   existent privacy (and information-property) rights.  Their overreaching construction rests on two false

3   assumptions:  First, they assert an absolute right to prohibit commercial emails absent express

4   permission.  Plaintiffs have no such right, and the rights they do have are statutorily circumscribed

5   on First Amendment grounds.  Second, Plaintiffs claim an absolute right to prohibit a website from

6   collecting personal information about them and sharing it with the website's vendors and service

7   providers.  But California law provides consumers only a right to notice and a limited opportunity to

8   control certain third-party disclosures.  It does not provide an absolute, exclusive right to control all

9   collected information and its use.  Plaintiffs ask the Court to invent legal rights that exceed the

10  carefully-considered requirements of the federal CAN-SPAM Act of 2003, 15 U.S.C. § 7701 *et seq.*

11  and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq., as amended* ("CCPA").

12  If Plaintiffs' rendering of the law were accepted, it would mean that businesses could comply with

13  CAN-SPAM and the CCPA and still be subject to criminal and tort liability for the same conduct—

14  an unworkable result and an unintended legal conflict.

15  At the pleading stage, Plaintiffs' factual allegations must be accepted as true, even if they

16  falsely portray AddShoppers.  Yet Plaintiffs cannot rewrite the law.  There is no right against

17  receiving commercial messages in the first place, and for good reason.  Commercial mailers have a

18  First Amendment-protected right to communicate, even if that sometimes gives way to a recipient's

19  right to "giv[e] notice that he wishes no further mailings from that mailer."  *Rowan v. U.S. Post Off.*

20  *Dep't*, 397 U.S. 728, 736-37 (1970) (a "mailer's right to communicate must stop at the mailbox").

21  This balanced approach has stood since before the Internet and remains vital.  *See Packingham v.*

22  *North Carolina*, 582 U.S. 98, 104-05 (2017); *Reno v. ACLU*, 521 U.S. 844, 851 (1997).

23  AddShoppers fulfills its obligations under CAN-SPAM and the CCPA and only works with

24  companies who agree to do the same.  ***But even if Plaintiffs dispute AddShoppers' and its clients'***

25  ***compliance, they do not have a private right to enforce alleged noncompliance with either law.***

26  Congress and the California State Legislature have made it easy for consumers to protect themselves

27  from the purported "intrusions" at issue here:  they can unsubscribe from (not to mention ignore,

28  delete, or block) unwanted emails and opt out of certain information sharing.  Plaintiffs ask the Court

2

to extend the application of statutes like the California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA") and Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") so they may seek statutory damages instead of simply opting out.  But where legislatures chose not to grant a right to sue, Plaintiffs cannot invent one under older, vaguer laws.  Also, penal statutes like these cannot be reinterpreted in civil cases without severe criminal repercussions.  These statutes must be strictly construed to avoid such results.

In sum, the Court lacks personal jurisdiction over AddShoppers, and the Complaint does not show a basis for standing.  For these reasons, and because the Complaint fails to state claims, AddShoppers requests that the Court dismiss the Complaint in its entirety and with prejudice.

## II.      STATEMENT OF RELEVANT FACTS

AddShoppers is a Delaware corporation with a principal place of business in Huntersville, North Carolina.  Compl. ¶ 10.  AddShoppers operates SafeOpt, a free-to-consumers email marketing service that helps online retailers provide customer service to consumers who browse the retailers' websites.  *Id.* ¶ 3.  If AddShoppers has a consumer's email address, SafeOpt sends an email conveying an offer from the retailer, typically a discount code for the product(s) the consumer was recently browsing.  *Id.* ¶ 22.  According to Plaintiffs, AddShoppers' software collects information from and sends emails to consumers who interact with its clients' websites.  *Id.* ¶¶ 16-17.  The Complaint claims that AddShoppers is aware that some consumers are California residents and argues they are intentionally or foreseeably targeted.  *Id.*

Plaintiffs acknowledge "cookies" are commonly used to provide interest-based advertising and that online retailers commonly send emails "encourag[ing] customers to return to their website" to complete purchases.  *Id.* ¶ 40.  Despite admitting that this technology is ubiquitous, the Complaint characterizes AddShoppers' practices as "unsavory" and claims they "function[] as a wiretap."  *Id.* ¶ 56.  In reality, AddShoppers' model benefits consumers (who receive relevant ads and discount offers) and retailers (whose sales are increased).  But Plaintiffs claim they were "shocked" to receive emails on behalf of co-Defendants, whose websites they recently browsed.  Compl. ¶¶ 57, 62, 67, 72-73.

According to the Complaint and the SafeOpt Terms of Use ("Terms of Use") incorporated therein, AddShoppers collects data on the websites of retail partners that have agreed to the Terms of

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Use.  Compl.  ¶¶ 28-29, 38-39 & nn. 4-5.  According to the Terms of Use, each retail partner warrants its compliance with applicable privacy laws and affirms that its "privacy policy, [its] terms of service, or any other similar agreement permit [it] to share" the limited web browsing data collected from site visitors and those site visitors' "opt-in consent" information.  *See* Terms of Use at "Your Content," "User Data," and "Data Co-op," https://www.safeopt.com/terms (last visited June 17, 2023).  There is no allegation that website activity is "tracked" on sites that have not agreed to the Terms of Use.

The Complaint hypothesizes that AddShoppers *could* collect information about "highly personal products."  Compl. ¶ 48.  The Complaint never alleges such information was collected.  The Complaint surmises that information collected about one person may be divulged to others who share a device without that person's consent.  *Id.*  Again, no Plaintiff claims this happened.

The Complaint asserts that Plaintiffs have a "protectible property interest" in personally identifiable information about themselves and claims they are entitled to "reasonable use value" if it is used without their consent.  *Id.* ¶ 77.  Plaintiffs claim they are "harmed every time" personally identifying information about them is used or shared without their consent, including "when it is used to solicit them for marketing and advertising purposes." *Id.* ¶ 76.  They bring nine counts: (1) violation of CIPA, Cal. Penal Code § 631; (2) violation of the CDAFA, Cal. Penal Code § 502; (3) statutory larceny under California Penal Code §§ 484 & 496; (4) and (6) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (7) common law trespass to chattels; (6) and (8) unjust enrichment; and (9) common law invasion of privacy.  AddShoppers is named in all counts except 7 and 8 (which plead against an ambiguous class of Does (Compl. ¶ 13)).

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a party may challenge whether the court has personal jurisdiction over it.  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Federal courts lack subject matter jurisdiction if a plaintiff lacks standing, which requires an injury in fact that is concrete, real, and not abstract.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  To meet the threshold constitutional standing requirement, Plaintiffs must show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  At this initial motions stage, a plaintiff "must 'clearly . . . allege facts demonstrating' each element."  *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Federal Rule of Civil Procedure 8(a)(2) requires pleading of "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under Federal Rule of Civil Procedure 12(b)(6), a complaint fails to state a claim if plaintiff alleges insufficient facts to support a viable legal theory.  *See id.* at 562-63.  "[A] formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## IV.   ARGUMENT

### A.   Failure to Plead Personal and Subject Matter Jurisdiction

#### 1.   No Conduct Expressly Aimed at the Forum (Personal Jurisdiction).

The Court lacks general jurisdiction over AddShoppers.  As a Delaware corporation with a principal place of business in North Carolina (Compl. ¶ 10), AddShoppers is plainly not "at home" in California such that this court may hear any claim against it.  *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1064 (9th Cir. 2014); *see also id.* at 1070 (for corporate entities, the "place of incorporation and principal place of business" are "paradigm" examples of general jurisdiction) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014))).  The Complaint does not show that AddShoppers has continuous and systematic contacts with California that would render it at home here.

Absent general jurisdiction, Plaintiffs must make a *prima facie* showing that this Court may exercise specific jurisdiction over AddShoppers.  *See Soc'y for Human Res. Mgmt. v. Zrowth LLC*, No. 21-cv-07684-VC, 2022 U.S. Dist. LEXIS 71203, at *1 (N.D. Cal. Apr. 18, 2022) (Chhabria, J.) ("It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." (citation omitted)).  "In cases that sound in tort . . . the Ninth Circuit evaluates specific jurisdiction using the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

'purposeful direction' test.  For a federal court to exercise personal jurisdiction over a defendant, the defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) caus[ed] harm that the defendant knows is likely to be suffered in the forum state.'"  *Id.* at *2 (citations omitted).  Due process requires that "defendant's suit-related conduct must create a substantial connection with the forum state."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Plaintiffs fail to allege a basis for specific jurisdiction over AddShoppers.  Plaintiffs, only some of whom are from California (Compl. ¶¶ 6-7, 57-66), allege that AddShoppers sends emails to consumers on behalf of retail websites.  Compl. ¶¶ 16-17.  The Complaint also alleges that AddShoppers provides software to websites with the knowledge or expectation "that a significant number of Californians would visit."  *Id.* at ¶ 16.  The Complaint does not allege that any emails contained California-specific content or were expressly aimed at California.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 n.7 (9th Cir. 2020) (finding no personal jurisdiction where advertising content did not expressly target California users, even if company profited by California users' website access).  The only email excerpted in the Complaint is not targeted to any location.  *See* Compl. ¶ 59.  Plaintiffs cannot rely on such "nonspecific, nationwide" activity to establish specific personal jurisdiction.  *ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020).  Plaintiffs received emails because *they* intentionally visited a website.  *See* Compl. ¶¶ 57-66.  As in *AMA*, the same could be said for "all users in every forum."  *See* 970 F.3d at 1210-12.  "To find specific jurisdiction based on this would . . . 'impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.'"  *AMA*, 970 F.3d at 1211 (alteration in original) (quoting *Walden*, 571 U.S. at 289).  By Plaintiffs' standard, any forum in which a user could access one of AddShoppers' client's websites could assert personal jurisdiction.  *See id.*

AddShoppers' supply of software to its clients' universally available websites is not intentional conduct expressly aimed at California.  *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 514-15 (C.D. Cal. 2021) (dismissing for lack of personal jurisdiction where a non-California defendant's software was allegedly "embedded" in a website that sold to California residents but "users do not provide order information to FullStory, conduct business with FullStory, or otherwise interact with FullStory by clicking on FullStory links or features, nor does FullStory facilitate Nike's transactions with California

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

customers"); *see also AMA*, 970 F.3d at 1211 (affirming dismissal); *Massie v. Gen. Motors Co.*, No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945, *12–13, *19 (E.D. Cal. May 25, 2021) (software that "records . . . website sessions from users nationwide" does not support jurisdiction where defendant did not "target California or distinguish California from any other state where [defendant's] website is accessible"). Here, as well, Plaintiffs do not show conduct expressly aimed at California, and the Complaint should be dismissed as to AddShoppers.

### 2. Failure to Plead Concrete Harm (Article III Standing).

To demonstrate Article III standing, Plaintiffs must allege facts clearly showing they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

The first element, an injury in fact, is not satisfied because Plaintiffs fail to show a *concrete* injury. "Article III standing requires a concrete injury even in the context of [an alleged] statutory violation." *TransUnion*, 141 S. Ct. at 2206 (quoting *Spokeo*, 578 U.S. at 341). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2200 (citing *Spokeo*, 578 U.S. at 340-41). Here, as demonstrated *infra* at Sections IV.B.2 and IV.C.1, Plaintiffs do not show that AddShoppers violated any traditionally recognized right or that any cognizable harm resulted. Plaintiffs point to no legally recognized harm that occurs through receipt of unexpected emails and collection of limited browsing activity on websites they intentionally visited.[1]

Plaintiffs ask the Court to recognize supposed rights that have no basis in the law and have never been recognized as grounds for a lawsuit. For instance, Plaintiffs insist that *unless they consent,*

---

[1] This case is readily distinguishable from *Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*, 956 F.3d 589 (9th Cir. 2020). First, AddShoppers is not alleged to have "set an expectation that . . . user data would not be collected, but then collected it anyway." *Id.* at 602. Second, the defendant in that case allegedly assembled a cradle-to-grave profile including sensitive political, religious, professional, or sexual preference information. *Id.* at 604 n.7. Here, the collected information consists of consumers' product viewing histories on individual websites they intentionally browsed that were used to communicate on behalf of the same websites. This is "routine commercial behavior." *Folgelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986, 992 (2011). It is also reasonable, legislatively-sanctioned speech activity. This practice is no more invasive than retailers' observation of consumers browsing the aisles of brick-and-mortar stores. *See Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. Sept. 9, 2021) ("[M]ere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record[ing] information Defendant could have obtained through a security camera at a brick-and-mortar store").

7

harm arises each and "every time their PII is used or shared … particularly when it is used to solicit them for marketing and advertising purposes."  Compl. ¶ 76.  This statement has no basis in the law. As discussed above, the sharing of information and commercial speech are constitutionally protected, even if Congress has from time to time sought to reach a permissible balance between these rights and competing interests.  *See, e.g.*, *Rowan*, 397 U.S. at 736-38.  The historic protection of commercial and other speech applies here, and applicable laws like CAN-SPAM and CCPA, which respect this balance, cannot be reconciled with Plaintiffs' assertions of absolute "privacy" rights.

Plaintiffs also cannot demonstrate how AddShoppers' alleged *use* of information deprives consumers of "the information's economic value."  *In re Google, Inc. Priv. Policy Litig.,* No. C-12-01382-PSG, 2013 U.S. Dist. LEXIS 171124, at *15 (N.D. Cal. Dec. 3, 2013).

Courts in the Ninth Circuit regularly find no standing where plaintiffs allege intangible injuries but fail to plead harm beyond speculative deprivation of property interests or dignity interests in sensitive information.  For instance, in *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723-24 (9th Cir. 2017), the Ninth Circuit found that plaintiffs lacked standing because their allegation that Toyota collected their driving histories was not highly offensive to a reasonable person and, as a result, they suffered no actual injury.  *Id.*  The same is true here:  Plaintiffs do not offer any specific, plausible showing that AddShoppers' receipt or use of data caused them actual, concrete harm.  Receipt of an email containing a discount offer from a website a consumer recently visited is neither offensive nor injurious.   For these reasons and those articulated by co-defendants Presidio Brands, Inc. and Peet's Coffee, Inc. (collectively, "Retail Defendants") in their joint Motion to Dismiss at Section IV.A.1, which is incorporated herein, the Complaint should be dismissed for lack of Article III standing.

**B.    Plaintiffs' Statutory Claims Fail to State a Claim**

**1.  The Rule of Lenity Discourages Extending Penal Statutes to Apply to Conduct that Federal and California Law Otherwise Expressly Permit.**

Where no legal conflict exists none should be created.  *See, e.g.*, *Tekle v. United States*, 511 F.3d 839, 857-58 (9th Cir. 2007) (wherever possible, statutes should be interpreted harmoniously and to avoid absurd results).  This is especially true where doing so would function as a prior restraint on commercial speech, unconstitutionally burden interstate commerce, and criminalize lawful conduct.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Yet that is exactly the effect of Plaintiffs' reading of CIPA (Cal. Penal Code § 631), the CDAFA (Cal. Penal Code § 502), and cited statutory larceny provisions (Cal. Penal Code. §§ 484, 496). The Federal CAN-SPAM and California CCPA statutory regimes permit AddShoppers to send emails to and collect and share information about consumers who visit retail websites. Plaintiffs' construction of their relevant privacy rights would create an affirmative consent standard that swallows these laws and eviscerates businesses' right to rely on them. *See* Compl. ¶ 76. If every "use" or "sharing" of information required *prior* consent, businesses that observe the detailed opt-out requirements of the CCPA and CAN-SPAM would face heavy criminal penalties.

Were Plaintiffs' statutory interpretations applied, they would unduly burden interstate commerce and protected First Amendment interests.[2] U.S. Const. art. I., Sec. 8., cl. 3. As the Supreme Court held in *Pike v. Bruce Church*, 397 U.S. 137 (1970), local and state laws that appear facially neutral may not burden interstate commerce in a way that is clearly excessive in relation to any local benefit. *See id.* at 140-42. Thus, even where CIPA does not discriminate in favor of local interests, it may not broadly burden out-of-state commercial activity in a way that is disproportionate to any local benefit. *See Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1170-72 (2023) (Roberts, C.J., concurring in part and dissenting in part). As Plaintiffs would have it, it is a violation for any website accessible in California—even one that does not seek to do business in-state—to collect data about site visitors without prior consent. Plaintiffs' every-use-requires-affirmative-permission standard (Compl. ¶ 76) substantially burdens interstate commerce and subjects out-of-state websites and other businesses to massive criminal liability. This fails the *Pike* balancing test.

Plaintiffs' statutory claims also fail because the Court should avoid reinterpreting penal statutes to extend potential criminal liability. *See United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) ("If there is any doubt about whether [the legislature] intended . . . to prohibit the conduct . . . engaged," courts "must choose the interpretation least likely to impose penalties unintended by [the legislature]."

---

[2] The Ninth Circuit "set[s] a high bar for cordoning off new types of speech for diminished protection." *IMDB.com v. Becerra*, 962 F.3d 1111, 1121, 1125 (9th Cir. 2020) ("state legislatures do not have 'freewheeling authority to declare new categories of speech outside the scope of the First Amendment.'" (citation omitted)). If the statutes cited by Plaintiffs applied, they would prohibit First Amendment-protected, otherwise lawful disclosures of information. *Bartnicki v. Vopper*, 532 U.S. 514, 526, 529 (2001) (finding that relevant First Amendment interests trumped privacy interests and sustaining as-applied First Amendment challenge to state and federal wiretapping statutes).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(citations and internal quotations omitted)).  This rule of lenity protects citizens from being subjected to punishments that are not clearly prescribed.  *See Jacome v. Spirit Airlines*, No. 2021-000947-CA-01, 2021 Fla. Cir. LEXIS 1435, at *7-8, *20-22 (Fla. 11th Cir. Ct. June 17, 2021) (interpreting Florida's wiretap statute in favor of the website operator consistent with the rule of lenity).  Plaintiffs ask the court to expand the application of various penal statutes so that Plaintiffs may take advantage of statutory rights of action.  These statutes do not support Plaintiffs' interpretations, but to the extent the Court finds them ambiguous, the Court should reject any reading that would "turn ordinary citizens into criminals."  *Nosal*, 676 F.3d at 863.[3]

### 2.  Plaintiffs Fail to Plead Wiretapping Under CIPA § 631 (Count 1).

Plaintiffs contend, but fail to show, that AddShoppers "wiretapped" their communications. This claim fails, first, because Plaintiffs fail to plead wiretapping.  They attempt to state a claim under the second clause of Cal. Penal Code 631(a), which has three elements: "(1) the absence of consent; (2) the party exception; and (3) the 'while . . . in transit' requirement."  *Valenzuela v. Keurig Green Mt., Inc.*, No. 22-cv-09042-JSC, 2023 U.S. Dist. LEXIS 95199, at *7 (N.D. Cal. May 24, 2023).  As in the recent *Keurig* and *Cinmar* cases, Plaintiffs' formulaic recitation of the "while in . . . transit" element at Paragraph 93 of the Complaint has no factual support.  *See id.* at *11-14 (citing *Twombly*, 550 U.S. at 555); *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF, 2023 U.S. Dist. LEXIS 38233, at *23-29 (C.D. Cal. Mar. 7, 2023) (same).  Even if the statute applied, Plaintiffs fail to state a claim.

Second, as discussed in Section IV.B.1., *supra*, Plaintiffs' construction of their right against "wiretapping" cannot be reconciled with recent California legislative activity.  Plaintiffs assert that long before the 2018 enactment of the CCPA, the state's wiretapping law *already* required website users' affirmative consent before *basic browsing activity or analytics* could be transmitted to a third party, contractor, or website service provider.  *See* Compl. ¶¶ 76, 93-95.  This would mean that websites have long been required to do *substantially more* than what is reflected in the CCPA's recently enacted, detailed privacy compliance scheme.  *See* Cal. Civ. Code § 1798.100, *et seq.*  The CCPA places few limitations on websites' disclosure of data until consumers elect to exercise the

---

[3] To the extent the Court finds that Plaintiffs' penal statutory claims against AddShoppers are based on alleged extraterritorial conduct, they should be dismissed as to AddShoppers for the reasons at Section IV.B of the Retail Defendants' Motion to Dismiss.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

limited opt-out right at Cal. Civ. Code § 1798.120.  Even then, for data disclosures involving service providers, there is no right to opt out.  *See id.* at § 1798.140(ag), (ai) (defining and distinguishing service providers, to whom businesses continue to transmit personal information following an opt out, from third parties, to whom the "sale" or "sharing" of personal information must cease).  The CCPA thus *presumes* constructive consent to some or all of the conduct at issue.[4]  Plaintiff's construction would undo this presumption and render much of the CCPA meaningless.

Ultimately, commercial websites' identification of visitors' e-mail addresses or shopping interests is not conduct that wiretapping laws regulate.  Extending the wiretapping statute to create criminal liability (and a private right of action) here would criminalize ordinary, everyday Internet operations in violation of the rule of lenity.  *See Jacome*, 2021 Fla. Cir. LEXIS 1435 at *7-8, *20-22; *Nosal*, 676 F.3d at 863.  Plaintiffs' wiretapping claim fails, and Count 1 should be dismissed.

### 3.   Plaintiffs Fail to State a CDAFA Claim (Count 2).

Plaintiffs fail to state a claim under CDAFA, a computer crimes statute the violation of which generally requires that a defendant acted "knowingly" and "without permission."  *See* Cal. Penal Code § 502(c)(1)-(14).  "CDAFA is an anti-hacking statute" and is inapposite to this case.  *In re Zoom Commc'ns Priv. Litig.*, 525 F. Supp. 3d 1017, 1043 (N.D. Cal. 2021); *see also Nosal*, 676 F.3d at 857 (rejecting construction of analogous federal statute that "would transform the [statute] from an anti-hacking statute into an expansive misappropriation statute").  Plaintiffs ask the Court to apply the statute in a way that would unconstitutionally burden interstate commerce, violate the First Amendment, and criminalize the ordinary operation of the Internet.  *See supra* Section IV.B.1.

Count 2 also fails because it recites the rote elements of five CDAFA violations without any factual basis.  AddShoppers has not violated Cal. Penal Code § 502(c) based on the definitions at Cal. Penal Code § 502(b).  First, all of Plaintiffs' relevant CDAFA claims fail to show that AddShoppers

---

[4] This presumption of constructive consent is consistent with courts' longstanding view of "cookie" technology on commercial websites and users' acquiescence in its use.  *See In re Doubleclick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 504-505, 510-11 (S.D.N.Y. 2001) (seminal Internet wiretapping case dismissing wiretapping, stored communications, and CFAA claims where online marketing vendor was authorized by websites to view users' voluntary, purposeful website interactions with the websites and users could "easily and at no cost prevent [cookies] from collecting information from them").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

acted "without permission."[5]  This requires a showing that a defendant "circumvent[ed] technical or code-based barriers in place" intended to prevent unauthorized access.  *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1053 (N.D. Cal. 2018) (citation omitted).  Here, Plaintiffs offer only the conclusory allegation that AddShoppers acted "without permission."  Compl. ¶¶ 99, 102-104, 106.  Plaintiffs do not show an attempt to circumvent a technical or code-based barrier erected by Plaintiffs.

Plaintiffs also fail to plead damages.  To do so requires that they "suffered damage or loss" for purposes of Cal. Penal Code § 502(e) that goes "beyond the mere invasion of statutory rights."  *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264-JSW, 2013 U.S. Dist. LEXIS 42724, at *21, *34-35 (N.D. Cal. Mar. 26, 2013).  Here, the only allegation is that AddShoppers purportedly "depriv[ed] [Plaintiffs] of the value of their personally identifiable data."  Compl. ¶ 102.  "[A]llegations regarding the diminished value of Plaintiffs' [personally identifiable information] are not sufficient to allege damage or loss under the CDAFA."  *In re Google Android*, 2013 U.S. Dist. LEXIS 42724, at *35.

### 4.   Plaintiffs' Statutory Larceny and Unfair Competition Claims Fail Because "Personal Information" Is Not "Property" (Counts 3 and 4).

Plaintiffs' statutory larceny claim under Cal. Penal Code §§ 484 and 496 would unconstitutionally burden interstate commerce and criminalize the ordinary operation of the Internet.

Moreover, both this claim and Plaintiffs' Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) claim require Plaintiffs to plead an injury to "property."  In support of these claims, Plaintiffs claim injury to "personal information."  (Compl. ¶¶ 119, 126).  This Court and others have repeatedly held that "personal information" of the sort at issue here "does not constitute property."  *See, e.g., M.K. v. Google, LLC,* No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 51895 at *14-15 (N.D. Cal. Mar. 27, 2023) (citing *In re Facebook Priv. Litig.,* 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014)); *see also Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing UCL privacy claims based on the "unlawful collection and recordation of . . .

---

[5] Plaintiffs mistake the elements of a Section 502(c)(8) violation, asserting that AddShoppers has "knowingly and without permission introduc[ed] a computer contaminant into the transactions between Plaintiffs and the class members and websites."  Compl. ¶¶ 105-106.  They fail to identify any qualifying "computer contaminant" or explain how AddShoppers introduced one into any "computer, computer system, or computer network."  *See* Cal. Penal Code § 502(b)(2), (5), (12).

personal identification information."). No possessory interest exists in this shared information. If one did, Plaintiffs were not deprived of it, and Counts 3 and 4 should be dismissed.

### C. Plaintiffs' Common Law Claims Fail as a Matter of Law

#### 1. Plaintiffs' Invasion of Privacy Claim Fails Because They Do Not Allege a Reasonable Privacy Expectation or Highly Offensive Conduct (Count 9).

An invasion of privacy claim requires a plaintiff to show an objectively reasonable expectation of privacy and that defendants' acts are "highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285-86 (2009). Plaintiffs' pleading fails to satisfy either element. There is no reasonable expectation that websites and their authorized vendors will not observe users' intentional site interactions or that retail websites will not seek to send emails to their visitors. *See In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1024-25 (N.D. Cal. 2012); *In re Doubleclick*, 154 F. Supp. 2d at 504-05 (discussing "Cookie Information Collection" process and recognizing over 20 years ago that Internet users could easily prevent "invisible" third-party data collection). The Complaint admits these are common practices. *See* Compl. ¶ 40 (claiming the use of website browsing data is ubiquitous and that websites routinely send emails to consumers who have visited). As *Doubleclick* shows, those with an earnest wish to avoid the type of data collection at issue have long been able to do so with ease and at no cost. Plaintiffs have not conducted themselves "in a manner consistent with an actual expectation of privacy." *Saleh*, 562 F. Supp. 3d at 517-18, 524-25 (citing *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994)).

Plaintiffs also cannot demonstrate that data was collected or used in a "highly offensive" manner. "[H]ighly offensive" equates to "an exceptional kind of prying into another's private affairs." *Med. Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 819 (9th Cir. 2002). California courts "consistently refuse[] to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Priv. Policy Litig.,* 58 F. Supp. 3d at 985; *see also LinkedIn*, 900 F. Supp. 2d at 1025. Alleged use of one's email address is also not highly offensive. In *Folgelstrom,* 195 Cal. App. 4th 986, the California Court of Appeal dismissed a similar privacy claim alleging that the defendant unlawfully obtained plaintiff's home

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

13

address to mail him marketing materials. *Id.* at 989. The court "found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of the plaintiff's information was highly offensive." *Id.* at 993. Sending email offers to website visitors is not offensive." *See id.* at 992 Count 9 should be dismissed.

### 2.   Plaintiffs Fail to Allege a Trespass to Chattels Claim (Count 5).

Plaintiffs mistake trespass to chattels for a privacy tort and intangible personal data for a tangible good. Trespass to chattels requires unauthorized use of another's property and damage resulting from that interference. *See Parziale v. HP, Inc.,* No. 19-cv-05363-EJD, 2020 U.S. Dist. LEXIS 179738, at *19-20 (N.D. Cal. Sept. 29, 2020) (dismissing trespass to chattels claim). By contrast, the gravamen of Plaintiffs' Complaint is that they have suffered intangible privacy injuries resulting from nonconsensual data access. Compl. ¶¶ 76-77. No trespass to chattels claim lies where the alleged "interference" consists of setting cookies on a device and tracking related intangible data. *See* Compl. ¶ 139. This does not result in cognizable property damage. *See LaCourt v. Specific Media, Inc.,* No. SACV-10-1256, 2011 U.S. Dis. LEXIS 50543, at *20-21 (C.D. Cal. Apr. 28, 2011) (dismissing trespass to chattels claim based on alleged cookie usage).

The trespass to chattels claim also fails because damages are not pleaded. *See* Compl. ¶¶ 137-139 (omitting damage allegations); Restatement (Second) of Torts § 218 cmt. e. (Am. L. Inst. 1965) (damage must be to "the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected"); *see also Intel Corp. v. Hamidi,* 30 Cal. 4th 1342, 1357 (2003) (trespass to chattels claim viable "only if the chattel is impaired as to its condition, quality or value...." (internal quotation marks and citation omitted)). There is no "actual or threatened damage to [their] computer hardware or software [or] interference with its ordinary and intended operation." *Id.* at 1353. Count 5 should be dismissed.

### 3.   Plaintiffs' Unjust Enrichment Claim Fails to State a Claim (Count 6).

As there is no independent "unjust enrichment" tort in California, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Ct. App. 2014)).  Plaintiffs must demonstrate that AddShoppers "received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  They neither make this showing nor attempt to plead a factual basis for this duplicative claim.  *See In re Apple & AT&T iPad Unlimited Data Plan Litig.,* 802 F. Supp. 2d 1070, 1077 (N.D. Cal 2011) ("plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims").  As in the recently decided *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 U.S. Dist. LEXIS 61306, at *28-29 (N.D. Cal. Apr. 6, 2023), Plaintiffs have "neither directly expended their own resources, nor shown that their property has become less valuable." *Id.* at 28.  They also fail to allege any quasi-contract. *Id.* at 28-29.  Having failed to state a claim, Count 6 should be dismissed.

### D.  Plaintiffs' Doe Counts (Counts 7 and 8) Fail to State a Claim

Counts 7 and 8 replead Plaintiffs' deficient Counts 4 (unfair competition) and 6 (unjust enrichment) as to the Doe defendants.  They likewise fail to state a claim and should be dismissed.

### E.  Plaintiffs' Consent to AddShoppers' Clients' Privacy Policies Bars Plaintiffs' Corresponding Claims Against AddShoppers

As more fully explained *supra* and as reflected in the Terms of Use, AddShoppers requires its clients to have privacy policies that permit AddShoppers' lawful data use.  As explained more fully at Section IV.C of the Retail Defendants' Motion to Dismiss, Plaintiffs have manifested their express or implied consent to the privacy policies of the websites they visit.  Plaintiffs' consent to these website privacy policies bars all of their claims as to AddShoppers.

## V.    CONCLUSION

For the foregoing reasons, AddShoppers respectfully requests that the Court issue an order granting this motion with prejudice and awarding AddShoppers such other and further relief as the Court deems just and proper.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT ADDSHOPPERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 3:23-CV-01996

DATED:  June 20, 2023

Respectfully submitted,

By: /s/ *Terence N. Hawley*
Terence N. Hawley

**REED SMITH LLP**

Terence N. Hawley, State Bar No. 179106
thawley@reedsmith.com
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Phone:  (415) 543-8700
Fax:  (415) 391-8269

Gerard M. Stegmaier (*pro hac vice*)
gstegmaier@reedsmith.com
Mark D. Quist (*pro hac vice*)
mquist@reedsmith.com
1301 K Street, N.W., Suite 1000-East Tower
Washington, DC 20005
Phone:  (202) 414-9200
Fax:  (202) 414-9299

James L. Rockney (*pro hac vice*)
jrockney@reedsmith.com
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Phone:  (412) 288-4046
Fax:  (202) 288-3063

*Attorneys for Defendant AddShoppers, Inc.*

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Terence N. Hawley, attest that concurrence in the filing of this document has been obtained.

DATED:  June 20, 2023

/s/ *Terence N. Hawley*
Terence N. Hawley

REED SMITH LLP
A limited liability partnership formed in the State of Delaware