MORGAN, LEWIS & BOCKIUS LLP
Joseph Duffy, Bar No. 241854
joseph.duffy@morganlewis.com
Megan A. Suehiro, Bar No. 316104
megan.suehiro@morganlewis.com
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

Alexandra M. Gonsman, Bar No. 339361
alexandra.gonsman@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

Ezra D. Church (*pro hac vice forthcoming*)
ezra.church@morganlewis.com
1701 Market Street
Philadelphia, PA 19103-2921
Tel:    +1.215.963.5000
Fax:    +1.215.963.5001

Attorneys for Defendant
PEET'S COFFEE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OATHER MCCLUNG, ABBY LINEBERRY, TERRY MICHAEL COOK, and GREG DESSART, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADDSHOPPERS, INC., PRESIDIO BRANDS, INC., PEET'S COFFEE, INC., and JOHN DOE COMPANIES,<br><br>Defendants. | Case No. 3:23-cv-01996-VC<br><br>**DECLARATION OF JOSEPH DUFFY IN SUPPORT OF DEFENDANT PEET'S COFFEE, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date:      July 27, 2023<br>Time:      10:00 a.m.<br>Ctrm:      4 – 17th Floor<br>Judge:    Hon. Vince Chhabria<br><br>Complaint Filed:    April 24, 2023<br>Trial Date:  N/A |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION IN SUPPORT OF PEET'S
MOTION TO DISMISS; 3:23-CV-01996-VC

I, Joseph Duffy, declare as follows:

1.      I am a partner at the law firm of Morgan, Lewis & Bockius LLP, which is counsel of record for Defendant Peet's Coffee, Inc. ("Peet's") herein.  I am an attorney admitted to practice in the State of California and am admitted to practice before this Court.  I submit this declaration in support of Peet's Motion to Dismiss the Class Action Complaint filed concurrently herewith.  I have personal knowledge of the matters stated herein.

2.      The following is true and correct copy of a screenshot of the website peets.com, which was captured on May 31, 2023.



3.      Attached hereto as **Exhibit A** is a true and correct copy of Peet's Privacy Policy, which is publicly accessible at https://www.peets.com/pages/privacy-policy, and which was obtained from Peet's website on June 20, 2023.  The Privacy Policy's effective date is January 1, 2023.  *See* Exhibit A.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the "Order Granting Defendant's Motion to Dismiss" in the action titled *Lightoller v. Jetblue Airways Corporation*, No. 23-cv-00361-H-KSC (S.D. Cal. June 12, 2023), ECF No. 18, which was obtained from the online PACER system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DECLARATION IN SUPPORT OF PEET'S
MOTION TO DISMISS; 3:23-CV-01996-VC

Executed this 20th day of June, 2023, in Los Angeles, California.

/s/ *Joseph Duffy*_____
Joseph Duffy

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DECLARATION IN SUPPORT OF PEET'S
MOTION TO DISMISS; 3:23-CV-01996-VC

# EXHIBIT A

# PEET'S COFFEE, INC. PRIVACY POLICY

**Effective Date: January 1, 2023**

Peet's understands that you care about privacy, so we are committed to helping you understand your privacy rights and how we use information about our site visitors. This Privacy Policy describes the types of information we collect, how we may use that information, to whom and under what circumstances we may disclose it, and how we protect it. We also tell you how to update your information or contact us with questions about our privacy practices. This Privacy Policy applies only to this website (www.peets.com), our mobile sites and mobile applications, and our use of social media sites (collectively, the "Sites"), and any other personal information obtained when you call, email, visit our stores, or otherwise communicate or interact with Peet's. BY ACCESSING THE SITES ON ANY COMPUTER, MOBILE PHONE, TABLET, OR OTHER DEVICE (COLLECTIVELY, "DEVICE"), MAKING A PURCHASE FROM PEET'S, OR OTHERWISE INTERACTING WITH PEET'S, YOU AGREE TO THE TERMS OF THIS PRIVACY POLICY. If you do not agree to the policy, please do not use the Sites.

WE SUGGEST YOU REVIEW THIS PRIVACY POLICY PERIODICALLY, AS IT MAY BE UPDATED FROM TIME TO TIME. WE WILL POST A CURRENT VERSION ON THE SITES.

## INFORMATION WE COLLECT AND HOW WE USE AND SHARE IT

For the 12-month period prior to the date of this Privacy Policy, we explain here what categories of personal information we have collected, where we got it from, and with whom we have shared it:

| Category of Personal Information Collected | Source of information | Purpose for Collection | Categories of recipients |
|---|---|---|---|
| CONTACT INFORMATION: such as your name, billing address, shipping address, email address, telephone numbers, or other contact information | From you; the decision to provide this information is typically optional, however, if you choose not to provide the requested information, you may not be able to use some or all of the features of our Sites | To communicate with you, for product fulfillment and shipping, to send you catalogs, information, newsletters, promotional materials and other offerings from Peet's or on behalf of our partners and Affiliates, to offer a sweepstakes, contest or other promotion, Peet's card reloads, when you contact us, when you | Our affiliates and subsidiaries, including Mighty Leaf Tea, Intelligentsia Coffee Inc., and Stumptown Coffee Corp. (collectively, "Affiliates"); our trusted service providers |

| | | request customer service or support, to complete your registration on our Sites, to administer your account(s) with us, and to provide you with offers that may be of interest to you | |
| --- | --- | --- | --- |
| PURCHASE AND ORDER INFORMATION: contact information, together with purchase details online and in store through e-receipts, delivery details, payment details, Peet's card information, any communications we have received about your order or purchase | From you | To validate, confirm, verify, deliver, install, and track your order, including to arrange for shipping, handle returns and refunds, maintain a record of the purchases you make, to service products you purchased from us, to gather feedback on our stores, products and the Sites, and to provide you offers that may be of interest to you | Our Affiliates; service providers who process, fulfill and ship orders |
| OTHER DELIVERY INFORMATION: name and address of recipient for delivery, if different from customer's | From you | To deliver to the person at the address which you have requested | Our Affiliates; service providers who process, fulfill and ship orders |
| PAYMENT INFORMATION: name, card issuer and card type, credit or debit card number, expiration date, CVV code and billing address | From you and your payment card issuer | To check that the right person is using the right card or account, meet the requirements of the card brands or account issuers, and to make sure we are paid for what you buy | Our Affiliates; service providers who process payments for us; these third-party service providers are prohibited from using personal information for any other purpose and are contractually required to comply with all applicable laws and requirements, which may include Payment Card Industry Data Security Standards if they are processing payments for Peet's |

| | | | |
|---|---|---|---|
| **REWARDS INFORMATION**: your rewards account number, birthday, gender, age, purchase history and information on rewards or other benefits | From you when you sign up for our rewards program and from our rewards service provider | To administer your rewards account and provide you with offers that may be of interest to you | Our Affiliates; service providers who administer our rewards program and our co-marketing partners |
| **INFORMATION YOU PROVIDE ABOUT A THIRD PARTY**: if you send someone else a communication from the Sites (such as sending a gift or virtual gift card), we may collect information such as that person's name, telephone number, email, and/or shipping address. | From you | To deliver to or communicate with the person at the address which you have requested | Our Affiliates; service providers and our co-marketing partners |
| **SOCIAL MEDIA**: information about you, including Usage Data and personal information such as lists of your friends, "likes", comments you have shared, groups and location | From third parties, particularly social media platforms | To enhance your online shopping experience, including as a way to recognize you and welcome you to the Sites, to provide you with customized Sites content, targeted offers, promotions and advertising on the Sites, through other third party sites or apps, via email, text messages, or app push notifications that are offered by Peet's or other marketing partners that might be of interest to you. | Our Affiliates; service providers and our co-marketing partners |
| **LEGAL INFORMATION**: fraud checks or flags raised about your transactions, the payment card you want to use, payment card refusals, suspected crimes, complaints, claims and accidents | From you, the police, crime and fraud prevention agencies, payment card providers, the public, regulators, your and our professional advisors and representatives | To protect you, other customers and our business against criminal activities and risks, unauthorized use, and make sure we understand and can meet our legal obligations to you and others and can defend ourselves | Our Affiliates; service providers who help us with fraud protection and credit risk reduction, law enforcement and other governmental authorities in accordance with applicable law. |

| | | | |
|---|---|---|---|
| PREFERENCE INFORMATION: your marketing preferences, your account settings including any default preferences, any preferences you have indicated, the types of services/offers that interest you, or the areas of our Sites that you visit | From you, from our Sites technology interaction with your browser/Devices and cookies and other similar technologies tracking the pages you visit, the marketing messages you open and the links you follow, including your interactions with social media | To enhance your online shopping experience, including as a way to recognize you and welcome you to the Sites, to provide you with customized Sites content, targeted offers, promotions and advertising on the Sites, through other third party sites or app, via email, text messages, or push notifications that are offered by Peet's or other marketing partners that might be of interest to you | Our Affiliates; third party vendors and other service providers that perform website analytic services for us |
| COMMUNICATIONS: communications we have with you. Please note that we record calls to our customer service team | From you | To handle your requests, to contact you when necessary or requested, including responding to your questions and comments and providing customer support, and to obtain customer feedback and improve our customer service and customer shopping experience | Our Affiliates; service providers who assist us with customer service |
| IN-STORE PRIVACY: CCTV images of you in and around entrances and exits to our stores and offices, and your customer journey around our store | From you, our CCTV | To keep you, other customers, our staff, buildings, systems and data safe and secure, to investigate potential theft, fraud or misconduct | Our Affiliates; service providers who help us with fraud protection, law enforcement and other governmental authorities in accordance with applicable law. |
| DEVICE INFORMATION: IP address, internet provider, operating system and browser used, type of device, such as laptop or smart phone, device cookie settings and other device details, such as MAC address and geolocation, if you use our Sites and permit it to obtain your precise geolocation | From you and from our Sites technology's interaction with your browser or Devices | To make sure our Sites, including app technology, works properly with your Device and make sure you can see and use our intended website and apps on the Device you are using, and for analytical and demographic purposes and to provide offers that may be of interest to you | Our Affiliates; service providers who help us with fraud protection, and third-party vendors and other service providers that perform website analytic services for us |

| | | We also will use this information to protect the security or integrity of the Sites and our business, such as by protecting against and preventing fraud, unauthorized transactions, and managing risk exposure, including by identifying potential hackers and other unauthorized users. | |
| --- | --- | --- | --- |
| USAGE DATA: when you use the Sites, some data is automatically transferred from your browser to our server, including your browser type, operating system type or mobile device model, viewed webpages, links that are clicked, IP address, mobile device identifier or other unique identifier, sites or apps visited before coming to our Sites, the amount of time you spend viewing or using the Sites, the number of times you return, or other click-stream or site usage data, emails we send that you open, forward, or click through to our Sites | From you and from Sites technology's interaction with your browser or devices, for more information see "Automated Collection and Use of Information" below | We will use this information in an aggregated non-specific format for analytical and demographic purposes.

We also will use this information to protect the security or integrity of the Sites and our business, such as by protecting against and preventing fraud, unauthorized transactions, and managing risk exposure, including by identifying potential hackers and other unauthorized users | Our Affiliates; third party vendors and other service providers that perform website analytic services for us |
| ACCIDENT INFORMATION: details about any accident or injury on our premises, or health incident | From you, witnesses or observed about you | To get you the help you need, deal with the emergency services, insurance and claims | Law enforcement and other governmental authorities in accordance with applicable law, and our professional advisors. |
| SUSPECTED CRIME INFORMATION: details of your identity, image, name and address, suspected or alleged thefts, fraud, assault or other | From crime and fraud prevention agencies, from you, witnesses, and from the police | To protect customers, the public and our business against risks and crime | Law enforcement and other governmental authorities in accordance with applicable law, and our professional advisors. |

criminal behavior

In some jurisdictions, individuals may have the right to provide opt-in consent or withdraw consent for certain uses, including those described above. If you reside in such jurisdictions, you may have additional rights which are detailed below, "Access, Correction and Deletion."

Peet's may disclose personal information described above in the event we sell or transfer all of a portion of our business or assets.

Please note that if you voluntarily submit any personal information for posting on the Sites, such as a review or blog post, the information may become publicly available and can be collected and used by others, so you should use care before posting information about yourself online.

## PEET'S COMMUNICATIONS

If you do not wish to receive communications from us about special offers and promotions, you can opt-out of receiving these communications by following the instructions contained in the messages you receive. Even if you opt-out of receiving these messages, we reserve the right to send you certain communications relating to the services we provide, and we may send you service announcements and administrative messages. We do not offer you the opportunity to opt-out of receiving those communications. For more information about interest-based advertising, including how you can manage advertising, please see below "Interest-Based Advertising."

## COMBINED INFORMATION

We also may combine information we collect about you with other information we receive from additional sources. You may choose not to provide us with all of the information we request. In some cases, choosing not to provide information may prevent you from taking full advantage of our Sites' features.

## SOCIAL MEDIA AND USER-GENERATED CONTENT

Peet's website allows you to share product reviews with us. Please use this feature responsibly. We monitor reviews to make sure that only appropriate content is shared through our Sites. Please review our Terms and Conditions of Use for additional information about your responsibilities when posting product reviews.

We also maintain a social media presence, such as a Peet's Facebook page and Peet's Twitter feed. You can interact with us through social media, such as by entering our contests, posting content, sharing material from Peet's websites, and using our social media plug-ins. When you interact with us using social media we may receive information such as your user ID, your profile picture, photos you post, and similar information, which is often determined by your privacy settings at social media sites. We may use

the information for the same types of purposes we describe throughout this Privacy Policy. Your use of social media sites is primarily governed by the site operators' privacy policies and terms of service, and the information you share with us and with others is largely controlled by the privacy settings you have established at those sites.

## AUTOMATED COLLECTION AND USE OF INFORMATION

As referenced above, we receive or collect some information automatically when you visit our Sites or engage with other online content we provide. For example, we receive the IP address or other identifier for the computer or other device you use to access our Sites, which may reveal your general geographic location. We collect or receive other information using technology features such as:

*Cookies.* A cookie is a file saved to your computer or device that may be used to recognize our users when they return to our Sites, provide shopping cart reminders, collect usage information, remember user's preferences, and provide customized versions of our Sites. We use this information to evaluate our web traffic, enhance our communications, understand the effectiveness of our ad or promotional campaigns, and improve our website and services, including providing you with interest-based ads. For more information on our advertising, see below: "Interest-Based Advertising." For more information on your choices regarding cookies, see the "Your Choices" section below.

*Web Beacons.* Our Sites may use web beacons, pixels, JavaScript, or other electronic markers that monitor some types of use. These beacons may provide us with information such as the IP address of the computer or other device you used to access our Sites. We use this information to understand patterns of activity on our Sites, to improve features, and to customize our presentation of content to our users, including our advertising. We may work with service providers that help us track, collect and analyze this information.

*Interest-Based Advertising.* We provide interest-based advertising about our products and services on other parties' websites. We may use third-party advertising companies that use tracking technologies to serve our advertisements across the Internet. These companies may collect information about your visits to the Sites and other websites and your interaction with our advertising and other communications. These advertising companies serve ads on behalf of us and others on non-affiliated sites, and some of those ads may be personalized, meaning that they are intended to be relevant to you based on information collected about your visits to this Sites and elsewhere over time. Other companies may also use such technology to advertise on our Sites. You have the choice to tell us not to collect and use this information, and in some jurisdictions, we will only engage in interest-based advertising if you opt-in. If you would like more information about this practice and to know your choices concerning interest-based ads, visit:

http://www.networkadvertising.org/choices/

http://www.aboutads.info/choices

In Canada, please visit: http://youradchoices.ca/choices/

In the EU, please visit: **http://www.youronlinechoices.eu/**

Peet's may develop content and advertising based on the analytics and user information developed from cookies or similar technology. For more information on your choices regarding advertising, see the "Your Choices" section below.

*Referrer Headers.* We may record referrer headers when you follow links to our Sites, which may be sent to us automatically by your web browser. In these cases, we may receive information such as the URL of the website that referred you to our Sites, or search queries you used to find our Sites. We use this information to understand our web traffic, to improve our services, to increase their accessibility to search engines and others, and to monitor our advertising campaigns.

## YOUR CHOICES

We offer you certain choices about the information we collect, how we use and share information, and how we communicate with you. To help protect your privacy, when you exercise these choices we may take reasonable steps to verify your identity, such as requiring a password.

By contacting us as shown in the "Contact Us" section of this Policy, you may opt-out of receiving communications from us, such as newsletters and surveys. You also have the following specific opt-out choices:

- Marketing communications. You may opt-out of specific communications (such as marketing emails, rewards program emails, and customer satisfaction surveys) by following the opt-out instructions contained in the footer of each communication or contacting Customer Service as provided below. In certain jurisdictions, we will market to you only with your express consent.
- Cookies. Most browsers will tell you how to stop accepting new cookies, how to be notified when you receive a new cookie, and how to disable existing cookies. However, rejecting cookies may affect your user experience, and you may not be able to access or use certain features of our Sites. In addition, disabling cookies may invalidate opt-outs that rely on cookies, such as web analytics or targeted advertising opt-outs. Because Peet's does not own or control browser tools, we cannot guarantee their effectiveness.
- Mobile devices and geographic location. When you use our website on your mobile device, you may choose not to share your location with us by adjusting the device's location services settings. For instructions on changing the relevant settings, please contact your plan provider or device manufacturer. For more information on opting out on mobile devices, you may also visit: http://www.networkadvertising.org/mobile-choices
- Google Analytics. We may use Google Analytics to monitor activity and performance of the Sites. To learn how Google Analytics collects and processes data, please visit: "How Google uses data when you use our partners' sites or apps" located at http://www.google.com/policies/privacy/partners.

## ACCESS, CORRECTION, & DELETION

We respect your right to access and correct your personal information. You may access your personal information by signing into your account. From there, you can correct or modify your information. You may also exercise your rights, subject to applicable laws, to request that we delete or restrict access to your personal data. We may need to retain it for legally permitted purposes and this will be explained to you if necessary.

If you need assistance correcting or updating your personal information, or would like to request that we delete your personal information, please contact us using the contact information detailed in the "Contact Us" section below.

## RETENTION OF PERSONAL INFORMATION

We retain personal information where we have an ongoing legitimate business or legal need to do so. Our retention periods will vary depending on the type of data involved, but, generally, we will refer to the following criteria in order to determine retention period:

- Whether we have a legal or contractual need to retain the data.
- Whether the data is necessary to provide our products, services or programs.
- Whether our visitors have the ability to access and delete the data within their accounts.
- Whether our visitors would reasonably expect that we would retain the data until they remove it or until their Peet's Coffee accounts are closed or terminated.

When we have no ongoing legitimate business need to process your personal information, we will either delete or anonymize it or, if this is not possible (for example, because your personal information has been stored in backup archives), then we will securely store your personal information and isolate it from any further processing until deletion is possible.

## CHILDREN'S PRIVACY

Peet's Sites are not directed at children under the age of 13 and Peet's does not knowingly solicit or collect personal information from children under 13 without prior verifiable parental consent. If Peet's learns that a child under the age of 13 has submitted personal information to us without parental consent, we will take all reasonable measures to delete such information from our databases and/or to not use such information for any purpose (except as necessary to protect the safety of the child or others as required or allowed by law). If you become aware of any personal information we have collected from a child under 13, please contact us.

## YOUR PRIVACY CHOICES

Depending on where you live, you may contact us to request information about circumstances in which we share certain personal information with third parties for their marketing purposes and allow third parties to collect such information from our Sites. To request information please contact us as indicated in the "Contact Us" section of this Policy.

Depending on where you live, state privacy law provides you with the following rights with respect to your personal information:

- The right to request that we do not sell or share your personal information and the right to opt out of the processing of your personal information for purposes of targeted advertising and/or profiling in furtherance of decisions that produce legal or similarly significant effects - **Do Not Sell or Share My Personal Information**
- The right to limit the use of your sensitive information - **Limit the Use of My Sensitive Information**.
- The right to correct inaccuracies in your personal information, taking into account the nature of the personal information and the purposes of the processing.
- The right to know what personal information we have collected, used, disclosed, and sold about you. To submit a request to know the categories of personal information we have collected or the specific pieces of information we have collected, or
  to obtain a copy of the personal information we have collected in a portable and, to the extent technically feasible, readily usable format,
  you may call us at (800) 999-2132 or visit
  **HTTPS://WWW.PEETS.COM/CONTACT-US**
- The right to request that we delete any personal information we have collected about you. To submit a request for deletion, you may call us at (800) 999-2132 or visit
  **HTTPS://WWW.PEETS.COM/CONTACT-US**

Depending where you live, you may have the right to designate an authorized agent to make a request on your behalf. When you exercise these rights and submit a request to us, we will verify your identity by asking for information about your relationship with Peet's, such as email address on file, loyalty/customer number, recent order number, or the last four digits of your credit or debit card. We may also use a third-party verification provider to verify your identity. We will endeavor to honor such requests unless such a request conflicts with certain lawful exemptions under applicable law.

Your exercise of these rights will have no adverse effect on the price and quality of our goods or services.

In addition, applicable law requires us to identify, for the 12-month period prior to the date of this Privacy Policy, what information we may have "sold" or "shared" about you. For the 12-month period prior to the date of this Privacy Policy, Peet's has not sold any personal information about its customers. For the 12-month period prior to the date of this Privacy Policy, Peet's has only shared personal information about its customers as described above. Peet's does not use or disclose sensitive personal information, as defined in applicable laws, for any purposes other than those described above and those permitted by applicable law.

Opt-Out Preference Signals: We are working towards enabling Global Privacy Control (GPC) as an additional way for you to submit a request to opt-out of the sale and sharing of your personal information through browsers and/or browser extensions that support such a signal. Until then, you can opt-out of the use of third-party cookies for personalized advertising by setting your cookie preferences on our website (see above, Automated Collection and Use of Your Information—Interest-Based Advertising) or on your browser.

## RIGHT TO REMOVAL OF POSTED INFORMATION—MINORS

If you are a minor living and have a registered account with Peet's, you have the right to request removal of unwanted information that you publicly post on our Sites through customer reviews or other methods. To request removal of such information, you can contact Peet's at the phone number or postal address below. Upon receiving such a request, Peet's will make sure that the information is not publicly available on our Sites, but the information may not be completely or comprehensively removed from Peet's systems. Peet's does not have actual knowledge about selling or sharing personal information of consumers under the age of 16.

## VISITORS FROM OUTSIDE THE UNITED STATES—CROSS-BORDER TRANSFER

The Sites are hosted in the United States. If you are visiting the Sites from outside the United States, your information may be transferred to, stored and processed in the United States or other countries in accordance with this Privacy Policy. The data protection and other applicable laws of the United States or other countries may not be as comprehensive as those laws or regulations in your country or may otherwise differ from the data protection or consumer protection laws in your country. Your information may be available to government authorities under lawful orders and law applicable in such jurisdictions. By using the Sites and/or providing personal information to us, you consent to transfer of your information to our facilities as described in this Privacy Policy.

## RIGHT TO APPEAL OR LODGE COMPLAINTS

We are transparent about the ways in which we collect and use personal information and welcome your questions and concerns. Depending on where you live, you may have the right to appeal our decision regarding your privacy rights. If you would like to appeal any decision regarding your privacy rights or have any concern or complaint about the way we handle your personal information, please contact us as described below. To the extent you believe we have not addressed your concerns or otherwise choose to do so, you have the right to lodge a complaint with a supervisory authority in the country where you reside and/or the United States. You may contact the US Federal Trade Commission regarding your concerns. For more information, please see HTTPS://WWW.FTC.GOV/FAQ/CONSUMER-PROTECTION/SUBMIT-CONSUMER-COMPLAINT-FTC. Within the United Kingdom, you may obtain more information about how to protect your rights and lodge a complaint by contacting the UK Information Commissioner's Office, see HTTPS://WWW.GOV.UK/DATA-PROTECTION/MAKE-A-COMPLAINT.

## DO NOT TRACK DISCLOSURE

Do Not Track (DNT) is a privacy preference that users can set in some web browsers, allowing users to opt-out of tracking by websites and online services. At the present time, the World Wide Web Consortium (W3C) has not yet established universal standards for recognizable DNT signals and therefore, Peet's does not recognize DNT. For more information regarding your choices regarding tracking, see the "Your Choices" section, above.

## INFORMATION SECURITY

The nature of our business requires us to collect and maintain certain personal information, and we understand that we have a responsibility to protect it. To do so, we maintain appropriate administrative, physical, and technical safeguards that are designed to safeguard your personal information from accidental, unlawful, or unauthorized destruction, loss, alteration, access, disclosure, or use. Your Peet's account is protected by your log-in credentials, which you must keep secure and confidential. We also use the Hypertext Transfer Protocol Secure (HTTPS) communications protocol in many areas of the site where we ask users to submit information.

We communicate our privacy and security guidelines and standards to Peet's employees who access personal information for purposes described in this Privacy Policy, and we enforce these requirements within the company. We also require that our service providers protect your personal information and use it only in the ways we have authorized.

Peet's endeavors to maintain accurate information and provide you with options to update your information. You can log into your account and modify your information using your log-in credentials. You also may request that we update your information by contacting us as described in the "Contact Us" section of this Policy.

## LINKS TO OTHER SITES

We may provide links to other websites for your convenience and information. Since these sites are not owned, controlled, or operated by Peet's, we cannot control how information collected by these linked sites will be used, shared, or secured. If you visit linked sites, we strongly suggest that you review the privacy notices or policies posted at those sites. We are not responsible for the content of linked sites, your use of them, or the information practices of their operators.

## CONTACT US

If you have any questions or concerns regarding this Privacy Policy or how we collect and use the information of our customers, please contact us at:

PEET'S COFFEE, INC. 1400 Park Ave Emeryville, CA 94608

## CUSTOMER SERVICE

(800) 999-2132 Monday through Friday, 6 A.M. – 6 P.M. PT From Mexico and countries outside of North America, please call (510) 594-2950

If we need, or are required, to contact you concerning any event that involves your information, we may do so by email, telephone, or mail.

## UPDATES TO OUR PRIVACY POLICY

As we modify our information collection or privacy practices, and as privacy laws evolve, it may be necessary to revise or update this Policy. We will always keep the current version of our Privacy Policy posted on the Sites and will change the effective date to reflect when it was last revised. If we change the policy in a material and retroactive manner, we will provide appropriate notice to you. We will continue to protect your personal information in accordance with applicable law and as described by our current Privacy Policy.

EXHIBIT B

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE LIGHTOLLER, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION,<br><br>                                        Defendant. | Case No.: 23-cv-00361-H-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 6.] |

On April 25, 2023, Defendant Jetblue Airways Corporation filed a motion to dismiss Plaintiff Anne Lightoller's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 6.) On May 16, 2023, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 12.) On May 23, 2023, Defendant filed a reply. (Doc. No. 13.)

A hearing on Defendant's motion to dismiss is currently scheduled for Monday, June 26, 2023 at 10:30 a.m. The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument, submits the motion on the parties' papers, and vacates the hearing. For the reasons below, the Court grants Defendant's motion to dismiss.

**Background**

The following background is based on the allegations in Plaintiff's complaint. Defendant is a commercial airline that provides both national and international flights to the public. (Doc. No. 1, Compl. ¶ 42.) Defendant operates the website, www.jetblue.com. (Id.) Defendant procures and embeds various Session Reply Code – from third-party Session Reply Providers, including FullStory – on Defendant's website to track and analyze website user interactions with the website. (Id. ¶¶ 43-44.)

Session Replay Code enables website operators to record, save, and replay a website visitor's interactions with a given website, including "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time." (Id. ¶¶ 1, 22; see also id. ¶¶ 24-25.) Once the events have been recorded by a Session Replay Code, a website operator can view a visual reenactment of the user's visit through the Session Replay Provider, usually in the form of a video. (Id. ¶ 27.)

Plaintiff visited Defendant's website to "obtain information on flight pricing." (Id. ¶ 48.) During her visit, Plaintiff's communications were captured by Session Replay Code and sent to various Session Replay Providers. (Id. ¶ 51.) Plaintiff alleges that Defendant's conduct violates the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 et. seq., and constitutes the tort of invasion of privacy rights and intrusion upon seclusion. (Id. ¶ 3.)

On February 24, 2023, Plaintiff filed a class action complaint against Defendant, alleging claims for: (1) violation of CIPA; and (2) invasion of privacy – intrusion upon seclusion. (Doc. No. 1, Compl. ¶¶ 73-98.) By the present motion, Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 6 at 6-21.)

/ / /

/ / /

23-cv-00361-H-KSC

**Discussion**

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff's complaint for lack of subject matter jurisdiction.  (Doc. No. 6 at 6-9.) Specifically, Defendant argues that Plaintiff lacks standing to bring her claims because she has failed to establish that she suffered an injury in fact.  (See id.)

## I.  Legal Standards for a Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction.  "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

Here, Defendant's Rule 12(b)(1) motion focuses solely on the allegations in Plaintiff's complaint, and, thus, Defendant makes a facial attack under Rule 12(b)(1).  (See Doc. No. 6 at 6-9.)  "In deciding a Rule 12(b)(1) facial attack motion, a court must assume the facts alleged in the complaint to be true and construe them in the light most favorable to the nonmoving party."  Strojnik v. Kapalua Land Co. Ltd., 379 F. Supp. 3d 1078, 1082 (D. Haw. 2019) (citing Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)); see Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty., 343 F.3d 1036, 1039 (9th Cir. 2003); Rimac v. Duncan, 319 F. App'x 535, 536 (9th Cir. 2009).

## II.  Analysis

Defendant argues that Plaintiff lacks Article III standing to bring her claims in this action because she has failed to adequately allege that she suffered an injury in fact – specifically, that she suffered a concrete harm.  (Doc. No. 6 at 7-9.)  In response, Plaintiff asserts that she sufficiently alleges an injury in fact.  (Doc. No. 12 at 5-7.)

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203

(2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." Id.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203 (citing Lujan, 504 U.S. at 560–61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, 578 U.S. at 338. Further, "'[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" Id. at 338 n. 6 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40, n. 20 (1976)); accord Lewis v. Casey, 518 U.S. 343, 357 (1996).

To establish the first element of standing, "injury in fact," "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (citing Lujan, 504 U.S. at 560). "A "concrete" injury must be 'de facto'; that is, it must actually exist." Id. at 340. A concrete injury must be "real" and not "abstract." Id.

"[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms." TransUnion, 141 S. Ct. at 2204. "Various intangible harms can also be concrete." Id.; see Spokeo, 578 U.S. at 340. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[,] . . . for example, reputational harms, disclosure of private information, and intrusion upon seclusion." TransUnion, 141 S. Ct. at 2204.

4

1    Importantly, "'Article III standing requires a concrete injury even in the context of
2  a statutory violation.'" TransUnion, 141 S. Ct. at 2205 (quoting Spokeo, 578 U.S. at 341).
3  The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the
4  injury-in-fact requirement whenever a statute grants a person a statutory right and purports
5  to authorize that person to sue to vindicate that right.'" Id. A legislature's creation of a
6  statutory prohibition or obligation and a cause of action does not relieve courts of their
7  responsibility to independently decide whether a plaintiff has suffered a concrete harm
8  under Article III. Id. "[U]nder Article III, an injury in law is not an injury in fact." Id.

9    Plaintiff argues that she has adequately alleged an injury in fact as a result of
10 Defendant's alleged violation of CIPA and her constitutional right to privacy, citing In re
11 Facebook, Inc. Internet Tracking Litig., 956 F.3d 589 (9th Cir. 2020), and Licea v. Am.
12 Eagle Outfitters, Inc., No. EDCV221702MWFJPR, 2023 WL 2469630 (C.D. Cal. Mar. 7,
13 2023). (Doc. No. 12 at 5-6.) Plaintiff's reliance on these two decisions is not persuasive.

14   In Facebook, the Ninth Circuit held that CIPA codifies "a substantive right to
15 privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."
16 956 F.3d at 598. In Licea, the district court held "'violations of [p]laintiffs' statutory rights
17 under CIPA, [even] without more, constitute injury in fact because instead of a bare
18 technical violation of a statute, . . . a CIPA violation involves . . . a violation of privacy
19 rights.'" 2023 WL 2469630, at *3 (quoting Osgood v. Main Street Mktg., LLC, Case. No.
20 16-cv-2415-GPC (BGS), 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017)). These
21 holdings are untenable in light of the Supreme Court's holding in TransUnion that "'Article
22 III standing requires a concrete injury even in the context of a statutory violation.'"[1]  141
23 S. Ct. at 2205 ("'[W]e cannot treat an injury as "concrete" for Article III purposes based

---

[1]    Facebook is a pre-TransUnion case. Further, although the district court decision in
Licea was issued after TransUnion, it cites to pre-TransUnion district court cases as support
for its holding, and Licea does not reference, discuss, or even acknowledge TransUnion's
holding that Article III standing requires a concrete injury even in the context of a statutory
violation. See Licea, 2023 WL 2469630, at *3

23-cv-00361-H-KSC

only on Congress's say-so.' . . . [A]n injury in law is not an injury in fact."); see also Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (explaining that district courts are bound by intervening Supreme Court authority and must reject any prior Ninth Circuit precent that is clearly irreconcilable with that intervening authority). Under the Supreme Court's holding in TransUnion, a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact. See id. Indeed, at least one district court has rejected the contention that "any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm" on the grounds that it is at odds with the Supreme Court's holding in TransUnion. Byars v. Sterling Jewelers, Inc., No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); see also, e.g., Massie v. Gen. Motors LLC, No. CV 21-787-RGA, 2022 WL 534468, at *2, 5 (D. Del. Feb. 17, 2022) (dismissing CIPA claims for lack of standing on the grounds that plaintiff failed to allege a concrete injury).

"To be sure, the Ninth Circuit has stated that 'violations of the right to privacy have long been actionable at common law,' and CIPA 'codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" Byars, 2023 WL 2996686, at *3 (quoting Facebook, 956 F.3d at 599); see also Smith v. LoanMe, Inc., 11 Cal. 5th 183, 191 (2021) (explaining the purpose of CIPA is "'to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation'"). But the Ninth Circuit also explained that that right to privacy encompasses an "'individual's control of information concerning his or her person.'" Facebook, 956 F.3d at 598 (quoting Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017)); see U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."); see also TransUnion, 141 S. Ct. at 2204 (explaining that for there to be a concrete harm, the alleged injury must bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "disclosure of private information" and "intrusion upon seclusion").

This is significant because Plaintiff's complaint does not allege that she disclosed any personal information to Defendant. Plaintiff alleges that she visited Defendant's website to "obtain information on flight pricing." (Doc. No. 1, Compl. ¶ 48.) Plaintiff alleges that while visiting Defendant's website, her communications were monitored, recorded, and collected by Defendant's Session Replay Code. (Id. ¶¶ 49, 51-53.) Plaintiff further alleges Defendant's Session Replay Code is able to intercept and record a website visitor's electronic communications, including her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time." (Id. ¶ 1; see also id. ¶¶ 22, 25, 27, 46.)

These allegations are insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy (i.e., an individual's right to control information concerning his or her person). Although Plaintiff alleges that Defendant monitored and recorded her communications via software when she visited Defendant's website, Plaintiff does not allege that she disclosed any personal information when she visited the website. As such, no personal information was intercepted and recorded. The only internet communications specifically alleged in the complaint is that Plaintiff "obtain[ed] information on flight pricing."[2] (Doc. No. 1, Compl. ¶ 48; see also Doc. No. 12 at 2.) Flight pricing information is not personal information.[3] As such, Plaintiff has

---

[2] In the complaint, Plaintiff includes purported screenshots from Defendant's website in an effort to bolster her allegations, but the screenshots do not even include flight pricing information. (See Doc. No. 1, Compl. ¶¶ 52-53.) The screenshots reference an address of "1133 Penn Avenue, Pittsburg, PA, USA." (Id. ¶ 52.) Nowhere in the complaint does Plaintiff explain what this address is or how it relates to her claims.

[3] In the complaint, Plaintiff generally alleges: "Because most Session Replay Codes will by default indiscriminately capture the maximum range of user-initiated events and content displayed by the website, researchers have found that a variety of highly sensitive information can be captured in event responses from website visitors." (Doc. No. 1, Compl. ¶ 28; see also Doc. No. 12 at 3.) But, importantly, Plaintiff does not allege that she personally disclosed any "highly sensitive information" during her website visit that was

23-cv-00361-H-KSC

failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact. See Byars, 2023 WL 2996686, at *3 ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); Massie, 2022 WL 534468, at *5 ("I agree that Plaintiffs have a legally cognizable interest in controlling their personal information and that intrusion upon that interest would amount to a concrete injury. The fact of the matter remains, however, that none of Plaintiffs' personal information is implicated by the allegations they make. Plaintiffs fail to explain how either GM's or Decibel's possession of anonymized, non-personal data regarding their browsing activities on GM's website harms their privacy interests in any way."); see also I.C. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (finding disclosure of "basic contact information, including one's email address, phone number, or . . . username" inadequate to establish Article III standing based on the "insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion").

In addition, the present case is readily distinguishable from the Ninth Circuit's decision in Facebook regarding Article III standing. In Facebook, the Ninth Circuit held that the plaintiffs had adequately alleged harm to their interest in controlling their personal information based on the following allegations:

> Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history. As alleged in the complaint, this tracking occurred "no matter how sensitive" or personal users' browsing

---

captured by Session Replay Code. See Spokeo, 578 U.S. at 338 n.6 ("'[N[amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'").

histories were.   Facebook allegedly constantly compiled and updated its database with its users' browsing activities, including what they did when they were not using Facebook.   According to Plaintiffs, by correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without users' consent.

Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information.   As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives.

Facebook, 956 F.3d at 598–99.   Facebook involved the tracking and collecting of sensitive personal information.   In contrast, in this case, Plaintiff does not allege that Defendant recorded or collected any of her personal information.   See Byars, 2023 WL 2996686, at *3 (finding the Ninth Circuit's decision in Facebook distinguishable).

In sum, Plaintiff has failed to adequately allege that she suffered a concrete harm, and, therefore, Plaintiff has failed to satisfy the injury in fact element for Article III standing.   Because Plaintiff lacks standing, the Court must dismiss Plaintiff's claims for lack of subject matter jurisdiction.   See Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").

/ / /

/ / /

/ / /

9

23-cv-00361-H-KSC

<u>**Conclusion**</u>

For the reasons above, the Court grants Defendant's motion to dismiss.[4] The Court dismisses Plaintiff's complaint without leave to amend for lack of subject matter jurisdiction.[5] <u>See</u> <u>Telesaurus VPC, LLC v. Power</u>, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" (citation omitted)); <u>see, e.g.</u>, <u>Byars</u>, 2023 WL 2996686, at *4 (dismissing action for lack of subject matter jurisdiction and entering final judgment). The Clerk is directed to close the case.

**IT IS SO ORDERED.**

DATED: June 12, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] It its motion to dismiss, Defendant also argues that Plaintiff's complaint should be dismissed because: (1) Plaintiff's claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"); (2) Plaintiff does not state a plausible claim for relief; and (3) Plaintiff's consent to Defendant's recording of her website activity bars her claims. (Doc. No. 6 at 9-21.) Because the Court grants Defendant's motion to dismiss for the reasons above, the Court declines to address these additional bases for dismissal.

In addition, along with its motion to dismiss, Defendant also filed a request for judicial notice of certain documents. (Doc. No. 7.) In the analysis above, the Court does not reference or cite to any of the documents at issue in the request for judicial notice. As such, the Court denies Defendant's request for judicial notice as moot.

[5] In her opposition to Defendant's motion to dismiss, Plaintiff did not request leave to amend her complaint nor did Plaintiff assert that she could allege any additional facts that would cure the defects in Article III standing.

23-cv-00361-H-KSC