# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ABBY LINEBERRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ADDSHOPPERS, INC., et al.,<br><br>Defendants. | Case No. 23-cv-01996-VC  (PHK)<br><br>**ORDER DENYING DEFENDANT ADDSHOPPERS, INC.'S MOTION TO COMPEL**<br><br>Re: Dkt. 114 |

Now before the Court is the Parties' joint discovery letter brief in which Defendant AddShoppers, Inc. ("AddShoppers"), seeks to Order compelling Plaintiffs to produce certain discovery. [Dkt. 114]. After carefully considering all the briefing, the undersigned finds this matter suitable for resolution without oral argument pursuant to Civil L. R. 7-1(b). As discussed herein, the undersigned **DENIES** Defendant's request to compel Plaintiffs to produce the requested discovery.

## RELEVANT BACKGROUND

On April 24, 2023, Plaintiffs Abby Lineberry, Terry Michael Cook, and Greg Dessart (collectively "Plaintiffs") filed a class action complaint against Defendants AddShoppers, Inc., Presidio Brands, Inc., and Peet's Coffee, Inc. (collectively "Defendants") on behalf of themselves and all other similarly situated individuals. [Dkt. 1]. The gravamen of Plaintiffs' complaint is that Defendants allegedly collected personal identifying information from Plaintiffs' internet browsing without authorization and improperly used that information. *See id.* Relevant to the instant dispute, Plaintiffs allege the following causes of action against AddShoppers: (1) Violations of the California

1  Invasion of Privacy Act ("CIPA"), pursuant to California Penal Code Section 631; (2) Violations of
2  the California Computer Access and Data Fraud Act ("CDAFA"), pursuant to California Penal Code
3  Section 502; and (3) Violations of California's Unfair Competition Law ("UCL"), pursuant to
4  California Business & Professions Code Sections 17200, *et seq*. Dkt. 1; Dkt. 89 (On January 17,
5  2024, the Court issued an order on Defendants' motion to dismiss detailing which causes of action
6  remain).

7  Plaintiffs allege that various companies agree to join the so-called "Co-Op" and install the
8  AddShoppers's code on its websites. *Id.* Specifically, and relevant to the instant discovery dispute,
9  Plaintiffs allege that "AddShoppers . . . collects as much information relating to a user as possible
10 all from different sources, stores that information in a centralized location where it matches data
11 points and creates detailed profiles on individuals, and then uses those profiles to send direct,
12 targeted advertisements from Co-Op companies even when the user did not authorize it." *Id.* at 9.

13 Plaintiffs' core, relevant allegations revolve around AddShoppers software code which
14 creates and uses allegedly "malicious third-party tracking cookies," which are small text files stored
15 on a user's computer or mobile device after being downloaded from a website. *Id.* at 10. Plaintiffs
16 allege that the third-party cookie tracks browsing activity, including login information, shopping
17 cart details, and browsing history. *Id.* Plaintiffs allege that these third-party cookies "are those
18 created by domains other than the one the user is visiting. These cookies are accessible on any
19 website that loads the third-party server's code. Because they can be accessed by multiple domains,
20 third-party cookies can be used to track a user's browsing activity across multiple websites." *Id.*
21 Plaintiffs allege that the hidden tracking cookies can monitor users' activity across the internet and
22 individuals are "associate[d] [with a] unique value with the personal information the user provided
23 to the company, which typically includes, at a minimum, full name, address, payment card
24 information, and email address." *Id.* Per the complaint, Plaintiffs allege that "[w]hen an internet
25 user creates an account or makes a purchase with the business, a third-party tracking cookie is
26 created that includes a unique value AddShoppers associates with that user. The cookie is hidden
27 on the user's browser and automatically sends information to AddShoppers'[s] SafeOpt domain
28 'shop.pe.' AddShoppers then associates that unique value with the personal information the user

2

provided to the company, which typically includes, at a minimum, full name, address, payment card information, and email address." [Dkt. 1 at ¶ 38].

Plaintiffs further allege that "[t]hird-party cookies, by contrast, are those created by domains other than the one the user is visiting. These cookies are accessible on any website that loads the third-party server's code. Because they can be accessed by multiple domains, third-party cookies can be used to track a user's browsing activity across multiple websites." [Dkt. 1 at ¶ 37]. "With the tracking cookie hidden in the user's browser, AddShoppers can monitor the user's browsing activity across the internet. If the user lands on another website in the SafeOpt network, the cookie values 'sync' and AddShoppers tracks the user's activity on the website, including the user's detailed referrer Uniform Resource Locator ('URL'). Because AddShoppers already associates personal information with the cookie value, it can directly advertise to the user even where the user leaves a website without affirmatively providing any personal information." [Dkt. 1 at ¶ 39].

On June 6, 2024, Plaintiffs and AddShoppers filed the instant discovery dispute which, as discussed herein, relates to discovery requests seeking documents and materials relating to Plaintiffs' activities when accessing other websites while browsing the Internet. [Dkt. 114].

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy, for purposes of discovery, is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.*

3

*Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

## DISCUSSION

The instant dispute centers on whether Defendants can obtain an Order compelling Plaintiffs to produce documents and information (in response to interrogatories) generally relating to Plaintiffs' historical activities interacting with websites while browsing the Internet. [Dkt. 114]. The Parties agree that Defendant's requests in dispute relate more specifically to the following

4

categories of documents and information sought: (1) copies of every email from January 1, 2020, to the present which contain advertisements sent to any of the Plaintiffs; (2) copies of every email from January 1, 2020, to the present confirming any purchases made by any of the Plaintiffs; (3) lists of every website where Plaintiffs provided their email addresses from January 1. 2020, to the present; (4) lists of every website where Plaintiffs provided their personal information to become a member, subscriber, or authorized account holder from January 1, 2020, to the present; (5) lists of every website where Plaintiffs made purchases from January 1, 2020, to the present; and (6) lists of every websites where Plaintiffs have rejected or declined to accept privacy policies and/or terms and conditions from January 1, 2020, to the present. *Id.* at 2. The Court addresses relevancy and proportionality for each in turn.

## I.   WHETHER THE DISCOVERY IS RELEVANT TO THE NEEDS OF THE CASE

In its letter brief, Defendant argues that it needs the requested discovery to "establish that the personal information AddShoppers allegedly obtained about Plaintiffs has *de minimis* or zero value. AddShoppers will prove Plaintiffs routinely and repeatedly gave away this same allegedly valuable information about their web browsing activity for free, and that Plaintiffs never demanded compensation before allowing others to share their browsing activities with third parties. AddShoppers and its brand partners did not deprive Plaintiffs of the 'benefit of the bargain' because Plaintiffs entered into the same 'bargain' hundreds or thousands of times with other websites, repeatedly agreeing that others could collect and share their personal information and web browsing activity without any payment to Plaintiffs." *Id.* In other words, Defendant argues that "[i]f you own something and you gave it away for free a thousand times, you cannot sue the last person who obtains it and plausibly claim it has significant value." *Id.*

Currently, the causes of action that remain following resolution of the motion to dismiss are: (1) a claim under the California Invasion of Privacy Act (CIPA), pursuant to California Penal Code Section 631; (2) a claim under the California Computer Data Access and Fraud Act (CDAFA), pursuant to California Penal Code Section 502; and (3) a claim under the Unfair Competition Law (UCL), pursuant to California Business & Professions Code Sections 17200, *et seq.* *See* Dkt. 89.

5

Here, Defendant argues that the requested discovery is related to the UCL claims. [Dkt. 114 at 3]. Defendant argues that Plaintiffs' "theory of recovery" under the UCL "has made the determination of the value, if any, of the information that was allegedly shared with, and shared by, AddShoppers into a crucial disputed issue in this case." *Id.* at 1.

In response, Plaintiffs assert that damages pursuant to CIPA and CDAFA are "formulaic and do not depend on their subjective feelings regarding privacy." *Id.* at 4 (citing Cal. Penal Code § 637.2; Cal. Penal Code § 502(e)(1)). Thus, both Parties appear to agree that the current dispute as to relevancy centers on whether or not the discovery sought is relevant to the UCL cause of action. As such, Defendant's relevancy argument ultimately hinges on its defense argument that any personal information it collected from Plaintiffs had "*de minimis* or zero value" because Plaintiffs had given similar data to other websites for free multiple times when visiting other websites since January 1, 2020, thus (in Defendants' view) undermining Plaintiffs' claims for damages under the UCL. *Id.* at 2.

However, this relevancy argument fails to align with Plaintiffs' theory of the case as pled in the complaint. First, Plaintiffs' complaint does not allege that they *voluntarily* gave their information to AddShoppers or other third parties in the Co-Op in the same way they might when signing up for a service or website, typical of "first-party" cookies. [Dkt. 1 at ¶ 35–37]. Instead, Plaintiffs' allegations are that AddShoppers *automatically* collected their data through tracking cookies that are installed on websites without the users' knowledge. *Id.* at ¶ 38 ("The cookie is *hidden* on the user's browser and *automatically* sends information to AddShoppers'[s] SafeOpt domain 'shop.pe.'"). That is, the complaint specifically alleges a *scheme* in which various companies joined AddShoppers's "Co-Op" and "agree[d] to install AddShoppers'[s] code on their website[]" in order to utilize these allegedly malicious third-party cookies. *Id.* at ¶ 38. Plaintiffs allege that they are "placed in a mass surveillance network which associates their web browsing activity across thousands of sites with their personal information." [Dkt. 114 at 4]. Indeed, the Court's order granting-in-part the motion to dismiss confirms this theory of the case: "the complaint creates a reasonable inference that the plaintiffs *purchased products from retailers in the network created by AddShoppers*, and that *they entered AddShoppers's network* and received unwanted email

communications as a result of those purchases. And the complaint does allege clearly that the plaintiffs would not have purchased products from these retailers had they known that it would subject them to the alleged scheme. Thus, the plaintiffs were denied the benefit of their bargain with these retailers because of AddShoppers's actions. . . . *AddShoppers's alleged scheme* is what denied the plaintiffs the benefit of the bargains with the retailers that the plaintiffs did transact with." Dkt. 89 at 4 (emphasis added).

Second, Plaintiffs allege that their web browsing activities were monitored and associated with their personal information across thousands of sites, all due to AddShoppers's tracking mechanism. Dkt. 1 at ¶ 38–39. This differs significantly from instances where a user might knowingly provide information to a specific website for a service, which is the subject of the lists of every website Plaintiffs have visited since January 1, 2020, sought by AddShoppers's discovery requests at issue. Here, the tracking allegedly occurred automatically, and the Plaintiffs were unaware that their activities were being monitored on such a large scale (as opposed to the discovery requests which seek lists of individualized and deliberate decisions to provide information to websites). [Dkt. 1 at ¶ 38].

Finally, Defendant argues that "at a bare minimum, the jury is entitled to assess this crucial evidence in order to put Plaintiffs' damage claims into their proper perspective." [Dkt. 114 at 2]. However, this argument implicitly admits that the discovery sought relates to a larger "perspective" or context, and not directly aimed at rebutting the crux of the Plaintiffs' claims that they were subjected to *unconsented, hidden surveillance,* which they allege deprived them of the benefit of their bargain with retailers and violated their privacy. The fact that Plaintiffs may have shared personal information with other websites knowingly and voluntarily is thus distinguishable activity and, at best, marginally relevant to the "proper perspective" of whether and to what extent Plaintiffs were harmed by AddShoppers's unconsented, automatic tracking. The harm alleged here stems from the hidden nature of the data collection, which is not the same issue as the value or frequency of voluntarily sharing similar data in other contexts. While relevance for discovery is broader than relevance for purposes of evidence at trial, here the discovery sought is directed to instances where Plaintiffs may have chosen voluntarily to disclose personal information in a different setting and

thus Defendant has not made a strong showing of relevance for purposes of discovery. Finally, arguments as to the larger perspective for damages issues to be presented to the jury at trial appear less compelling in the current posture of the case's schedule, where the motion for class certification is due on December 23, 2024, and thus the Court expects the Parties to be focusing discovery and efforts on class certification-related briefing preparation and related issues. [Dkt. 116].

Ultimately, AddShoppers's discovery requests conflate Plaintiffs' voluntary sharing of information in other contexts with the involuntary and undisclosed tracking at issue here. Therefore, discovery aimed at all of Plaintiffs' prior conduct in sharing information with other websites does not directly address the central claims regarding AddShoppers's hidden tracking practices.

## II. WHETHER THE DISCOVERY SOUGHT IS PROPORTIONAL TO THE NEEDS OF THE CASE

As discussed, whether discovery is relevant is only part of the inquiry. Discovery must also be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "While questions of proportionality often arise in the context of disputes about the expense of discovery, proportionality is not limited to such financial considerations." *Henson v. Turn*, Inc., No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (footnote omitted). "Courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Henson*, 2018 WL 5281629, at *5 (collecting cases). The Parties dispute whether the discovery sought is proportional to the needs of the case and analyze the issue based on whether the discovery is unduly burdensome and whether Plaintiffs' privacy considerations outweigh the need for the discovery.

### A. Whether the discovery sought is proportional and unduly burdensome

Under Rule 26, discovery may be allowed if it is "proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court keeps in mind, therefore, the discussion as to lack of a strong showing of relevance above when balancing the burden of the proposed discovery. Further,

the Court is mindful of the need to make sure discovery on core issues in this case proceeds efficiently and in a timely manner consistent with the policies underlying the Federal Rules of Civil Procedure, when considering the burdens of the discovery sought. *See, e.g.*, *Kadrey v. Meta Platforms, Inc.*, 2024 WL 4502099 at *2 (N.D. Cal. Oct. 15, 2024) (finding that it is not proportional to the needs of the case and is unduly burdensome for Plaintiffs to seek to "cram 21 more fact depositions into the last few weeks of discovery"). Again, the needs of the case currently are informed by the fact that the class certification motion is due on December 23, 2024. [Dkt. 116].

AddShoppers argues that "Plaintiffs can locate the documents and information sought by AddShoppers in their own email accounts and can produce it with very little burden." [Dkt. 114 at 2]. However, because the requests seek emails from Plaintiffs dating from January 1, 2018, to the present, as Defendants point out, "Plaintiff[s] would need to review every email for responsiveness." [Dkt. 114 at 5]. As the Parties and this Court are well aware, in the modern era the number of emails that are typically stored by people can be quite numerous and the six-year time frame sought by these document requests virtually guarantees a large number of emails would be at issue. The potential burden of reviewing such numerous emails, even using the ESI Protocol applicable in this case (including search terms and TAR), dkt. 118, both for responsiveness and privilege is not to be overlooked but rather impacts the balance of the need for such discovery.

Furthermore, Defendant's Document Requests Nos. 4 and 5 which seek copies of every email containing advertisements sent to Plaintiffs since January 1, 2020, and seeking all emails confirming purchases made by Plaintiffs since January 1, 2020, are, on their face, not proportional to the needs of the case and unduly burdensome. [Dkt. 114-1 at 2]. Again, the Court knows from common experience that ordinary consumers receive a large volume of unsolicited advertisements by email, thus the volume of emails implicated here is likely extraordinarily high in light of the four-year time frame. The same is true for the request for emails confirming every single purchase made since January 2020: in the modern ecommerce era, it is expected that the number of such emails implicated will be very high. AddShoppers provides no explanation why emails containing advertisements or confirming purchases are relevant to the asserted basis for relevance: these emails are not direct evidence of Plaintiffs giving away their information to third parties. At best, these

document requests seek indirect evidence that Plaintiffs may have been presented with privacy policies or terms and conditions, but such indirect evidence is of even weaker relevance compared to the needs of the case. Thus, balancing the burden of these document requests in particular against the lack of relevance militates against such discovery.

Additionally, the interrogatories seeking lists from Plaintiffs of every website where Plaintiffs have rejected or declined to accept privacy policies and/or terms and conditions since January 1, 2020, are similarly burdensome. Again, the Court is not blind to the common sense experience that ordinary use of the Internet involves a large volume of websites implicated by these interrogatories. The burden associated with collecting this information would also require Plaintiffs to recall or research every instance where they encountered such privacy policies or terms and conditions, which is rendered even more burdensome given the sheer volume of websites Plaintiffs would be expected to have visited since January 1, 2020.

Finally, the timeframe is nevertheless burdensome. AddShoppers's discovery requests at issue originally covered January 1, 2018, to the present, but in the letter brief AddShoppers agreed to reduce the temporal scope by two years, to the period from January 1, 2020, to the present. [Dkt. 114 at 3]. Seeking review of four years' worth of emails for every advertisement and seeking lists of every website visited over the last four years, are nevertheless burdensome requests. In particular, the interrogatories seeking lists of every single website the Plaintiffs visited which had privacy policies or terms and conditions over the last four years is even more burdensome because this type of long-term browsing history information (which requires knowing not merely what websites were visited but also whether such websites had privacy policies or certain terms and conditions) is not typically stored or tracked by ordinary users when accessing websites over the Internet. Indeed, AddShoppers provides the Court with no proposals or information on how or from what source an ordinary user of a web browser would obtain such information going back for four years. There is nothing in the record to indicate whether the Parties engaged in meaningful meet and confers on the practical logistics required to even try to compile the lists of websites requested, and the Court is convinced based on common experience that trying to find such information may either require some form of labor-intensive research more properly directed to third-party website owners (who

know whether or not their websites had privacy policies or the types of terms and conditions at issue). Finally, the burden is compounded by the fact that people who browse the Internet do not store records of the times when they either accepted or rejected a particular website's privacy policies or other terms and conditions.

Fundamentally, the discovery sought does not address the central issue of whether Defendant engaged in undisclosed tracking of Plaintiffs, and the burden imposed by the discovery requests (even as slightly narrowed temporally) plainly exceed the needs of the case.

This is particularly true considering Defendant's purported refusal to provide key information that would allow Plaintiffs to adequately respond. [Dkt. 114 at 5]. Specifically, Plaintiffs purport that they would produce documents and responses showing that they suffered an injury in fact and lost money or property due to AddShoppers's conduct. *Id.* However, Plaintiffs have alleged that they cannot fully respond to such requests until AddShoppers discloses which companies placed them in the tracking network. *Id.*

Plaintiffs purportedly offered to produce this information for each discovery request related to companies participating in AddShoppers's network, contingent upon AddShoppers identifying those companies. *Id.* Despite this reasonable offer, AddShoppers refused, citing reluctance to share that list. *Id.* On the one hand, Defendant demands that Plaintiffs provide sensitive, private information, while on the other, it engages in gamesmanship by withholding basic discovery that is critical for both Parties to substantiate their claims. Should Defendant have concerns about disclosing confidential information, there are well-established procedural mechanisms in place to safeguard such materials.

### B.   Whether privacy considerations outweigh the need for discovery

Plaintiffs argue that their personal privacy considerations outweigh the need for discovery. *Id.* at 3–4. Plaintiffs argue that "[b]ecause these requests will reveal extremely personal and private information about each Plaintiff, any possible benefit is vastly outweighed by these significant privacy concerns." *Id.* at 4 (citing *Henson*, 2018 WL 5281629, at *8). They argue that privacy considerations are properly taken into account when considering whether discovery is proportional

11

1  to the needs of the case.  *Id.*

2  AddShoppers argues that "Plaintiffs' privacy objections are not persuasive given that this
3  discovery goes to [the] heart of the claims they are pursuing." *Id.* at 2–3 (citing *In re Apple Inc.*
4  *Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 3973752 (N.D. Cal. Aug. 22,
5  2019); *Doe v. A. J. Boggs & Co.*, No. 118CV01464AWIBAM, 2019 WL 1517567 (E.D. Cal. Apr.
6  8, 2019); *Britt v. Superior Court*, 20 Cal. 3d 844, 858 (1978)).

7  Plaintiffs argue that *In re Apple Inc. Device Performance Litig.* is inapposite because, there,
8  the "'device performance [was] integral to Plaintiffs' claims' because they alleged 'that Apple's
9  software updates unjustly harmed the performance of their devices.'"  Dkt. 114 at 4 (citing *In re*
10 *Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *3).  Plaintiffs further argue that
11 "Apple was entitled to test whether the performance of the devices was actually degraded." *Id.*
12 Plaintiffs argue, by contrast that "Defendant's requests do not go to the 'heart of the claims' which
13 is about mass surveillance." [Dkt. 114 at 4].

14 As discussed above, the discovery sought here does not align directly with Plaintiffs' claims
15 under the UCL.  As AddShoppers admitted, the discovery here rather goes to an argument to provide
16 a "perspective" for Plaintiffs' damages claims based on Plaintiffs' voluntarily providing information
17 to third-parties, and not directly rebutting Plaintiffs' damages claims based on the unauthorized,
18 secret tracking "scheme" alleged here.  For these reasons alone, the privacy considerations
19 implicated by the breadth of the discovery sought (which would potentially implicate every single
20 website Plaintiffs visited in the last four years and would implicate a vast number of emails
21 containing advertisements and revealing purchasing preferences and histories) outweigh the needs
22 of the case.  The lack of subject matter limitations on the lists of websites, on the advertisements
23 and purchases implicated by the discovery by definition means that these could include private
24 health care information, information concerning any minor family members, information relating to
25 personal relationships, financial and tax-related information, and other information considered
26 highly sensitive or of a personal nature.  As drafted and sought to be enforced, the discovery requests
27 here basically implicate most (if not the entire) Internet browsing history of Plaintiffs over the last
28 four years, and every single purchase confirmed by an email (even a purchase from a bricks and

1   mortar retail location) by Plaintiffs over that same time frame. *Henson*, 2018 WL 5281629, at *8.
2   As the *Henson* Court explained: "There is an Orwellian irony to the proposition that in order to get
3   relief for a company's alleged surreptitious monitoring of users' . . . web activity, a person has to
4   allow the company unfettered access to inspect his . . . web browsing history." *Id*. "Allowing this
5   discovery would further invade the plaintiffs' privacy interests and may deter current and future
6   plaintiffs from pursuing similar relief." *Id.* (citing *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th
7   Cir. 2004)). Defendant's statement that Plaintiffs "may provide their responses pursuant to the
8   Protective Order in this case" is both technically correct while simultaneously inadequate to address
9   the overall burden of the discovery requests. [Dkt. 114 at 3].

### III.    DISCOVERY SOUGHT REGARDING ALLEGED INJURY-IN-FACT

AddShoppers includes a final request for an Order compelling Plaintiffs to produce documents and respond to an interrogatory seeking discovery on Plaintiffs' alleged injury-in-fact (and losses) resulting from Defendant's conduct. *Id.* (seeking to compel responses to Request for Production 8 and Interrogatory 12). AddShoppers devotes one paragraph to this dispute.

Plaintiffs respond that they offered a compromise on this issue under which they offered to produce this information for those companies in the AddShoppers' network, as long as AddShoppers identified those companies so as to enable Plaintiffs to respond specifically. *Id.* at 5. According to Plaintiffs, AddShoppers refused to identify the companies in the AddShoppers network. *Id.* AddShoppers' paragraph on this dispute does not discuss these attempts to compromise or its refusal to identify the companies in the AddShoppers network.

The manner in which this dispute was presented to the Court raises serious concerns as to the diligence and earnestness of counsel for both Parties to comply with this Court's Standing Order on Discovery which incorporates the Court's Guidelines for Professional Conduct. *See* Guideline for Professional Conduct 10(a) ("Before filing a motion, a lawyer should engage in a good faith effort to resolve the issue."). The Federal Rules of Civil Procedure contemplate that discovery matters will generally be self-effectuating by the Parties without the need for constant court intervention. *See* Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment ("Rule 26(g)

imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37 . . . . The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term 'response' includes answers to interrogatories and to requests to admit as well as responses to production requests. If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse."). "The rules of discovery must necessarily be largely self-enforcing. The integrity of the discovery process rests on the faithfulness of parties and counsel to the rules—both the spirit and the letter. '[T]he discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention and . . . those Rules rely on the honesty and good faith of counsel in dealing with adversaries.' The rules of procedure (and attorneys' duty to adhere to them) apply with equal force to decisions made in private discussions behind closed doors in a client's office on how much effort to expend to answer the opposing party's discovery, as to attorney conduct in the bright light of open court." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 507 (D. Md. 2000) (citation omitted); *see also King v. Habib Bank Ltd.*, No. 20-cv-04322-LGS-OTW, Dkt. 272, slip op. at 2 (S.D.N.Y. July 1, 2024) ("embroil[ing this judge] in day-to-day supervision of discovery [is] a result directly contrary to the overall scheme of the federal discovery rules").

Both Parties devoted about a paragraph to this particular dispute. [Dkt. 114]. Based on that short briefing, it appears there were what appear to have been half-hearted attempts to resolve the dispute. There is no indication that AddShoppers responded to Plaintiffs' offer to provide the discovery sought, on condition that AddShoppers identify the companies in its network. There is no explanation from AddShoppers why it refused to identify the companies in its network—had it done so, this dispute would have been resolved by Plaintiffs' offer. There is no explanation from Plaintiffs why they need to know every single company in the AddShoppers network to answer this discovery, nor whether they ever offered to limit the list of companies to be identified in some rational way tied to their damages theories. There is no indication whether the Parties discussed identifying the companies in the AddShoppers network under the Protective Order, in order to

address any confidentiality concerns.  From the briefing, the Court is not fully convinced that counsel (including lead trial counsel who are obligated to directly and personally meet and confer with each other prior to presenting a dispute to this Court under the Court's Standing Discovery Order) engaged in the kind of diligent, transparent, and collaborative efforts to meet and confer in good faith as expected by the Court under the applicable legal standards.  This particular dispute seeks to compel Plaintiffs to provide some information; Plaintiffs committed that they would provide the responses if given necessary predicate information from Defendant.  The Court is disappointed that the Parties could not work out a deal to resolve this dispute, given the state of discussions.  Sophisticated, experienced lawyers should know how to resolve discovery disputes such as this, without the need for Court intervention.

Counsel for all the Parties are admonished that the Court may consider imposing additional discovery management procedures, within the Court's discretion to manage discovery.  If counsel for the Parties demonstrate further inability to reach reasonable negotiated resolutions of discovery disputes going forward, the Court may consider modifying the meet and confer requirements in the Court's Standing Order.  For example, the Court may consider requiring all meet and confers (including meet and confers of lead counsel) to be held *in-person*, requiring the attendance of clients (including chief legal counsel) at all meet and confers, requiring meet and confers to take place in Courtroom F on the 15th Floor of this Court in San Francisco at specific times set by the Court, or other modifications as the Court in its discretion deems necessary as a matter of discovery case management.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant AddShoppers's motion to compel with regard to Document Requests 4 and 5, and with regard to Interrogatories 3, 4, 5, and 7.

The Court further **DENIES WITHOUT PREJUDICE** Defendant AddShoppers's motion to compel with regard to Document Request 8 and Interrogatory 12.  Should AddShoppers wish to renew the dispute with regard to Document Request 8 and Interrogatory 12, it must inform Plaintiffs

within **three business days** of this Order. If such desire arises, lead trial counsel are hereby **ORDERED** to meet and confer by themselves only, in-person (if, at the time of the meet and confer, they are both located within the Northern District of California or otherwise within 100 miles of each other) or by videoconference within **fourteen business days** of the date of this Order in an attempt to resolve the renewed dispute. Within three business days of that meet and confer, the Parties are **ORDERED** to file a Joint Status Report on the outcome of that meet and confer, no longer than two pages evenly divided between the parties, which reports on any resolution of the dispute or (if not resolved) sets forth the final offer and counteroffer to compromise made by each Party. The Joint Status Report shall include a certification under oath from each first chair trial lawyer for each Party that they personally conducted the meet and confer, that they attempted to resolve the dispute in good faith, how long the meet and confer lasted, where it was conducted, and that each attests that based on their experience the dispute was unable to be resolved despite that lawyer's best efforts. Nothing in this Order prevents the Parties from attempting to resolve the disputes informally prior to the ordered meet and confer of lead trial counsel.

This Order resolves Dkt. 114.

**IT IS SO ORDERED.**

Dated: November 6, 2024

_____
PETER H. KANG
United States Magistrate Judge