**WOMBLE BOND DICKINSON (US) LLP**
TOMIO B. NARITA (SBN 156576)
*Tomio.Narita@wbd-us.com*
JEFFREY A. TOPOR (SBN 195545)
*Jeff.Topor@wbd-us.com*
R. TRAVIS CAMPBELL (SBN 271580)
*Travis.Campbell@wbd-us.com*
50 California Street, Suite 2750
San Francisco, California 94111
Telephone:  (415) 433-1900
Facsimile:  (415) 433-5530

Attorneys for Defendant
ADDSHOPPERS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ABBY LINEBERRY, TERRY MICHAEL COOK and MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADDSHOPPERS, INC. and PEET'S COFFEE, INC.,<br><br>Defendants. | CASE NO. 3:23-cv-01996-VC<br><br>**DEFENDANT ADDSHOPPERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: January 23, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4, 17th Floor, of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Vince Chhabria, Defendant AddShoppers, Inc. ("AddShoppers") will, and hereby does, move this Court for an order, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), dismissing the claims asserted against AddShoppers in the First Amended Complaint ("FAC") by Plaintiffs Miguel Cordero ("Cordero") and Abby Lineberry ("Lineberry") (collectively, "Plaintiffs").[1]

The motion is made on the grounds that: 1) Plaintiffs lack Article III standing to assert their claims; 2) the Court lacks personal jurisdiction over Cordero's claims;[2] 3) Plaintiffs lack statutory standing to assert their claims; 4) the FAC fails to state a claim for relief under the CIPA; and 5) the FAC fails to state a claim for relief under the CDAFA.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the records on the file in this action, and all other evidence or argument the Court may permit at the hearing of this matter.

//
//
//
//
//
//

---

[1] Plaintiff Terry Michael Cook does not assert any claims against AddShoppers.

[2] AddShoppers incorporates the personal jurisdiction arguments previously made as to Lineberry's claims. *See* Doc. Nos. 50, 62. It does not seek reconsideration of the Court's prior ruling, but because personal jurisdiction is claim-specific, AddShoppers must challenge personal jurisdiction as to Cordero's claims to fully preserve the issue for appeal. *See Stanford Health Care v. CareFirst of Md., Inc.*, 716 F. Supp. 3d 811, 815 (N.D. Cal. 2024).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED December 6, 2024

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
JEFFREY A. TOPOR
R. TRAVIS CAMPBELL


By:  /s/R. Travis Campbell
R. Travis Campbell
Attorneys for Defendant
AddShoppers, Inc.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT BACKGROUND ..........................................................................3

      A.  Allegations Of The FAC..........................................................................3

      B.  The Court's Prior Order On AddShoppers' Motion To Dismiss The
          Complaint ................................................................................................4

III.  ARGUMENT .....................................................................................................5

      A.  Applicable Legal Standards Governing Motions To Dismiss .................5

      B.  Plaintiffs Lack Article III Standing To Assert Their Claims...................5

          1.  The Alleged Collection Of The "Exact Dates And Times" Cordero
              Visited A Dozen Websites Does Not Give Rise To A Sufficient
              Concrete Injury ...............................................................................6

          2.  Lineberry Does Not Have Protectable Privacy Interest In Her
              Work-Related Browsing History .....................................................8

      C.  Plaintiffs Lack Statutory Standing To Assert Their CDAFA And UCL
          Claims .....................................................................................................9

      D.  The CIPA Claim Fails Because Plaintiffs Do Not Allege The "Contents"
          Of Their "Communications" Were Intercepted ....................................12

IV.   CONCLUSION.................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 5

*Byars v. Sterling Jewelers, Inc.*,
   2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) ......................................... 6

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ...................................................................................... 5

*Cook v. GameStop, Inc.*,
   689 F. Supp. 3d 58 (W.D. Pa. Aug. 28, 2023) ........................................................ 7

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................................................................... 12

*Custom Packaging Supply, Inc. v. Phillips*,
   2015 U.S. Dist. LEXIS 164523 (C.D. Cal. Dec. 7, 2015) ...................................... 10

*Doe v. Meta Platforms, Inc.*,
   690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) ....................................................... 12

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. Apr. 8, 2021) ........................................................ 13

*Hazel v. Prudential Fin., Inc*,
   No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ................. 12

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................... 11

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. Apr. 29, 2022) .................................................... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ............................................................................. 7, 8, 9

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...................................................................................... 13

*Ingrao v. AddShoppers, Inc.*,
  2024 U.S. Dist. LEXIS 214748 (E.D. Pa. Nov. 25, 2024) .................................................*passim*

*Lacano Investments, LLC v. Balash*,
  765 F.3d 1068 (9th Cir. 2014) ...................................................................................... 5

*Lau v. Gen Digital Inc.*,
  2023 WL 10553772 (collecting cases) ......................................................................... 12

*Lightoller v. Jetblue Airways Corp.*,
  2023 U.S. Dist. LEXIS 102158 (S.D. Cal. Jun. 12, 2023) ........................................... 7

*Mikulsky v. Bloomingdale's LLC*,
  713 F. Supp. 3d 833 (S.D. Cal. Jan. 25, 2024) ..................................................... 13, 14

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. Jul. 17, 2023) ........................................................ 5, 6

*O'Connor v. Ortega*,
  480 U.S. 709 (1987) ...................................................................................................... 9

*Popa v. PSP Group, LLC*,
  2023 U.S. Dist. LEXIS 191053 (W.D. Wash. Oct. 24, 2023) .................................... 6, 7

*Pratt v. Higgins*,
  2023 U.S. Dist. LEXIS 122849 (N.D. Cal. July 17, 2023) ......................................... 12

*Roe v. Amgen Inc.*,
  2024 WL 2873482 (C.D. Cal. June 5, 2024) ............................................................... 12

*Saeedy v. Microsoft Corp.*,
  2023 U.S. Dist. LEXIS 227915 (W.D. Wash. Dec. 21, 2023) ...................................... 7

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ...................................................................................... 5

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. Sep. 27, 2021) ......................................................... 13

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................................................... 5

*Stanford Health Care v. CareFirst of Md., Inc.*,
  716 F. Supp. 3d 811 (N.D. Cal. 2024)........................................................................... i

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................................. 5, 6, 9

*U.S. v. Busby,*
    2011 U.S. Dist. LEXIS 145217 (N.D. Cal. Dec. 16, 2011) ..................................... 8

*U.S. v. Caputo,*
    2019 U.S. Dist. LEXIS 192511 (D. Or. Nov. 26, 2019) ....................................... 8

*U.S. v. Greiner,*
    235 Fed. Appx. 541 (9th Cir. 2007) ................................................................. 8

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ........................................................................ 5

*Yoon v. Lululemon USA, Inc.,*
    549 F. Supp. 3d 1073 (C.D. Cal. Jul. 15, 2021) ........................................... 13, 14


**<u>State Cases</u>**

*Moore v. Centrelake Med. Grp., Inc.,*
    83 Cal. App. 5th 515 (2022) ........................................................................ 12

*TBG Ins. Servs. Corp. v. Sup. Ct.,*
    96 Cal. App. 4th 443 (2002) .......................................................................... 8


**<u>Federal Statutes</u>**

18 U.S.C. § 2510 *et seq.* ................................................................................. 13


**<u>State Statutes</u>**

Cal. Bus. & Prof. Code § 17200 ...................................................................... 2
Cal. Pen. Code § 502 ................................................................................ 2, 11
Cal. Pen. Code § 631 ................................................................................ 1, 12


**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 5

1

2

I.     **INTRODUCTION**

3          The amendments in the First Amended Complaint ("FAC") fundamentally shift the

4    grounds for assessing Article III standing and statutory standing, compelling a fresh

5    examination of those issues as to both the new plaintiff Cordero, and as to Lineberry.  Key

6    allegations the Court previously relied upon to allow Plaintiffs' claims to proceed are now

7    missing from the FAC.  Plaintiffs cannot meet their burden of establishing they have standing.

8    The FAC likewise makes clear that the "contents" of Plaintiffs' communications were not

9    "intercepted," which courts in this District and around the country have held is required to state

10   a claim under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631. Plaintiffs

11   have had nearly a year to conduct discovery, but they are still unable to allege sufficient facts to

12   support their claims.  Like the parallel case brought by Plaintiffs' counsel in Pennsylvania,[3] the

13   FAC should be dismissed with prejudice and the case should end here.

14          The new plaintiff Cordero does <u>not</u> allege AddShoppers gathered personal information

15   about him such as his name, his address, his Social Security Number, his date of birth, his

16   gender, his medical information or his payment card information. Indeed, he does not allege

17   facts, which if proven true, would establish that AddShoppers ever knew who he was before he

18   sued.  Nor does he allege AddShoppers sent him even a single unwanted email, let alone that he

19   received a "barrage" of emails that the Court previously found would support Article III

20   standing.  *See* Doc. No. 89, ¶ 2.

21          The FAC does not identify any private information about Cordero's internet browsing

22   history that AddShoppers supposedly collected.  Rather, Cordero alleges only that when he

23   requested that AddShoppers provide him with data associated with this Gmail account, the data

24   it provided showed the dates and times he visited a handful of websites over several years.  If

25

26

27

28   [3] *See Ingrao v. AddShoppers, Inc.*, No. 24-1002, 2024 U.S. Dist. LEXIS 214748 (E.D. Pa. Nov. 25, 2024).

these allegations are assumed true, that is a far cry from establishing an actual injury sufficient to confer Article III standing.

Lineberry did not receive a "barrage" of emails either – she mentions just <u>one</u> in the FAC. She also lacks Article III standing because she does not allege her private internet browsing activity was tracked.  Rather, she claims her "<u>work-related</u> browsing history" was "tracked" by AddShoppers while she was at <u>work</u> and using her <u>work</u> computer.  She had no protectable privacy interest in browsing activity performed on her work computer and, therefore, she could not have suffered "injury" within the meaning of Article III if her work browsing history was collected.

The FAC also omits allegations the Court previously deemed critical to Plaintiffs' ability to establish statutory standing under the Computer Access and Data Fraud Act ("CDAFA"), Cal. Penal Code § 502 and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Specifically, unlike the original Complaint, the FAC does <u>not</u> allege "John Doe Companies collected and provided Plaintiffs personal information" to AddShoppers, or that "Plaintiffs would not have purchased from John Doe Companies if they had known they would be placed into SafeOpt."  *Compare* Doc. No. 1, ¶¶ 13, 154 *with* Doc. No. 135.  The Court's finding that Lineberry had statutory standing to assert the CDAFA and UCL claims turned on this allegation.  *See* Doc. No. 89, ¶ 3.  With the allegation omitted, there is no basis to find that Plaintiffs were "denied the benefit of their bargain with these retailers because of AddShoppers's actions."  *Id.*  The allegations that "misappropriation" of Plaintiffs' data by AddShoppers somehow diminished its value are not sufficient to confer standing.

The CIPA claim also fails because the FAC does not allege AddShoppers intercepted the "contents" of Plaintiffs' "communications."  As numerous courts have held, the alleged collection of online browsing data, such as the date and time someone visits a website, does not constitute the "contents" of a communication under the CIPA.

//

//

## II.    RELEVANT BACKGROUND

### A.  Allegations Of The FAC

AddShoppers allegedly runs a "marketing" software program called "SafeOpt" that sends emails to individuals offering them discounts at companies (*i.e.* "brand partners") who have installed the software on their websites. *See* Doc. No. 135, ¶¶ 2-3, 9, 17-18. AddShoppers' brand partners allegedly include over 2,000 companies. *Id.*, ¶ 22.

According to Plaintiffs, SafeOpt allegedly "collects and pools" information "provided by individuals" to brand partner websites." *Id.*, ¶ 27. To accomplish this, the brand partners allegedly "install AddShoppers's code on their website[s]," and "[w]hen an internet user creates an account or makes a purchase" on the website, "a third party tracking cookie is" allegedly "created" and placed on the user's web browser "that includes a unique value AddShoppers associates with that user," and AddShopers then "associates that unique value with the personal information the user provided the company. . . ." *Id.*, ¶¶ 33-35. The cookie allegedly remains on "the user's browser," and allows AddShoppers to "track[]" the user's "browsing activity" when the user visits other brand partner websites. *Id.*, ¶ 35. AddShoppers allegedly uses the information it collects to send "targeted" email "advertisements" to individuals on behalf of brand partners. *Id.*, ¶¶ 30, 39.

On July 25, 2024, Cordero allegedly "requested his data associated with his Gmail account from AddShoppers []," which purportedly showed "he had been tracked by at least a dozen companies for several years, including the exact dates and times he visited other websites that (unbeknownst to him) were part of the AddShoppers network." *Id.*, ¶ 63. The websites included Peet's website, which allegedly "captured" the date and time of Cordero's visit on November 9, 2021. *Id.* Notably, Cordero does <u>not</u> allege he received any emails from AddShoppers, Peet's, or any other company in "AddShoppers network," or that he purchased anything from any of those companies. *Id.*, ¶¶ 63-66.

On January 17, 2023, Lineberry was allegedly "tracked" by AddShoppers when she "visited medterrahemp.org, on her work computer, for her job . . . ." *Id.*, ¶¶ 53-54. She later received an email from "medaterrhemp.com via SafeOpt" that "included pictures of the" items

she viewed when she visited the website while working.  *Id.*, ¶ 55.  Lineberry does not allege she received any other emails.  Like Cordero, Lineberry does not allege she purchased anything from any AddShoppers brand partner.  *Id.*, ¶¶ 53-57.

Plaintiffs assert individual and class claims against AddShoppers under 1) the CIPA, 2) the CDAFA, 3) Statutory Larceny, Cal. Penal Code §§ 484 and 496, 4) the UCL, 5) Unjust Enrichment, and 6) Common Law Invasion of Privacy/Intrusion.  *Id.*, ¶¶ 79-143.[4]

**B.  The Court's Prior Order On AddShoppers' Motion To Dismiss The Complaint**

On January 17, 2024, the Court issued an Order granting in part and denying in part AddShoppers' Motion to Dismiss the original Complaint. Doc. No. 89.  The Court held that the allegations were sufficient to establish Article III standing, stating: "Misappropriating a person's browsing activity across a network of thousands of online retailers and using it to barrage that person's devices with unwanted email communications (particularly without giving the person a way to put a stop to the communications) is the type of intrusion on privacy and seclusion that can be vindicated in the federal courts." *Id.*, ¶ 2.  The Court explained that "[t]he ultimate injury is not merely the dissemination of one unwanted email from one website; it is the aggregation of information about a consumer's browsing history across thousands of retail sites and the *systematic dissemination of emails* from AddShoppers' network based upon that information." *Id.* (emphasis added).   To establish statutory standing under the CDAFA and UCL claims, the Court explained that Plaintiffs must demonstrate they suffered a monetary loss because of AddShoppers's conduct. *Id.*, ¶ 3.  The Court found Plaintiffs' allegations were sufficient at the pleadings stage, because:

> the complaint creates a reasonable inference that the plaintiffs purchased products from retailers in the network created by AddShoppers, and that they entered AddShoppers's

---

[4] In the FAC, Plaintiffs acknowledge the Court already dismissed the Statutory Larceny, Unjust Enrichment and Common Law Invasion of Privacy/Intrusion claims and say they are not seeking "reconsideration" of the Court's ruling.  *Id.* at n. 21.  Thus, these claims should be dismissed with prejudice for the reasons set forth in the Court's prior Order on AddShoppers' Motion to Dismiss the Complaint.  *See* Doc. No. 89, ¶¶ 7, 9-10.  Plaintiffs have also confirmed they are no longer pursuing their UCL claim, so it should be dismissed.  *See* Doc. No. 136, p. 2.

network and received unwanted email communications as a result of those purchases. And the complaint does allege clearly that the plaintiffs would not have purchased products from these retailers had they known that it would be subject them to the alleged scheme. Thus, the plaintiffs were denied the benefit of their bargain with these retailers because of AddShoppers's actions.

*Id.*

## III.    ARGUMENT

### A.  Applicable Legal Standards Governing Motions To Dismiss

Under Rule 12(b)(1), the Court may "dismiss claims for lack of subject matter jurisdiction." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 861 (S.D. Cal. Jul. 17, 2023). Article III standing is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenge asserts the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Under Rule 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Although courts must assume the truth of *factual* allegations on a motion to dismiss, courts "do not accept *legal conclusions* in the complaint as true, even if cast in the form of factual allegations." *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (emphasis in original).

### B.  Plaintiffs Lack Article III Standing To Assert Their Claims

To establish Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). For a harm to be "concrete," the injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citation omitted). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[,] . . . for example,

. . ., disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 417.  The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purpose to authorize that person to sue to vindicate that right." *Id*. at 414.  A court recently dismissed a nearly identical case against AddShoppers because the allegations failed to establish the plaintiffs suffered an injury sufficient to confer Article III standing.  *See Ingrao*, 2024 U.S. Dist. LEXIS 214748 at **26-34.  Similarly, here, Plaintiffs do not allege that they suffered any injury sufficient to confer standing consistent with *Ingrao* and this Court's Order.  *See* Doc. No. 89. Their claims should be dismissed.

### 1. The Alleged Collection Of The "Exact Dates And Times" Cordero Visited A Dozen Websites Does Not Give Rise To A Sufficient Concrete Injury

Plaintiffs allege the entire purpose of the SafeOpt software is to send individuals "targeted" email "advertisements."  *See* Doc. No. 135, ¶¶ 2, 4, 30, 37-38.  Cordero, however, does not allege he received a <u>single</u> "unwanted email" (let alone a "barrage") from AddShoppers, Peet's, or any other company allegedly in AddShoppers' network.  *Id.*, ¶¶ 63-66.  Absent an allegation that he received an email, he cannot establish the requisite "intrusion on privacy and seclusion" required by the Court's Order to demonstrate Article III standing.  Doc. No. 89, ¶ 2.

Nor does Cordero allege AddShoppers collected any information about his "browsing activity" in which he has a "protectable privacy interest."  *See, e.g., Mikulsky*, 682 F. Supp. 3d at 864 (dismissing CIPA claim; "[t]o survive a motion to dismiss, a plaintiff must identify 'specific personal information she disclosed that implicates a protectable privacy interest"); *Byars v. Sterling Jewelers, Inc*., No. 5:22-CV-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at **7-10 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim; no private information disclosed and thus no harm to privacy); *Popa v. PSP Group, LLC*, No. C23-0294 JLR, 2023 U.S. Dist. LEXIS 191053, at *8 (W.D. Wash. Oct. 24, 2023) ("Where plaintiffs have not alleged an invasion of a protectable privacy interests, courts have found that the plaintiffs failed to plead an injury in fact and therefore lack Article III standing.").

Cordero never alleges that AddShoppers even knew his name. He does not claim it collected any personal information about him, such as his address, age, gender, date of birth, Social Security Number, health information or his payment card information. Indeed, the only information Cordero alleges AddShoppers collected was the "exact dates and times" he visited "a dozen" websites dating back three years. *See* Doc. No. 135, ¶¶ 63-66. He has no "protectable privacy interest" in this sort of innocuous information. *See, e.g.*, *Ingrao*, 2024 U.S. Dist. LEXIS 214748 at **19-21 (dismissing CIPA and CDAFA claims; allegations that AddShoppers collected plaintiffs' email addresses and times they visited brand partner websites were insufficient to establish concrete harm); *Popa*, 2023 U.S. Dist. LEXIS 191053 at *12 (collecting information about products plaintiff browsed for online "reveals nothing more than the products that interested" plaintiff "and thus is not the type of private information that the law has historically protected"); *Saeedy v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 227915, at *14 (W.D. Wash. Dec. 21, 2023) ("the collected browser information of which Plaintiffs complain is not a legally protected privacy interest in which they had a reasonable expectation of privacy"); *Lightoller v. Jetblue Airways Corp.*, 2023 U.S. Dist. LEXIS 102158, at *9 (S.D. Cal. Jun. 12, 2023) (allegation that defendant recorded user's "mouse movements," "clicks," and "URLs of webpages visited" and other information was "insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy").[5]  Nor does Cordero allege the information AddShoppers collected was "aggregate[ed] . . . across thousands of retail sites[,]" an allegation the Court previously found was key to establishing standing. *See* Doc. No. 89, ¶ 2.

Plaintiffs may rely on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), in their Opposition, but it does not help them. There, plaintiffs alleged Facebook

---

[5] *See also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. Aug. 28, 2023) (allegations that defendant intercepted data regarding "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or electronic communications in real time" did not rise to the level of concrete harm); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. Apr. 29, 2022) (disclosure of "basic contact information, including one's email address" is inadequate to establish Article III standing based on the "insufficient fit between the loss of information alleged here and the common law privacy tort of . . . disclosure of private facts and intrusion upon seclusion").

captured extensive information about their browsing activity on third-party websites – even after they had logged out of Facebook – and used that information to create detailed, personally identifiable profiles that described the plaintiffs and their "likes, dislikes, interests, and habits over a significant amount of time." *See* 956 F.3d 589, 598-99. There is simply no comparison between the innocuous information AddShoppers supposedly collected about Cordero (the dates and times he visited a dozen websites) with the detailed personal information collected by the defendant in *In re Facebook.*

### 2. Lineberry Does Not Have Protectable Privacy Interest In Her Work-Related Browsing History

Like Cordero, Lineberry lacks Article III standing because she did not receive a "barrage" of emails. *See* Doc. No. 135, ¶¶ 53-57. Nor does she have a "protectable privacy interest" in the limited information AddShoppers allegedly collected about her visit to medterrahemp.org (the item she viewed on the website). *Id*; *see supra*, III.B.1. But she lacks standing for an additional reason. She admits her "<u>work-related</u> browsing history" that she engaged in while at <u>work</u> on her <u>work</u> computer is at issue. *See* Doc. No. 135, ¶¶ 53, 56 (emphasis added). She has no "protectable privacy interest" in her "work-related" browsing activity.

Employees cannot have a reasonable expectation of privacy in their use of a <u>work</u> computer given the monitoring commonly performed by employers. *See, e.g.*, *U.S. v. Greiner*, 235 Fed. Appx. 541, 542 (9th Cir. 2007) ("Through acquiescence in his employer's established computer-use policy, Greiner had consented that his employer might permit his office, and the workplace computer within that office, to be searched [by law enforcement]"); *U.S. v. Caputo*, 2019 U.S. Dist. LEXIS 192511, *6 (D. Or. Nov. 26, 2019) (denying motion to suppress evidence obtained from search of defendant's work emails; defendant lacked any expectation of privacy in his work email account); *U.S. v. Busby,* 2011 U.S. Dist. LEXIS 145217, at *17 (N.D. Cal. Dec. 16, 2011) (employee did not have reasonable expectation of privacy over computer files searched by law enforcement); *TBG Ins. Servs. Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 451-452 (2002) ("[T]he use of computers in the employment context carries with it social norms that effectively

diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers"); *see also O'Connor v. Ortega,* 480 U.S. 709, 717 (1987).

It is common sense that an employer may monitor the online activity of their employees who are working on company-owned computers. It is unreasonable for Lineberry to claim she was personally "injured" within the meaning of Article III because she expected work-related browsing activity on her work computer to remain private. Moreover, the alleged browsing she did as part of her employment reveals nothing about her personally, such as her "likes, dislikes, interests, and habits" or her "private li[fe]." *See In re Facebook*, 956 F.3d at 599. Because Lineberry does not have a reasonable expectation of privacy in her work-related browsing history, she has not "asserted harm" that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[,] . . . for example, . . ., disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 417. She lacks Article III standing.

**C. Plaintiffs Lack Statutory Standing To Assert Their CDAFA And UCL Claims**

The Court previously found Plaintiffs had alleged economic loss sufficient to establish statutory standing under CDAFA and the UCL because they alleged they would not have purchased anything from an AddShoppers retail partner (*i.e.*, brand partner) — named as "John Doe Companies" in the original Complaint — had they known AddShoppers would later send unwanted emails. *See* Doc. No. 89, ¶ 3. Based on this allegation, the Court found Plaintiffs were "denied the benefit of their bargain with these retailers because of AddShoppers's actions." *Id.* But that allegation does <u>not</u> appear in the FAC. The CDAFA and UCL claims must therefore be dismissed for lack of statutory standing.[6]

---

[6] Plaintiffs have stated in Lineberry's discovery responses and represented to the Magistrate Judge that they are no longer pursuing the UCL claim. *See* Doc. No. 136, pp. 2-3. Accordingly, for this reason alone, the UCL claim should be dismissed with prejudice.

Unlike the original Complaint, the FAC does not allege "John Doe Companies collected and provided Plaintiffs personal information" to AddShoppers, or that "Plaintiffs would not have purchased from John Doe Companies if they had known they would be placed into SafeOpt." *Compare* Doc. No. 1, ¶¶ 13, 154 *with* Doc. No. 135; *see also* Doc. No. 121-3 (reflecting redline changes between Complaint and FAC). Accordingly, the FAC does not "create[] a reasonable inference that the plaintiffs purchased products from retailers in the network created by AddShoppers, and that they entered AddShoppers' network and received unwanted email communications as a result of those purchases." *See* Doc. No. 89, ¶ 3. Indeed, despite having nearly a year to conduct discovery, Lineberry does not allege she made a single purchase from any brand partner of AddShoppers.[7] Tellingly, she has refused to provide any substantive discovery responses or documents on this point. *See* Doc. No. 136, pp. 1-2. And although Cordero alleges he obtained the list of brand partner websites on which his information was supposedly tracked, he does not allege he made a purchase from any of those companies. *See* Doc. No. 135, ¶¶ 63-66.

As the Court already recognized, Plaintiffs cannot satisfy the statutory standing requirements by alleging AddShoppers was unjustly enriched by the alleged misappropriation and sale of their data. *See* Doc. No. 89, ¶ 3 ("The Court continues to be skeptical of the plaintiff's theory that California's statutory standing requirement … can be satisfied simply by alleging that the defendant was unjustly enriched by the misappropriation of personal information.").

Moreover, CDAFA only allows for recovery of specific type of damage, which has not been alleged here. CDAFA is "an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips,* 2015 U.S. Dist. LEXIS 164523, at *8 (C.D. Cal. Dec. 7, 2015). Although

---

[7] The Court previously noted that "plaintiffs could not have specifically identified which online purchases provided AddShoppers with their personal information." Doc. No. 89, n. 3. Since then, however, AddShoppers has since produced documents showing every instance where AddShoppers' records reflect a device it associated with Lineberry's email address visited a brand partner website. *See* Doc. No. 136, p. 2.

CDAFA does not define "damage" or "loss," it permits recovery of "[c]ompensatory damages [that] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Pen. Code § 502(e)(1). Thus, the statute's "damage or loss" requirement, codified at Cal. Penal Code section 502(e)(1), "contemplates some damage to the computer system, network, program, or data contained on that computer, *as opposed to data generated by a plaintiff while engaging with a defendant's website.*" *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (emphasis added).

Lineberry is not the owner of the computer system, network, program, or data that was allegedly impacted by AddShoppers. She visited medeterrahemp.org "on her work computer, for her job," and alleges AddShoppers tracked her "work-related browsing history." Doc. No. 135, ¶¶ 53-56. Lineberry has no ownership interest in her employer's hardware or the data surrounding the web browsing she conducted for her employer.

Additionally, neither Lineberry nor Cordero alleges incurring any expenses investigating damage to their computers from AddShoppers' cookies or attempting to remove them, only vague conclusory "compensatory damages." *See generally* Doc. No. 135. Instead, Plaintiffs allege lost value of their alleged personally identifiable data, and demand "recovery of rental or use value" of this information. *Id.*, ¶¶ 67-68, 93.

But courts routinely reject the argument that a loss in value of personally identifiable data is sufficient to support a claim under CDAFA. *See, e.g.,Ingrao,* I2024 U.S. Dist. LEXIS 214748, at **48-49 (dismissing a near word-for-word identical CDAFA claim filed against AddShoppers: "Because Ingrao only alleges the loss of data generated while she engaged with Defendant AddShoppers' partner websites, including Defendant Nutrisystem's website, rather than damage to her computer system, network, program, or data contained on her computer as required to recover under the CDAFA, she fails to state a civil claim under the CDAFA."); *Heiting*, 709 F. Supp. 3d at 1020-21 (collecting cases and finding that "[t]he majority of courts to consider the issue appear to find that such alleged privacy invasions do not qualify under

[CDAFA]"); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data, as discussed above, is 'damage or loss' within the meaning of the CDAFA."); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1082 (N.D. Cal. Sept. 7, 2023) (dismissing CDAFA claim, citing *Cottle*); *Pratt v. Higgins*, No. 22-cv-04228-HSG, 2023 U.S. Dist. LEXIS 122849, at *27-28 (N.D. Cal. July 17, 2023) (finding even access to communications, notes, and medical information did not create the type of loss contemplated by CDAFA's private civil cause of action).

Similarly, this theory of economic loss is insufficient to establish standing under the UCL. The majority of courts that have considered the issue find that allegations like Plaintiffs'—in which the alleged misappropriation of personal data somehow diminishes its value—does not confer standing, absent specific allegations that Plaintiffs "intended to participate in the market to sell such information." *Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS, 2024 WL 2873482, at *8 (C.D. Cal. June 5, 2024); *see also Lau v. Gen Digital Inc.*, No. 22-cv-08981-JST, 2023 WL 10553772 (collecting cases); *Hazel v. Prudential Fin., Inc*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("Just because Plaintiffs' data is valuable in the abstract, and because [a company might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result."). Here, Plaintiffs fail "to adequately plead that they lost money or property" because they do not allege that "they ever attempted or intended to participate" in the market for the information allegedly collected and stored by AddShoppers, "or otherwise to derive economic value from" that information. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022).

### D. The CIPA Claim Fails Because Plaintiffs Do Not Allege The "Contents" Of Their "Communications" Were Intercepted

The CIPA makes it illegal for a person to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication," while such is "in transit," without the consent of all parties to the communication. Cal. Pen. Code § 631(a). The

amendments in the FAC make clear that the CIPA claim must be dismissed because Plaintiffs fail to allege AddShoppers intercepted the "contents" of their "communications."

Courts analyzing CIPA claims apply the same analysis used under the federal Wiretap Act, 18 U.S.C. §§ 2510-2523, (the "Wiretap Act").  *See Saleh v. Nike, Inc*., 562 F. Supp. 3d. 503, 517 (C.D. Cal. Sep. 27, 2021).  Under the Wiretap Act, "contents," when used with respect to electronic communication, "includes any information concerning the substance, purport, or meaning of that communication."  18 U.S.C. § 2510(8).  Additionally, under the Wiretap Act, "contents" of an online communication "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."  *In re Zynga Privacy Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014) ("*Zynga*").  The Ninth Circuit affirmed the district court's dismissal of Wiretap Act claims in *Zynga*, finding that "basic identification and address information" automatically transmitted by defendants to third-party websites did not constitute "contents" of a communication; rather they were the type of "record information" that Congress excluded from the definition of "contents."  *Id*. at 1107.

Relying on *Zynga*, several district courts have found that online browsing history data does <u>not</u> constitute the "contents" of communications under CIPA.  *See e.g., Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. Jul. 15, 2021) (dismissing CIPA claims because "keystrokes, mouse clicks, pages viewed . . . . the date and time of the visit," and other similar data were not "contents" of communications); *Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. Jan. 25, 2024) (same); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 833 (N.D. Cal. Apr. 8, 2021) (parties agreed that "IP addresses, locations, browser types, and operating systems" were not "contents" of communications); *Ingrao*, 2024 U.S. Dist. LEXIS 214748 at **45-46 (dismissing CIPA claim; no "contents" of communications alleged because capturing plaintiff's visit to website "is not substantive information").

Plaintiffs' CIPA claim fails for the same reasons.  Plaintiffs allege no facts demonstrating AddShoppers intercepted the "contents" of any "communications" within the

meaning of the CIPA.  Lineberry alleges only that AddShoppers "tracked [her] precise webpage visit, including the items she viewed," and Cordero alleges even less only that companies tracked "the exact dates and times he visited other websites."  Doc. No. 135, ¶¶ 54, 63.  This type of browsing history is not "contents" of communications under CIPA.  *See e.g., Yoon*, 549 F. Supp. 3d 1073, 1082-83; *Mikulsky*, 713 F. Supp. 3d at 845; *Ingrao*, 2024 U.S. Dist. LEXIS 214748 at **45-46.  The CIPA claim must be dismissed.

## IV.    <u>CONCLUSION</u>

For the reasons stated herein, AddShoppers respectfully requests the Court grant this motion to dismiss as to all claims in the FAC asserted against AddShoppers.  Plaintiffs were given the opportunity to amend their pleading once, when the Court granted in part the first motion to dismiss, but they elected to stand on their pleading.  They then filed a motion for leave to amend the complaint, which was granted.  The case has now been pending for over a year and a half.  No further amendments should be permitted, and the entire action should be dismissed with prejudice.

DATED December 6, 2024                    WOMBLE BOND DICKINSON (US) LLP
                                          TOMIO B. NARITA
                                          JEFFREY A. TOPOR
                                          R. TRAVIS CAMPBELL


                              By:  /s/R. Travis Campbell
                                   R. Travis Campbell
                                   Attorneys for Defendant
                                   Addshoppers, Inc.