# EXHIBIT 12



(/)

Need Help? (https://www.addshoppers.com/contact)

Login (https://my.addshoppers.com/)

Request A Demo (https://calendly.com/d/cft-zy7-gz2/safeopt-intro?utm_medium=addshoppers.com&utm_source=website)

# Master Subscription Agreement

This Master Subscription Agreement ("**Agreement**"), is made by and between AddShoppers Inc., a Delaware C-Corporation with offices at 15806 Brookway Drive Suite 200 Huntersville, NC 28078 and its affiliates ("**AddShoppers**") and ("**Client**", together with AddShoppers, the "**Parties**", and each, a "**Party**"). This Agreement is effective on the date last executed by the Parties (the "**Effective Date**").

WHEREAS, AddShoppers has developed and is a provider of certain web-based platforms and software services (the "**Subscribed Services**"); and

WHEREAS, Client desires to obtain such Subscribed Services from AddShoppers on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1. <u>Services</u>**

1.1 <u>Subscribed Services</u>.  Subject to the terms and conditions of this Agreement, AddShoppers will provide Client with the Subscribed Services described in one or more order form or scopes of work (each a "**SOW**").  The Subscribed Services will be provided for the applicable terms set forth in the respective SOW.  Client may use the Subscribed Services solely for their intended purpose in accordance with this Agreement. In the event of a conflict between the terms of this Agreement and the terms of a SOW, the terms of this Agreement will govern to the extent of the conflict unless the SOW expressly states that it is intended to modify the conflicting terms of this Agreement, in which case the terms of the SOW will govern to the extent of the conflict.

1.2 <u>Client Information</u>.  Client shall designate one contact as the Party for communication with AddShoppers in connection with the Subscribed Services. Client may change such contact upon written notice to AddShoppers.  Client shall provide AddShoppers with its relevant data, which shall include, but is not limited to, all materials, information, photography, writings, files, documentation, and other content or materials provided to AddShoppers that are reasonably required in order for AddShoppers to perform the Subscribed Services (the "**Client Content**") pursuant to this Agreement.  AddShoppers shall have full access to Client Content in order to fulfill the Subscribed Services denoted in this Agreement or pursuant to an SOW hereunder. AddShoppers shall not use any Client Content except as pursuant to the limited rights granted in this Agreement and the applicable SOW.

1.3 <u>Service Delivery</u>.  AddShoppers may provide the Subscribed Services from any facility and may from time to time transfer any or all of the Services being provided hereunder to any new facility(ies) or relocate the personnel, equipment and other resources used in providing those Subscribed Services. AddShoppers may, in its sole discretion, make any changes to any Subscribed Service that it deems necessary or useful to (i) maintain or enhance (a) the quality or delivery of AddShoppers's products or services to its customers, (b) the competitive strength of, or market for, AddShoppers's products or services, (c) such Subscribed Services' cost efficiency or performance, or (ii) to comply with applicable law.

## 2. <u>Grant of License</u>

2.1 <u>Subscribed Services</u>.  Subject to the terms of this Agreement, AddShoppers hereby grants to Client a nonexclusive, revocable, limited, non-transferable, non-sublicensable license to allow the Client's authorized users (the "**Authorized Users**") to use the Subscribed Services during the Term of this Agreement.  Client's rights in the Subscribed Services will be limited to the limited license expressly granted in this Section 2.1. AddShoppers reserves all rights and licenses in and to the Subscribed Services not expressly granted to Client under this Agreement.

2.2 <u>Client Content</u>.  Subject to the terms of this Agreement, Client hereby grants to AddShoppers a non-exclusive, revocable, royalty-free, worldwide, transferable, limited license to allow AddShoppers to copy, reproduce, store, distribute, publish, export, adapt, edit, translate, and otherwise use and process the Client Content as reasonably necessary or useful to perform, improve or otherwise exercise its rights and obligations under this Agreement for: (a) the Subscribed Services; and (b) the Data Co-op (as defined in Section 2.6) solely for obtaining deterministic individual identity resolution, use of the individual contact suppression list and any other Client

Content provided by Client related to contacting Authorized Users. Client warrants to AddShoppers that Client has the right to grant the foregoing license and provide Client Content to AddShoppers in accordance with this Agreement. AddShoppers rights in the Client Content will be limited to the limited license expressly granted in this Section 2.2.

2.3 Restrictions. Except for the license granted herein, Client will not: (a) reproduce, display, modify, rent, sell, license, create derivative works of or distribute the Subscribed Services, or attempt to reverse engineer, decompile, disassemble or access the source code for the Subscribed Services or any component thereof; (b) use, evaluate or view the Subscribed Services for the purpose of designing, modifying, or otherwise creating any environment, program or infrastructure or any derivative thereof, which performs functions similar to the functions performed by the Subscribed Services infringes an intellectual property right (patent or copyright) of the Subscribed Services; (c) use the Subscribed Services or any component thereof, in the operation of a service bureau to support or process any data of any party other than Client; (d) permit any party, other than the Client's then-currently authorized user(s) to independently access the Subscribed Services; (e) access the Subscribed Services other than through the authorized User IDs and passwords; (f) interfere with or disrupt the integrity or performance of any Subscribed Service; (g) permit direct or indirect access to or use of any Service in a way that circumvents a usage limit; (h) defame, abuse, harass, stalk, threaten any individual or infringe or otherwise violate the legal rights (such as rights of privacy, publicity and intellectual property) of others or AddShoppers; (i) distribute any harmful, inappropriate, profane, vulgar, infringing, obscene, false, fraudulent, tortuous, indecent, unlawful, or otherwise objectionable material or information (including any unsolicited commercial communications); (j) engage in or encourage any conduct that could constitute a criminal offense or give rise to civil liability for AddShoppers; (k) misrepresent or in any other way falsely identify Client's identity or affiliation, including through impersonation or altering any technical information in communications using the Subscribed Services; (l) transmit or upload any material through the Services that contains viruses, trojan horses, worms, time bombs, cancelbots, or any other programs with the intent or effect of damaging, destroying, disrupting or otherwise impairing AddShoppers', or any other person's or entity's, network, computer system, or other equipment; (m) interfere with or disrupt the Services, networks or servers connected to the AddShoppers systems or violate the regulations, policies or procedures of such networks or servers, including unlawful or unauthorized altering any of the information submitted through the Services; (n) attempt to gain unauthorized access to the Services, other AddShoppers customers' computer systems or networks using the Services through any means; (o) interfere with another person's use of the Services; and (p) neither Client nor an authorized user shall remove, obscure, or alter any copyright notice, trademarks, logos and trade names, or other proprietary rights notices affixed to, or contained within the Subscribed Services. For the avoidance of doubt, AddShoppers has no obligation to verify the identity of any persons who gains access to the Subscribed Services by means of Client's authorized access.

2.4 User Data. Client affirms that its privacy policy, its terms of service, or any other similar Client agreement permit the Client to share its "**User Data**", which is the data collected by AddShoppers technology from the Authorized Users related to such Authorized Users' web browsing as a result of services rendered to the Client, as well as user opt-in consent to share the User Data with AddShoppers. Client hereby grants AddShoppers and all of its subsidiaries, affiliates, successors,

and assigns, a limited, irrevocable, non-transferable (except as permitted in Section 9.8) license to their User Data, as reasonably necessary or useful to perform and improve the Subscribed Services and for the exercise of AddShoppers's rights under this Agreement, including without limitation, for the purpose of providing identity resolution and direct messaging services for the term of this Agreement. Additionally, Client agrees that data derived by AddShoppers from AddShoppers's performance of the Subscribed Services (including, without limitation, the Data Co-op) or input by or feedback from Client may be used for the purposes of analysis, including benchmarking, insights, statistical analysis, trend analysis, creation of data models, and creation of statistical rules. The results of such analysis ("**De-identified Data**") may be used by AddShoppers for any lawful purpose both during and following the Term. Notwithstanding anything contained in this Agreement, De-identified Data shall not contain (i) any Confidential Information of Client, (ii) any information that identifies or can be reasonably used to identify an individual person, or (iii) any information that identifies or can be reasonably used to identify Client or its affiliates and their suppliers.

2.5 Prohibited User Data. Client represents and warrants that no Client Content will include any patient, medical or other protected health information regulated by HIPAA or any similar federal or state laws, rules or regulations ("Health Information") or other information that is subject to international, federal, state, or local laws or ordinances now or hereafter enacted regarding data protection or privacy, including, but not limited to, the Health Insurance Portability and Accountability Act, the Health Information Technology for Economic and Clinical Health Act, the Fair Credit Reporting Act, the Children's Online Privacy Protection Act and the Gramm-Leach-Bliley Act. Client acknowledges that AddShoppers is not a Business Associate or subcontractor (as those terms are defined in HIPAA) and that AddShoppers is not HIPAA compliant. "HIPAA" means the Health Insurance Portability and Accountability Act, as amended and supplemented. AddShoppers will have no liability under this Agreement for Health Information, notwithstanding anything to the contrary herein.

2.6   Data Co-op By subscribing to the Subscribed Services, Client acknowledges the following: The Data Co-op (the "**Data Co-op**") leverages a shared pool of user data collected by AddShoppers technology. AddShoppers hereby affirms that all other members of the Data Co-op have granted AddShoppers and all of its subsidiaries, affiliates, successors, and assigns with a limited, non-transferable (except as permitted in Section 9.8) license to their User Data to for the purpose of providing identity resolution and direct messaging services for each Data Co-op member's audience. Further, all other members of the Data Co-op have affirmed that their Privacy Policies and Terms of Service permit each member to share their contributed User Data and user opt-in consent with AddShoppers. Under no circumstances will any member of the Data Co-op ever have direct access to another member's User Data or the source of any User Data.

## 3. Fees and Payment

3.1 Fees.  Each SOW shall set forth the fees and costs for the Subscribed Services to be performed. Client agrees to pay all such fees in accordance with the payment terms set forth in this Section 3 unless otherwise specified in such applicable SOW.  All payments under this Agreement are non-refundable.

3.2 <u>Expenses</u>.  Client agrees to reimburse AddShoppers for all pre-approved and actual expenses, travel, administrative, equipment, licensing and other out of pocket expenses incurred in conjunction with AddShoppers performance of the Subscribed Services.  Unless included as a line item in a SOW, such expenses are not included in the fees stated therein. AddShoppers will maintain complete and accurate accounting records to substantiate AddShoppers' charges and expenses.

3.3 <u>Invoicing and Payment Terms</u>. All fees and expenses are in United States Dollars. Unless stated otherwise in the SOW, Client will make all payments within fifteen (15) calendar days upon receipt of invoice.  Payments by Client that are more than thirty (30) days past due will be subject to a late fee at the rate of two percent (2%) per month (or the maximum allowed by applicable law, if less) on that overdue balance. In addition, if any payment becomes more than thirty (30) days past due, then AddShoppers may immediately accelerate any remaining payments due, if any, and the entire balance will immediately become due. Client will be responsible for any reasonable costs resulting from collection by AddShoppers of any such late payments, including, without limitation, reasonable attorneys' fees, expenses, costs of collection and court costs.

In the event Client is billed through an affiliate network, AddShoppers will have sixty (60) days to audit the Client's invoice to ensure its accuracy. AddShoppers will provide a copy of all results to Client with all backup materials generated, and Client will have thirty (30) days to review, investigate, and dispute the results. Following Client review, if the audit results in an underpayment, Client will pay the underpayment to AddShoppers at Client's rate as the sole and exclusive remedy.

3.4 <u>Taxes and Withholding</u>.  The fees charged by AddShoppers hereunder do not include any sales, use, excise, value added or similar taxes, duties or federal, state or local authorities. Client will be responsible for all applicable federal, state, local or other taxes, including, without limitation, withholding, sales, use, value added taxes or any amounts levied in lieu thereof imposed by any federal, state or local governmental entity for products or services provided under this Agreement; provided, however, Client will have no responsibility for taxes based on AddShoppers net income or payroll. AddShoppers will invoice Client for the amounts of any such taxes AddShoppers is legally obligated to collect, and Client will pay such amounts to AddShoppers promptly upon receipt of such invoice. If any applicable law requires Client to withhold amounts from any payments to AddShoppers hereunder, then the sum payable by Client upon which the deduction or withholding is based will be increased to the extent necessary to ensure that, after such deduction or withholding, AddShoppers receives and retains, free from liability for such deduction or withholding, a net amount equal to the amount AddShoppers would have received and retained in the absence of such required deduction or withholding.

3.5 <u>Reporting</u>.  All usage figures shall be based on AddShoppers reporting data, which shall be the only reporting information used for calculation of any additional payments due by Client for any usage based fees set forth in each SOW.

3.6 Support and Maintenance.  AddShoppers will provide Client with maintenance and support regarding the use of the Subscribed Services during the Term (defined herein) in accordance with each SOW.

(a) Changes in Scope.  Either Party may, from time to time, deem it necessary to make modifications by altering, adding to or deducting from the Subscribed Services described in a SOW, including requests for changes in project plans, scope, specifications, schedule, designs or requirements.  Any such request for a change must be in writing and must be executed by both Parties to become effective.

(b) Estimates and Adjustments.  AddShoppers shall not be responsible for delays and/or costs caused by or due to any third-Party software updates and/or updated or newer versions (the "**Updates**").  In the event Client desires to add Updates to the Subscribed Services, the Parties shall modify the SOW and related fees pursuant to Section 3.6(a) above.

3.7 Service Availability.

(a) The Subscribed Services will not be available during scheduled downtime and during the loading of new data.  Scheduled outages for maintenance and data loading in whole or in part ("**Scheduled Downtime**") and data loading will occur whenever possible during Non-Business Hours, although some data extract files may not be available during Non-Business Hours and the data load process may occur during Business Hours.  "**Business Hours**" means 8 a.m. to 6 p.m. E.S.T., Monday through Friday, excluding national holidays.  "**Non-Business Hours**" means all hours that are not Business Hours.  AddShoppers will use commercially reasonable efforts to minimize any disruption, inaccessibility and/or inoperability of the Subscribed Services in connection with Scheduled Downtime.

(b) All times at which the Subscribed Services are not available to Client will be considered "**Excess Downtime**," except downtime caused by Permitted Occurrences.  "**Permitted Occurrences**" means: (i) Scheduled Downtime up to five (5) hours per month; (b) failure caused by delay or interruption in telecommunications provided by Client or by third Party services outside the AddShoppers-controlled network; (iii) failure caused by a Force Majeure Event; (iv) deficiencies or errors in the data feeds provided by Client; or (v) failure of Client to develop interfaces sufficient for the receipt of the Subscribed Services.  "**Service Availability**" means any time, in any given month, in which there is no Excess Downtime.

(c) Only if an applicable SOW states that the Subscribed Services are being offered as a software-as-a-service, any time Service Availability falls below 99.9% in any given calendar month, Client may be eligible to receive Service Credits, which includes up to seven (7) days of Subscribed Services, to be added to the end of the relevant calendar month, at no additional charge. Service Credit will be granted solely for the portion of the Subscribed Services that are being offered as a software-as-a-service (if any) and according to the following schedule:

Service Availability = Service Credit

99.90%-100.00% = 0 calendar days

99.80% -99.89% = 1 calendar day

99.70% - 99.79% = 2 calendar days

99.60% - 99.69% = 3 calendar days

99.50% -99.59% = 5 calendar days

Less than 99.5% = 7 calendar days maximum

3.8 Automatic Payments. Client authorizes AddShoppers to make automatically recurring debits to the bank or card account you designate each period to pay the amount due. Upon completion of each scheduled payment, AddShoppers will provide a receipt indicating the amount and date of the payment that was automatically debited by means of an e-mail message to the address you have provided. Your automatic payments will continue until the terms of the agreement are satisfied.

## 4. Intellectual Property

4.1 AddShoppers Intellectual Property. No rights are granted to Client hereunder other than as expressly set forth in this Agreement. AddShoppers exclusively owns all intellectual property rights, title, and interest in and to the Subscribed Services, including, but not limited to any and all processes, platforms, methodologies, know-how, related computer programs or applications, including all modifications, improvements, upgrades and derivative works and all intellectual property rights therein. Client agrees and acknowledges that no title to any intellectual property, including but not limited to the Subscribed Software passes to Client under this Agreement. Client shall have no claim, right, title or interest in or to the Subscribed Services.

4.2 Client Content. Client shall own all right, title, and interest in and to any and all Client Content. Client shall have sole responsibility for the accuracy, quality, and integrity of the Client Content.

## 5. Confidentiality.

5.1 Definition of Confidential Information. Each Party (the "**Receiving Party**") agrees that the other Party (the "**Disclosing Party**") shall not disclose Confidential Information (as defined below) except as allowed under the Agreement. "**Confidential Information**" means (a) all information disclosed in tangible form by the Disclosing Party and marked "confidential" or "proprietary", or (b) all information disclosed in intangible form by the Disclosing Party and designated as confidential or proprietary at the time of disclosure or (c) intangible information which is not designated as confidential or proprietary when disclosed, but which a reasonable person, given the nature of the information disclosed, would deem as confidential or proprietary. Confidential Information may include, without limitation, technical, customer, product, service, and/or business information or concepts in written, graphic, or other tangible or intangible forms including, without limitation, specifications, product features, data, source code, computer programs, drawings, AddShoppers' know-how, notes, models, reports, research, contracts, mock-ups, release schedules, and samples, whether in written, electronic, website-based, or other form, and whether provided by a Party or one of its representatives, and all copies, summaries, and extracts of any of the foregoing.

5.2 <u>Protection of Confidential Information</u>.  The Receiving Party agrees to protect Confidential Information (whether disclosed prior to or subsequent to the Execution Date) from unauthorized use, dissemination or publication by using the same degree of care, but not less than a reasonable degree of care, as the Receiving Party uses to protect its own confidential or proprietary information of a similar nature. The Receiving Party will limit the use of and access to the Disclosing Party's Confidential Information to the Receiving Party's employees, accountant, financial advisors or attorneys who have a demonstrable need to know such information, have been notified that such information is Confidential Information and who are under binding obligations of confidentiality no less restrictive than those of this Agreement. The Receiving Party agrees not to reverse engineer, disassemble or decompile any prototypes, software or other tangible objects that embody the Disclosing Party's Confidential Information. Furthermore, the Receiving Party agrees not to copy any of the Disclosing Party's Confidential Information unless and until the Disclosing Party approves in writing such copying, except as reasonably required to evaluate and/or conduct the Parties' transaction(s). The Receiving Party agrees to reproduce the Disclosing Party's proprietary rights notices on any such authorized copies, in the same manner in which such notices were set forth in or on the original.

5.3 <u>Return of Confidential Information</u>.  All Confidential Information, unless otherwise specified in writing, remains the property of the Disclosing Party and may be used by the Receiving Party solely for the purposes set forth in this Agreement. Upon written request of the Disclosing Party or upon the expiration or termination of this Agreement, any and all written or electronic materials (and all copies, extracts, and summaries thereof) in the Receiving Party's possession, custody or control will be either promptly returned to the Disclosing Party, or promptly destroyed by the Receiving Party (with a certification of destruction transmitted to the Disclosing Party within 10 days of demand from such demand) at the Receiving Party's expense.

5.4 <u>Exceptions</u>.  The restrictions of confidentiality set forth in this <u>Section 5</u> will not apply to any Confidential Information: (a) after it has become generally available to the public through no fault of the Receiving Party or its consultants, agents or subcontractors; (b) that is rightfully in the Receiving Party's possession before disclosure to the Receiving Party by the Disclosing Party; (c) is independently developed by the Receiving Party without the developing person(s) having access to the Disclosing Party's Confidential Information, or (d) is received by the Receiving Party in good faith from a third Party not subject to an obligation of confidentiality. In addition, the Receiving Party may disclose Confidential Information if required to do so by statute, administrative process or court order, provided (i) that the Receiving Party gives the Disclosing Party sufficient advance notice of such disclosure requirement, (ii) the Receiving Party cooperates with the Disclosing Party in trying to seek a protective order in connection therewith at the sole cost and expense of the Disclosing Party, and (iii) the scope of such disclosure is limited to the extent possible.

5.5 <u>Disclosure of Agreement</u>.  Each Party will be entitled to disclose in its normal course of business the existence and general nature of this Agreement but neither Party will disclose the specific terms or conditions of this Agreement to any third Party without the prior written consent of the other Party. Notwithstanding the foregoing, a Party may disclose this Agreement as follows: (a) as required by law; (b) to its own legal counsel; (c) in connection with the enforcement of this

Agreement; (d) in confidence to accountants, banks and financing sources (including shareholders and investors), and to their advisors; and (e) in confidence in connection with an actual or proposed merger, acquisition or similar transaction.

5.6 <u>Feedback</u>.  Any feedback, comments, suggestions or proposed modifications to the Subscribed Services provided by Client to AddShoppers may be freely used by AddShoppers without limitation, notice, or duty of accounting.

## 6. <u>Term and Termination</u>

6.1 <u>Term.</u>  This Agreement shall commence on the Effective Date and continue for the Term specified in the SOW ("**Initial Term**").  Thereafter, unless either Party provides thirty (30) days' written notice of its intent not to renew, the Agreement will automatically renew for a term equal to that of the Initial Term (each a "**Renewal Term**").  The Initial Term and the Renewal Term shall be referred to herein, collectively, as the "**Term**".  Notwithstanding the foregoing, the Term shall survive until all SOWs have expired or terminated in accordance with their terms.

6.2 <u>Termination</u>.

(a) <u>For Cause</u>.  Either Party may terminate this Agreement and/or an applicable SOW at any time upon written notice to the other Party if the other Party: (i) breaches any material term hereof and fails to cure such breach within thirty (30) days after receiving written notice of such breach from the non-breaching Party; (ii) becomes or is declared insolvent or bankrupt; (iii) is the subject of any proceeding related to its bankruptcy, liquidation or insolvency (whether voluntary or involuntary) which is not dismissed within ninety (90) calendar days; or (iv) all or a substantial portion of the assets of the other Party are transferred to an assignee for the benefit of creditors.

## 7. <u>Representations and Warranties.</u>

7.1 As of the Execution Date and at all times thereafter, each of the Parties represents and warrants that:  (a) the Agreement constitutes its valid and binding obligation and is enforceable against it in accordance with the terms of this Agreement; (b) the execution and delivery of this Agreement by it and the performance of its obligations hereunder:  (i) are not in violation or breach of, and will not conflict with or constitute a default under, any material contract, agreement or commitment binding upon it; and (ii) will not conflict with or violate in any material manner, any applicable law, rule, regulation, judgment, order or decree of any government, governmental instrumentality or court having jurisdiction over such Party; and (iii) it is in compliance with all applicable federal, state and local laws, rules, regulations and ordinances, and all binding orders of any court, agency or other governmental body with appropriate authority and have obtained all applicable permits and licenses required of such Party in connection with their obligations under this Agreement.

7.2 Client further represents, warrants and covenants that (i) it shall use the Subscribed Services solely for its legitimate business purposes as contemplated by this Agreement, and shall not interfere with the integrity or performance of the Subscribed Services or the data contained therein or attempt to gain unauthorized access to the Subscribed Services, (ii) the Client Content and any sites to which a user is directed following a click on any such link will not contain any obscene,

defamatory, infringing, illegal, deceptive, gambling related or hateful content, (iii) the Client Content will be free of any "virus", "Trojan Horse", "worm", "disabling", "lock out" or any other malicious code as such terms are understood in the computer industry, (iv) Client's Privacy Policy and Terms of Service permit the Client to share its User Data; (v) it is authorized to provide any Client Content and User Data provided to AddShoppers by Client for the purposes of this Agreement; and (vi) Client has obtained, and be deemed to have hereby granted to AddShoppers, all rights and/or licenses necessary to allow AddShoppers to use, store, audit, optimize and serve the Client Content through the Subscribed Services.

7.3 AddShoppers warrants and represents that: (i) AddShoppers will establish and maintain diligent safeguards that are compliant with applicable data privacy laws, including GDPR and CCPA, to protect against the destruction, loss, disclosure or alteration of data collected, accessed, or processed by AddShoppers in connection with Client's use of the Subscribed Services, including User Data, in the possession of AddShoppers or to which AddShoppers may have access; (ii) AddShoppers will comply at all times with applicable privacy policies, then-current industry standards, including CAN-SPAM, and practices, and foreign and domestic laws, orders and regulations relating to privacy, security, and data protection. AddShoppers maintains a TRUSTe-certified Privacy Policy viewable at: https://www.addshoppers.com/privacy (https://www.addshoppers.com/privacy).

7.4 <u>DISCLAIMER</u>. EXCEPT FOR THE EXPRESS WARRANTIES STATED IN THIS <u>SECTION 7</u>, BOTH PARTIES DISCLAIM ALL OTHER WARRANTIES, WHETHER IMPLIED BY OPERATION OF LAW OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE SUBSCRIBED SERVICES ARE PROVIDED "AS IS." ADDSHOPPERS DOES NOT WARRANT THAT THE SUBSCRIBED SERVICES WILL OPERATE UNINTERRUPTED OR ERROR-FREE. ADDSHOPPERS SHALL NOT BE RESPONSIBLE FOR ANY INFORMATION PROVIDED BY CLIENT IN CLIENT CONTENT AND ADDSHOPPERS SHALL NOT BE LIABLE FOR THE ACCURACY OR COMPLETENESS OF CLIENT CONTENT. ADDSHOPPERS MAKES NO REPRESENTATION OR WARRANTY REGARDING THE RESULTS CLIENT WILL OBTAIN BY USING THE SUBSCRIBED SERVICES. ADDSHOPPERS DISCLAIMS ALL LIABILITY AND INDEMNIFICATION OBLIGATIONS FOR ANY HARM OR DAMAGES CAUSED BY ANY THIRD-PARTY HOSTING ADDSHOPPERS.

7.5 <u>Limitation of Liability</u>.

EXCEPTING (A) EACH PARTY'S INDEMNIFICATION OBLIGATIONS OR; (B) ANY DAMAGES OR OTHER LIABILITIES ARISING OUT OF OR RELATING TO A PARTY'S FAILURE TO COMPLY WITH ITS CONFIDENTIALITY OBLIGATIONS HEREIN, AND EXCEPTING CLIENT'S OBLIGATION TO PAY ADDSHOPPERS IN ACCORDANCE WITH THIS AGREEMENT OR AN APPLICABLE SOW, IN NO CASE SHALL EITHER PARTY'S MAXIMUM LIABILITY ARISING OUT OF THIS AGREEMENT, WHETHER BASED UPON WARRANTY, CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY, OR OTHERWISE, EXCEED IN THE AGGREGATE, THE SUM OF THE AMOUNTS PAID TO ADDSHOPPERS IN THE MOST RECENT TWO (2) MONTHS UNDER THE AGREEMENT OR APPLICABLE SOW(S) TO WHICH THE CLAIM RELATES.

EXCEPTING (A) EACH PARTY'S INDEMNIFICATION OBLIGATIONS OR; (B) ANY DAMAGES OR OTHER LIABILITIES ARISING OUT OF OR RELATING TO A PARTY'S FAILURE TO COMPLY WITH ITS CONFIDENTIALITY OBLIGATIONS HEREIN, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF REVENUES, OR LOSS OF OPPORTUNITIES, ARISING OUT OF THIS AGREEMENT OR ANY SOW, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 8. **Indemnification.**

8.1 AddShoppers shall, at its own cost, defend, indemnify and hold harmless Client and its affiliates and each of its respective officers, directors, employees, and agents from and against any demand, or any civil, criminal, administrative, or investigative claim, action, or proceeding (including arbitration) asserted, commenced or threatened against Client (a "**Claim**") regardless of the merit of such Claim, to the extent that such Claim is based a third Party alleging that the Subscribed Service infringes a third Party's intellectual property rights, provided, however, that AddShoppers will have no obligations under this Section 8.1 with respect to claims to the extent arising out of: (a) any instruction, information, designs, specifications or other materials provided by Client to AddShoppers; (b) use of the Services in combination with any materials or equipment not supplied to Client or specified by AddShoppers in writing; (c) any modifications or changes made to the Subscribed Services by or on behalf of any person or entity other than AddShoppers; (d) the use of any version of the Subscribed Services other than the most current release made available by AddShoppers; (e) Client Content; or (f) Client's breach of this Agreement, or the applicable SOW(s). If a Subscribed Service, or any part thereof, becomes, or in the opinion of AddShoppers may become, the subject of a claim of infringement or misappropriation, AddShoppers may, at its option: (x) obtain a license for Client's continued use of that Subscribed Service in accordance with this Agreement; (y) replace or modify the Subscribed Services so that they are no longer claimed to infringe or misappropriate; or (z) terminate this Agreement and refund to Client any portion of the fees prepaid by Client for the infringing Service. AddShoppers shall pay all judgments, awards, settlements, liabilities, damages, liens and claims, and all related costs, expenses and other charges suffered or incurred as a result of or in connection with a Claim, including reasonable attorneys' fees and disbursements, costs of investigation, litigation, settlement and judgment, and any taxes, interest, penalties and fines with respect to any of the foregoing ("**Losses**") incurred by Client with respect to any Claim subject to indemnification hereunder.

8.2 Client shall, at its own cost, indemnify, defend, and hold harmless AddShoppers and its officers, directors, members, agents, employees from and against any Claim, regardless of the merit of such Claim, to the extent that it is based on any assertion arising out of a breach or alleged breach by Client of Section 4 ("Intellectual Property") Section 5 ("Confidentiality") or Section 7 ("Representations and Warranties") of this Agreement or from any allegation or any Claim made by any third Party alleging that the Client Content or any other data and or materials provided by Client to AddShoppers infringe a third Party's intellectual property rights. Client shall pay all Losses incurred by AddShoppers with respect to any Claim or allegation subject to indemnification hereunder.

8.3 If any Claim or action is asserted that would entitle a Party to indemnification pursuant to this Section 8 (a "**Proceeding**"), the Party who seeks indemnification will give written notice thereof to the other Party (the "**Indemnitor**") promptly (and in any event within fifteen (15) calendar days after the service of the citation or summons); provided, however, that the failure of the Party seeking indemnification to give timely notice hereunder will not affect rights to indemnification hereunder, except to the extent that Indemnitor demonstrates actual legal prejudice by such failure. Indemnitor may elect to direct the defense or settlement of any such Proceeding by giving written notice to the Party seeking indemnification, which election will be effective immediately upon receipt by the Party seeking indemnification of such written notice of election. The Indemnitor will have the right to employ counsel reasonably acceptable to the Party seeking indemnification to defend any such Proceeding, or to compromise, settle or otherwise dispose of the same, if the Indemnitor deems it advisable to do so, all at the expense of the Indemnitor; provided that the Indemnitor will not settle, or consent to any entry of judgment in, any Proceeding without obtaining either: (i) an unconditional release of all the Parties seeking indemnification (and its Affiliates and each of their respective officers, directors, employees and agents) from all liability with respect to all claims underlying such Proceeding; or (ii) the prior written consent of the Party seeking indemnification. A Party seeking indemnification will not settle, or consent to any entry of judgment, in any Proceeding without obtaining the prior written consent of the Indemnitor. The Parties will fully cooperate with each other in any such Proceeding and will make available to each other any books or records useful for the defense of any such Proceeding.

8.4 Client Acknowledgment. Client acknowledges that Client has control over and is responsible for the Client's website, system or equipment that utilizes or accesses the Subscribed Services, and the accuracy of or how Client may interpret, rely upon, interact with or use the Subscribed Services. In no event shall AddShoppers be responsible for Client's actions or decisions based upon information or data generated by the Subscribed Services, including without limitation any loss of reputation, revenue, or loss of traffic on Client's website; or what actions it may take as a result of having used the Subscribed Services or relied upon any information or data obtained through the Subscribed Services. Client further acknowledges and agrees that third party providers including without limitation, Facebook, Apple and Google may change its technology, policies, approval process or business rules at any time and that these changes may impact AddShoppers's ability to deliver or support particular features and functionality. Client shall remain responsible and obligated to pay all fees and for the full term for each Subscribed Service under the applicable SOW; provided however that in the event there is a material change in the features and functionality of the Subscribed Services that impairs the ability of AddShoppers to deliver substantially the same Subscribed Services, Client shall have the right to terminate this Agreement.

## 9. Miscellaneous

9.1 Headings. The section headings used in this Agreement are intended for reference purposes only and shall not affect the interpretation of this Agreement.

9.2 Counterparts. This Agreement may be executed in counterparts (which may be exchanged by facsimile), each of which shall be deemed an original, but which together shall constitute one and the same instrument

9.3 <u>Waiver.</u>  No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy under this Agreement shall operate as a waiver thereof.

9.4 <u>Remedies Not Exclusive</u>.  Except as expressly set forth herein, no remedy hereunder is intended to be exclusive of any other remedy available hereunder or at law or in equity.

9.5 <u>Severability</u>.  If any provision of this Agreement is held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall apply only to such provision.  The illegality, invalidity, or unenforceability of such provision shall not in any manner affect or render illegal, invalid or unenforceable any other provision of this Agreement, and that provision, and this Agreement generally, shall be reformed, construed and enforced so as to most nearly give lawful effect to the intent of the Parties as expressed in this Agreement.  The fact that any provision of this Agreement is held to be illegal, invalid or unenforceable in a particular jurisdiction shall have no effect upon the legality, validity, or enforceability of such provision in any other jurisdiction.

9.6 <u>Non-Exclusivity</u>.  This Agreement is non-exclusive.  Nothing in this Agreement restricts either Party from developing, marketing, selling, licensing, and/or distributing its products or services in the normal course of business or through its standard sales channels.

9.7 <u>No Strict Construction</u>.  If an ambiguity or question arises with respect to any provision of this Agreement, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring either Party by virtue of authorship of any of the provisions of this Agreement.

9.8 <u>Assignment</u>.  Neither this Agreement, any SOW or any rights or licenses granted hereunder may be assigned, delegated or subcontracted by Client without the prior written consent of AddShoppers, and any attempt to assign any rights, duties or obligations which arise under this Agreement or any SOW without such consent shall be null and void. This Agreement will be binding upon and will inure to the benefit of the Parties and their respective permitted successors and assignees.  Notwithstanding the foregoing, any merger, acquisition of all or substantially all of the assets of either Party shall not be deemed an assignment under this Agreement for which prior written consent must be obtained, provided that the non-assigning Party in its sole discretion may terminate this Agreement immediately.

9.9 <u>Independent Contractor Relationship</u>.  AddShoppers is an independent contractor and this Agreement does not create an employment, agency, partnership, or joint venture relationship between AddShoppers and Client or AddShoppers and any Client personnel.  AddShoppers has sole responsibility for activities of AddShoppers and its personnel, and shall have no authority and shall not represent to any third Party that it has the authority to bind or otherwise obligate Client in any manner.

9.10 <u>Force Majeure.</u>  Neither Party shall be liable for any failure or delay in the performance of any of their respective obligations if prevented from doing so by a Force Majeure Event.  "**Force Majeure Event**" means (i) floods, earthquakes, or other similar elements of nature or acts of God; (ii) riots, strikes, civil disorders, rebellions or revolutions in the country in which the Services are being performed; or (iii) any other cause beyond the reasonable control of the non-performing Party,

provided the non-performing Party is without fault in failing to prevent or causing such default or delay, and such default or delay could not have been prevented or circumvented by the non-performing Party through the reasonable use of alternate sources, workaround plans or other reasonable precautions.

9.11 <u>Notices</u>.  All notices and other communications required or permitted to be given to a Party pursuant to this Agreement shall be in writing, and shall be deemed duly given (i) on the date delivered if personally delivered, (ii) on the second business day if sent by certified mail return receipt requested, or (iii) on the business day after being sent by Federal Express or another nationally recognized overnight courier service which utilizes a written form of receipt for next day or next business day delivery in each case addressed to the applicable Party at the address set forth on the first page of this Agreement; provided that a Party hereto may change its address for receiving notice by the proper giving of notice hereunder.

9.12 <u>Publicity</u>.  Client hereby grants AddShoppers the right to use Client's name and any trademarks or service marks used in connection with Client's name in advertising and promotional material of AddShoppers, and to include Client in any of AddShoppers customer lists. Such use of Client's name and trademarks shall be solely to identify Client as a customer of AddShoppers, and shall not be used in any manner that Client, in its sole discretion, deems to be an explicit or implicit endorsement of AddShoppers, or which is likely to cause confusion as to Client's relationship to AddShoppers Subscribed Services. Client shall allow AddShoppers to use Client as a reference.

9.13 <u>Non-Solicitation of Employees</u>.  During the Term of this Agreement, and for a period of eight (8) months after the termination or expiration thereof, Client shall not, without the prior written consent of AddShoppers, directly or indirectly through any subsidiaries or affiliates, recruit, solicit, induce or hire for employment or as an independent contractor, any employee or consultant of AddShoppers or induce or attempt to induce any such person to terminate his or her employment with, or otherwise cease his or her relationship with AddShoppers.  Client will not be deemed to violate the previous sentence with respect to any employee (i) that Client can demonstrate was solicited, offered to hire or hired solely as a result of general solicitation not specifically targeted at AddShoppers employees, or (ii) that left the employ of AddShoppers (whether voluntarily or not) prior to the earlier of said solicitation or offer. Client agrees that the restriction imposed by this covenant is fair and reasonable, reasonably required for the protection of AddShoppers, and a material term of this Agreement. If the foregoing restriction exceeds the maximum restriction that a court of competent jurisdiction would enforce, then the restriction shall be deemed limited to be the maximum that such court would enforce.

9.14 <u>Governing Law/Jurisdiction</u>.  This Agreement, and all matters arising directly or indirectly from this Agreement, shall be governed by and construed in accordance with the laws of the State of North Carolina, without regard to its conflict of laws rules applicable to contracts to be performed entirely within the State of North Carolina. For all such matters, each Party irrevocably submits to the exclusive jurisdiction of the state and federal courts located in the County of Mecklenburg, State of North Carolina, should such matter be initiated by Client. The Parties irrevocably submit to

the exclusive jurisdiction of the state and federal courts located in the County of Mecklenburg, State of North Carolina, should such matter be initiated by AddShoppers. Each Party waives any jurisdictional, venue, or inconvenient forum objections to such courts.

9.15 <u>WAIVER OF JURY TRIAL</u>.  THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY RIGHT EACH MAY HAVE TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER PARTY ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR ANY OTHER DOCUMENT EXECUTED AND DELIVERED BY EITHER PARTY IN CONNECTION HEREWITH.

9.16 <u>Entire Agreement</u>.  This Agreement, the Terms and Conditions available at https://www.addshoppers.com/terms, the Privacy Policy available at https://www.addshoppers.com/privacy, and its SOW(s) constitute the entire agreement of the Parties with respect to the subject matter hereof and supersedes any and all existing or prior agreements and communications, whether written or oral, relating to the subject matter hereof.  No modification of this Agreement shall be effective unless it is in writing *and* signed by an authorized representative of each Party.

9.17 <u>Survival</u>.  The obligations under sections that contemplate performance or observance subsequent to termination or expiration of this Agreement, including Sections 3-5 and Section 7-9 and any other sections that state that they are to survive expiration or termination, shall survive the expiration or termination of this Agreement.



**Bringing shoppers & brands together.**



(//privacy.truste.com/privacy-seal/validation?rid=ddb5c5e8-

**Navigation**

Home (https://www.addshoppers.com)

Careers (/careers)

Blog (/blog)

Privacy Policy (/privacy)

Terms of Use (/terms)

**Get info**

Contact + Help (/contact)

About SafeOpt (/safeopt)

c912-42e3-bf52-4e9d4b0c693d)

For Brands (https://www.safeopt.com/for-brands?__hstc=113293272.c2d0028da98f760a0074d7d9c35e82c0.1729692497725.1729692497725.1729692497725.1&__hssc=113293272.1.1729692497725&__hsfp=2039586572)

For Publishers (https://www.safeopt.com/for-publishers?__hstc=113293272.c2d0028da98f760a0074d7d9c35e82c0.1729692497725.1729692497725.1729692497725.1&__hssc=113293272.1.172

SafeOpt Reviews (https://www.safeoptreviews.com)

SafeOpt.org (https://www.safeopt.org)

9692497725
&__hsfp=2
039586572)

©2011-2024 AddShoppers. All Rights Reserved. We may receive a share of sales via affiliate links in emails, texts, apps, and content.