**WOMBLE BOND DICKINSON (US) LLP**
TOMIO B. NARITA (SBN 156576)
*Tomio.Narita@wbd-us.com*
JEFFREY A. TOPOR (SBN 195545)
*Jeff.Topor@wbd-us.com*
R. TRAVIS CAMPBELL (SBN 271580)
*Travis.Campbell@wbd-us.com*
SAMUEL R. MELAMED (SBN 301303)
*Samuel.Melamed@wbd-us.com*
MICHELLE F. CATAPANG (SBN 308038)
*Michelle.Catapang@wbd-us.com*
50 California Street, Suite 2750
San Francisco, California 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

**BRANN & ISAACSON**
DAVID W. BERTONI (admitted *pro hac vice*)
*dbertoni@brannlaw.com*
113 Lisbon Street
Lewiston, ME 04243-3070
Telephone: (207) 786-9325
Facsimile: (207) 783-9325

Attorneys for Defendant
ADDSHOPPERS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ABBY LINEBERRY, TERRY MICHAEL COOK and MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADDSHOPPERS, INC. and PEET'S COFFEE, INC.,<br><br>Defendants. | CASE NO. 3:23-cv-01996-VC<br><br>**DEFENDANT ADDSHOPPERS, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION AND MOTION TO EXCLUDE PORTIONS OF DECLARATION OF RICHARD SMITH**<br><br>Date: March 20, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

# TABLE ON CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS .....................................................................................2

III.  ARGUMENT ........................................................................................................4

    A.  Legal Standard Governing Class Certification ......................................................4

    B.  Plaintiffs Have Not Even Satisfied Numerosity ...................................................4

    C.  Plaintiffs Have Not Satisfied Typicality Or Adequacy..........................................5

    D.  Plaintiffs Have Not Satisfied Rule 23(b)(3) Predominance Or Superiority ...........8

        1.    Determining Who Was Allegedly Tracked Is Unmanageable....................8

        2.    Whether Class Members Were "In California" ........................................11

        3.    Article III Standing Is An Individualized Inquiry....................................12

        4.    Consent Is An Individual Inquiry .............................................................13

    E.  Plaintiffs Cannot Seek An Injunctive Relief Class ...............................................14

    F.  The Classes Are Overbroad ...................................................................................17

    G.  The Court Should Exclude Several Of Mr. Smith's Opinions..............................17

    H.  The Motion To Exclude Will Clayton's Opinions Should Be Denied .................19

IV.   CONCLUSION....................................................................................................20

# **TABLE OF AUTHORITIES**

Page(s)

Federal Cases

*Algarin v. Maybelline, LLC,*
   300 F.R.D. 444 (S.D. Cal. 2014) ........................................................................ 16

*Black Lives Matter L.A. v. City of Los Angeles,*
   113 F.4th 1249 (9th Cir. 2024) ............................................................................ 4

*Briseno v. ConAgra Foods, Inc.,*
   844 F.3d 1121 (9th Cir. 2017) ............................................................................. 9

*Brodsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................. 7

*Brown v. Google, LLC,*
   2022 U.S. Dist. LEXIS 233893 (N.D. Cal. Dec. 12, 2022) ................................. 14

*C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.,*
   317 F.R.D. 91 (N.D. Cal. 2016) .......................................................................... 15

*Campbell v. Facebook,*
   951 F. 3d 1106 (9th Cir. 2020) ........................................................................... 16

*Campbell v. Facebook, Inc.,*
   77 F.Supp.3d 836 (N.D. Cal. Dec. 23, 2014) ..................................................... 14

*Castaneda v. Burger King Corp.,*
   264 F.R.D. 557 (N.D. Cal. 2009) ........................................................................ 15

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ............................................................................................... 4

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018) .............................................................................. 16

*Diviero v. Uniroyal Goodrich Tire Co.,*
   114 F.3d 851 (9th Cir. 1997) .............................................................................. 19

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997) ........................................................................................... 18

*Griffin v. TikTok, Inc.*,
  2024 U.S. Dist. LEXIS 176403 (C.D. Cal. Sept. 9, 2024) ................................. 13

*Grodzitsky v. Am. Honda Motor Co.*,
  957 F.3d 979 (9th Cir. 2020) ................................................................. 18

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................... 6

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ................................................................ 16

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ................................................................. 13

*In re Google Inc. Gmail Litig.*,
  2014 U.S. Dist. LEXIS 36957 (N.D. Cal. Mar. 18, 2014) ............................. 8, 14

*In re Google RTB Consumer Priv. Litig.*,
  2024 U.S. Dist. LEXIS 119157 (N.D. Cal. Apr. 4, 2024) ................................ 14

*In re Meta Pixel Healthcare Litigation*,
  647 F.Supp.3d 778 (N.D. Cal. Dec. 22, 2022) ........................................... 14

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ................................................................. 5

*Ingrao v. AddShoppers, Inc.*,
  2024 U.S. Dist. LEXIS 214748 (E.D. Pa. Nov. 25, 2024) ................................ 6

*Javier v. Assur. IQ LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................ 7

*Kellman v. Spokeo, Inc.*,
  2024 U.S. Dist. LEXIS 95525 (N.D. Cal. May 29, 2024) ................................ 11

*Kim v. Allison*,
  87 F.4th 994 (9th Cir. 2023) ................................................................... 8

*Klein v. Meta Platforms, Inc.*,
  2025 U.S. Dist. LEXIS 13366 (N.D. Cal. Jan. 24, 2025) ......................... 17, 18, 19

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*May Gladstone*,
   562 F. Supp. 3d 709 (C.D. Cal. 2021) ................................................................. 7

*Mikulsky v. Bloomingdale's, LLC*,
   731 F. Supp. 3d 833 (S.D. Cal. 2024) ................................................................. 16

*Miles v. Kirkland's Stores Inc.*,
   89 F.4th 1217 ........................................................................................................ 9

*Mobile Emergency Hous. Corp. v. HP, Inc.*,
   2023 U.S. Dist. LEXIS 235084 (N.D. Cal. Dec. 8, 2023) ............................... 8, 9, 10

*Moore v. Mars Petcare United States, Inc.*,
   2024 U.S. Dist. LEXIS 176005 (N.D. Cal. Sept. 27, 2024) ................................... 10

*Nguyen v. Nissan North America, Inc.*,
   487 F.Supp.3d 845 (N.D. Cal. 2020) ..................................................................... 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*,
   31 F.4th 651 (9th Cir. 2022) ................................................................................. 12

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ........................................................................... 17, 18

*Parsons v. Ryan*
   754 F. 3d 657 (9th Cir. 2014) ............................................................................... 15

*Perez v. First Am. Title Ins. Co.*,
   2010 U.S. Dist. LEXIS 46393 (D. Ariz. Apr. 14, 2010) ...................................... 17

*Plascencia v. Lending 1st Mortgage*,
   259 F.R.D. 437 (N.D. Cal. Aug. 21, 2009) ............................................................ 7

*Posados v. Goodyear Tire & Rubber Co.*,
   2024 U.S. Dist. LEXIS 228992 (S.D. Cal. Dec. 13, 2024) ................................... 12

*Revitch v. New Moosejaw, LLC,*
   2021 U.S. Dist. LEXIS 109315 (N.D. Cal. June 10, 2021) ................................... 16

*Reyes v. Educ. Credit Mgmt. Corp.*,
   773 Fed. App.'x 989 (9th Cir. 2019) .................................................................... 13

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d. 503 (C.D. Cal. Sep. 27, 2021) ..................................................... 5

*Sali v. Corona Regional Medical Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ...................................................................... 5

*Siino v. Foresters Life Ins. & Annuity Co.*,
   340 F.R.D. 157 (N.D. Cal. 2022) .................................................................. 8

*Stewart v. Luna*,
   2025 U.S. Dist. LEXIS 1042 (C.D. Cal. Jan. 3, 2025) ................................. 5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................... 12

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ...................................................................... 8

*Walker v. Life Ins. Co. of the SW.*,
   953 F.3d 624 (9th Cir. 2020) ....................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................... 15

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. Jul. 15, 2021) ......................................... 5

*Zinser v. Accufix Research Ins., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..................................................................... 8

**California Statutes**

Cal. Pen. Code § 502(e)(5) ............................................................................. 17

**Federal Rules**

Fed. R. Evid. 702 ..................................................................................... 17, 19

**Additional Resources**

*Does Leaving an Item in Your Online Cart Get You a Discount?*, The Real Deal by
RetailMeNot (Apr. 29, 2024), https://www.retailmenot.com/blog/abandoned-cart-
discounts.html .............................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.     INTRODUCTION**

Defendant AddShoppers, Inc. ("AddShoppers") – a small, narrowly focused digital marketing company from North Carolina – helps connect brands to consumers through email, saving shoppers time and money. Their simple system uses a minimal amount of information to achieve that goal.

Throughout this case, Plaintiffs Abby Lineberry ("Lineberry") and Miguel Cordero ("Cordero") (collectively, "Plaintiffs")[1] have tried to make a mountain out of something not even a molehill, claiming that AddShoppers creates detailed, personal "dossiers" that are used to identify and track people's online activities across the internet. The evidence demonstrates this is false. AddShoppers uses a ubiquitous technology (JavaScript code) to try to match browsing software on devices (*e.g.,* computers, smart phones, tablets, etc.) to email addresses so it can send money-saving offers to online shoppers. There is nothing nefarious about the data collection technology it uses. In fact, Plaintiffs' counsel uses similar technology on their own websites.  Plaintiffs' own expert confirmed AddShoppers does not collect even the most basic identifying information (*e.g.*, name, physical address) about shoppers. The handful of data points AddShoppers collects are not personal, not sensitive, and not consistent across the putative class.

It is thus unsurprising that Plaintiffs cannot come close to satisfying any of the elements of Rule 23. They have not submitted any intelligible evidence that the classes they seek to certify are numerous. Cordero is not a member of the classes he seeks to represent, and the record strongly suggests Lineberry is not either. Their claims are also subject to unique defenses, and Plaintiffs' counsel have a direct conflict with the classes.

Plaintiffs' expert's testimony demonstrates the need for numerous individual inquiries, precluding any finding of predominance or superiority. Questions of consent will also be individualized. The broad class-wide injunctions Plaintiffs seek would sweep in people who

---

[1] Plaintiff Cook does not assert claims or seek to represent a class against AddShoppers.

appreciate receiving valuable discounts from AddShoppers, and those who consented to the collection and use of their data.  Since neither Plaintiff faces an actual and imminent threat of being harmed, they lack standing to seek class-wide injunctive relief.  The motion fails.

## II.    STATEMENT OF FACTS

AddShoppers partners with companies across the country ("brand partners") who want to give money-saving offers to potential customers. King Decl.,[2] ¶ 2. It uses JavaScript technology that functions similarly to technology commonly used on websites, including those operated by Plaintiffs' counsel and the Court.  *Id*., ¶ 3; *see also* Catapang Decl., Ex. A [Feamster Report, p. 9, ¶ 8 & pp. 12:14-18, 13:2-11, 23:5-24:5] & Ex. B [Smith Depo., pp. 22:1-21; 154:21-155:9; 163:10-165:4; 182:2-183:10]. If a device visits a brand partner's website with a browser (*e.g.,* Google Chrome, Firefox, etc.) that has JavaScript enabled and is not using an ad-blocker or cookie-blocker, the browser downloads AddShoppers' "widget." King Decl., ¶ 3; *see also* Catapang Decl., Ex. C [King Depo., pp. 21:22-22:25]. No information about the device's activity on the site is sent to AddShoppers unless and until the website visitor shows enough interest to "trigger a campaign." King Decl., ¶ 3; Catapang Decl., Ex. A [Feamster Report, pp. 17:7-9, 28:9-15]. Brand partners set their specific campaign criterion. King Decl., ¶ 4.[3] For example, the brand partner may configure the campaign, so data is not sent to AddShoppers unless the device visits a specific number of pages on the website, or an item is placed in a shopping cart, or if the device spends a certain amount of time on the site. *Id*.[4]

If a campaign is triggered, the widget transmits a code identifying the device (the "Session ID") and a code for the brand partner website (the "Site ID") to AddShoppers. King Decl., ¶ 5. The widget sometimes[5] transmits URL information asynchronously about pages the device

---

[2] All supporting declarations are referred to herein by the last name of the declarant.

[3] AddShoppers has no record of which campaigns Peet's or Dia used over time.  *Id*.

[4] None of this information is transmitted to AddShoppers before a campaign is triggered or before the visitor has an opportunity to decline cookies.  *See* Catapang Decl., Ex. A [Feamster Report, ¶¶ 1, 4].

[5] *See infra*, III.C & D.3 (comparing information transmitted to AddShoppers about Cordero's alleged visit to Peet's website and Lineberry's alleged visit to Dia's website).

visited, or items placed in a shopping cart. King Decl., ¶ 5; Catapang Decl., Ex. A [Feamster Report, pp. 27:18-28:15]. However, AddShoppers' code never collects or transmits search terms entered on a website. King Decl., ¶ 6; Catapang Decl., Ex. A [Feamster Report, pp. 24:16-25:11]. The code also does <u>not</u> collect or transmit names, addresses, phone numbers or any other personally identifiable or potentially sensitive information. *See* Catapang Decl., Ex. B [Smith Depo., pp. 34:7-22].[6]

When a campaign is triggered, AddShoppers may attempt to associate the device with an email address. *Id.*, ¶ 7. If possible, the device will be matched with an email address previously provided when the device was browsing another brand partner's website, or when a person signed up directly on SafeOpt's website. *Id.* AddShoppers often does not have an email address associated with the device, and in those instances, the code makes a request to a "data partner" to see if they have one and, if they do, the email address is provided to AddShoppers with the Session ID. *Id.*[7] AddShoppers is often unable to associate a device with <u>any</u> email address; other times it may associate <u>multiple</u> email addresses with the same device. King Decl., ¶ 8.

All email addresses must pass several additional checks, including determining whether they are on any of the multiple exclusion and unsubscribe lists, before SafeOpt will send an email on behalf of the brand partner, typically containing a discount code for the brand partner's website. *Id.*, ¶ 9. All such emails contain conspicuous links in both the header and the footer to "unsubscribe" and to manage preferences, which recipients can use to stop receiving emails or to request to delete data. *Id.* Anyone can also visit SafeOpt's website directly to unsubscribe from email and request deletion of their data. *Id.* AddShoppers requires brand partners to affirm that their privacy policies permit them to share the data collected by AddShoppers. *See* Catapang

---

[6] *See also id.*, Ex. A [Feamster Report, ¶ 3, pp. 20:3-9, 21:6-15, 25:12 (the code does <u>not</u> collect "the name of the site visitor, their data of birth, their Social Security number, their physical address, their password or login information, their payment card information, their gender or their employer.")] & Ex. C, [King Depo., pp. 192:1-196:6]; King Decl., ¶ 6.

[7] AddShoppers requires the email addresses the data partners provide be obtained in a manner consistent with applicable law. *See* Catapang Decl., Ex. D [West Depo., pp. 100:16-101:11], Ex. E [Ledford Depo., p. 154:3-20].

Decl., ¶ 12, Ex. K [West Depo., pp. 171:3-172:18 & MSA].

The software does not "track anonymous shoppers across many retail websites." *See* Catapang Decl., Ex. A [Feamster Report, ¶ 1 ("AddShoppers does not 'follow consumers across the internet'"), p. 20:15-17]. "Instead, AddShoppers focuses on collecting data related to devices and specific browsing sessions . . . ." *Id*. [Feamster Report, p. 20:18-19]; *see also* Doc. No. 147 at p.[8] 7, Chart ("As customers authenticate on your website, we use their inputs to match the email address used to the <u>device</u> used." (emphasis added)); King Decl., ¶ 10. The claim that AddShoppers creates "comprehensive individual profiles" is simply false. *See* Catapang Decl., Ex. A [Feamster Report, pp. 24:11-16, 27:1-9]; King Decl., ¶ 10.

## III.   ARGUMENT

### A.   Legal Standard Governing Class Certification

Class actions "are [] onerous and costly for defendants, who may feel 'pressured into settling questionable claims' to avoid even a 'small chance of devasting loss.'" *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024) (citation omitted). "Class certification is thus not to be granted lightly." *Id*. "To ensure it is not, Rule 23 mandates that district courts 'rigorously analyze' whether a proposed class meets various requirements." *Id*. (cleaned up). "Rule 23 does not impose a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions." *Id*. "Rather, the plaintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites." *Id*. The "analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013).

### B.   Plaintiffs Have Not Even Satisfied Numerosity

Plaintiffs have not "'affirmatively demonstrate[d]' by a preponderance of actual evidence" that the classes are numerous. *See Black Lives Matter L.A.*, 113 F.4th at 1258. They point to a one-page chart and argue that "AddShoppers collected detailed browsing information

---

[8] AddShoppers cites the page numbers at the bottom of Plaintiffs' Motion.

on over a million people across Peet's and Dia's websites." *See* Doc. No. 147 at p. 15 & Ex. 30. But the chart says nothing of the sort. The chart bears a Peet's Bates-Stamp, but Plaintiffs do not explain how it establishes the "detailed browsing history" of numerous people was tracked on Peet's website. Plaintiffs' reliance on an unauthenticated, unexplained chart is not sufficient. It cannot show that <u>anyone</u> visited Dia's website, meaning that Lineberry (who does not claim she visited Peet's) represents a class of one – herself. Plaintiffs have failed to demonstrate numerosity. *See Stewart v. Luna*, 2025 U.S. Dist. LEXIS 1042, at *11 (C.D. Cal. Jan. 3, 2025) (plaintiffs did not "provide[] sufficient evidence" of numerosity).

### C.  Plaintiffs Have Not Satisfied Typicality Or Adequacy

Cordero is not adequate or typical because he is not a member of the classes.  *See Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (plaintiff "must be a member of the class [he] seeks to represent . . ."). AddShoppers did not collect his "detailed browsing history" when he visited Peet's website, *i.e.*, it did not obtain his "cart content and product viewing information," including "product names, prices, SKUs, and product images."[9]  *See* Doc. No. 147 at p. 19; King Decl., ¶ 16.  He is not a class member.

For similar reasons, Cordero's California's Invasion of Privacy Act ("CIPA") claim is subject to a unique defense that AddShoppers did not collect the "contents" of a "communication" about his alleged visit to Peet's website.  *See, e.g., In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (record information such as webpage addresses are <u>not</u> "contents" of a communication);[10] *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. Jul. 15, 2021) (web "pages viewed, and shipping and billing information . . . the date and time of the visit, [and] the duration of the visit" did not "constitute[] message content in the

_____

[9] Cordero, however, did collect browsing information about Peet's. He testified he used Google's Web & App activity tool to have his browser capture and upload to Google every URL he visited, including his visit to the Peets website in November 2021. *See* Catapang Decl., Ex. F [Cordero Depo., pp. 61:12-21]. There is no evidence he obtained Peet's permission to do this.  CIPA, if applicable, requires the consent of all parties, including Peet's.
[10] Courts analyzing CIPA claims apply the same analysis. *See, e.g., Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. Sep. 27, 2021).

same way that the words of a text message or an email do."); *Ingrao v. AddShoppers, Inc.*, 2024 U.S. Dist. LEXIS 214748, at **40-41 (E.D. Pa. Nov. 25, 2024) (URL information not "contents" of communication). Cordero does not have a "protectible privacy interest" in the information AddShoppers collected, so he also lacks Article III standing. *See infra*, III.D.3. These unique defenses will continue to be a major focus of the litigation as to Cordero.  *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (named plaintiff's claims were "subject to unique defenses which threaten to become the focus of the litigation.").

It is highly unlikely that Lineberry is a class member. Although she now testifies for the first time that "my data from AddShoppers shows when I visited Dia & Co's website and added a Navy Olivia Cross-Back Blouse to my cart on April 10, 2022" (Lineberry Decl., ¶ 6), she has badly misread the data. In truth, AddShoppers associated that website visit with brendajshill@gmail, an email address that Lineberry testified she never used. *See* King Decl., ¶¶ 13-14; Catapang Decl., Ex. G [Lineberry Depo., pp. 28:4-6]. Lineberry admitted that "Brenda Hill" was her friend's mother. Catapang Decl, Ex. G [Lineberry Depo., pp. 28:18-20; 70:23-25]. After the blouse was added to a shopping cart on April 10, 2022, AddShoppers sent an email to brendajshill@gmail. *See* King Decl., ¶ 14. AddShoppers' systems later merged the record of that earlier visit to Dia – and other visits it associated with brendjshill@gmail – with another visitor record associated with Lineberry's email address, which caused the Dia record to become associated with Lineberry's email address. *Id*., ¶ 15. In other words, the evidence strongly suggests that the user of the brendajshill@gmail email address – probably Brenda Hill (but definitely <u>not</u> Lineberry) – visited Dia's website on April 10, 2022, and her visit triggered an email to brendajshill@gmail and not to Lineberry's email address.

Both Plaintiffs' CIPA claims are also subject to unique statute of limitation defenses. *See Nguyen v. Nissan North America, Inc.*, 487 F.Supp.3d 845, 858-60 (N.D. Cal. 2020) (no typicality; named plaintiff's claims were time-barred). The one-year statute of limitations began to run on November 9, 2021 (Cordero), and April 10, 2022 (Lineberry), the dates they allegedly visited Peet's and Dia's websites. *See Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 134 (N.D. Cal.

2020); Cordero Decl., ¶ 6; Lineberry Decl., ¶ 6. Lineberry filed this action April 24, 2023, so Plaintiffs' claims are time-barred. Doc. No. 1. They have not alleged or argued the limitations period should be tolled (it should not),[11] nor would such an argument make them typical. *See Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 444 (N.D. Cal. Aug. 21, 2009) ("Although Plaintiffs argue that the limitations period should be equitably tolled . . . the statute of limitations issue has been, and will continue to be, a major issue in the defense of the[ir] claim.").

Plaintiffs' counsel is also not adequate because they have a direct conflict with the classes. *See May Gladstone*, 562 F. Supp. 3d 709, 714 (C.D. Cal. 2021) (plaintiff's counsel "very likely have a conflict of interest with the putative class"). Plaintiffs' and AddShoppers' experts both agree that Stueve Siegel Hanson LLP's ("SSH") and Gibbs Law Group's websites use a host of third-party cookie and JavaScript technology that function similarly to AddShoppers' technology, including Google Analytics. *See* Catapang Decl., Ex. B [Smith Depo., pp. 22:1-21; 154:21-155:9; 163:10-165:4; 182:2-183:10], Ex. A [Feamster Report, pp. 13, 23]; Clayton Report (Ex. 34), p. 21 & Appendix (attaching Technology Profile for law firm websites). Plaintiffs' expert testified that Google Analytics, like AddShoppers' browser technology, "generate[s] tracking pixels" that could collect certain information about site visitors' interactions with websites, such as "URLs," "page titles," and "cookie values," and could also be "used [] for serving ads to [site visitors]." *Id.*, Ex. B [Smith Depo., pp. 22:1-21; 154:21-155:9]. In fact, Google Analytics, which is used for "profil[ing] user behavior across sites," can transmit far more extensive data than the "narrowly targeted" data collected by AddShoppers for the purpose of "customizing emails." *Id.*, Ex. A [Feamster Report, pp. 22:18-24:16].

If Plaintiffs establish that AddShoppers' technology violates California law, their counsel will be implicated in the same misconduct. This raises serious questions about whether counsel

---

[11] Peet's and Dia's privacy policies put them on inquiry notice of the alleged collection and use of their data. *See Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891, 901-04 (N.D. Cal. 2023) (delayed discovery rule not applicable; website privacy policy put plaintiffs on notice that third parties were collecting information).

can "vigorously" pursue this theory for the class.[12]  *See Kim v. Allison*, 87 F.4th 994, 1002 (9th Cir. 2023).   Lineberry and Cordero both visited SSH's website. *See* Catapang Decl., Ex. G [Lineberry Depo., p. 222:8-12], Ex. F [Cordero Depo., p. 331:20-22].   A victory against AddShoppers here will establish that any of the named Plaintiffs or putative class members who visited counsel's website have similar claims against counsel.

### D.  Plaintiffs Have Not Satisfied Rule 23(b)(3) Predominance Or Superiority

Where "the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action [is] inappropriate." *Zinser v. Accufix Research Ins., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001). When a defendant "invoke[s] an individualized issue . . . and provide[s] evidence that at least some class members lack meritorious claims because of this issue," the "spectre of class-member-by-class-member adjudication" is raised. *See Van v. LLR, Inc*., 61 F.4th 1053, 1069 (9th Cir. 2023). "Undertaking the predominance analysis requires some inquiry into the merits, as the Court must consider 'how a trial on the merits would be conducted if a class were certified.'" *In re Google Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957, at *46 (N.D. Cal. Mar. 18, 2014). "Where resolving claims would require conducting many inquiries on an individual basis, neither of the predominance or superiority requirements are met." *Mobile Emergency Hous. Corp. v. HP, Inc*., 2023 U.S. Dist. LEXIS 235084, at *33 (N.D. Cal. Dec. 8, 2023).[13]

#### 1.    Determining Who Was Allegedly Tracked Is Unmanageable

Plaintiffs do not point to any reliable method for identifying who has a claim, *i.e.*., who visited Peet's or Dia's websites and had their "detailed browsing activity" collected.  *See, e.g., Walker v. Life Ins. Co. of the SW*., 953 F.3d 624, 632-33 (9th Cir. 2020) (courts may consider

---

[12] Tellingly, according to Plaintiffs' expert, SSH deleted the tracking technology off their website in August 2024. *Id.,* Ex. B [Smith Depo. at pp. 234:23-237:19].
[13] Plaintiffs also have not satisfied Rule 23(a)(2) commonality. *See Siino v. Foresters Life Ins. & Annuity Co*., 340 F.R.D. 157, 161-62 (N.D. Cal. 2022) ("Given the relationship between Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirements, courts often analyze those requirements together.").

difficulties identifying class members under the predominance or superiority requirements); *Mobile Emergency Hous. Corp.*, 2023 U.S. Dist. LEXIS 235084 at *33 ("Courts may also consider difficulties in identifying members of a putative class in conducting analysis under Rule 23(b)(3).").[14] AddShoppers <u>does not</u> collect or know the names, addresses or phone numbers or any other personal identifying information of any person who visited Peet's or Dia's website. *See* Catapang Decl., Ex. B [Smith Depo., pp. 45:7-22; 251:19-23]; *see also supra*, II. The suggestion that class members can be identified using email addresses that AddShoppers has associated with devices (*see* Doc. No. 147 at p. 25) will not work.

Plaintiffs' own expert conceded the email addresses in AddShoppers' database may not be a reliable means for determining who visited one of AddShoppers' brand partners' websites. *See* Catapang Decl., Ex. B [Smith Depo., pp. 258:25-259:11].[15] Indeed, despite all his efforts to ensure AddShoppers associated his browsing history with his email address, AddShoppers incorrectly associated the device he was using with his daughter's email address. *Id.* [Smith Depo., pp. 255:11-257:2, 258:1-9; 263:13-264:14, 270:7-271:1]; King Decl., ¶ 17. Despite AddShoppers best efforts to be accurate in its business, this error is not an outlier. The company also incorrectly associated former plaintiff Greg Dessart's email address with the browsing activity of Tracie Dessart. *See* Catapang Decl., Ex. H [Dessart Depo. at pp. 68:19-69:3, 98:19-99:8, 112:11-13, 119:10-14, 129:7-15, 133:6-22, 135:13-136:4, 139:3-10]; King Decl., ¶ 19; *see also* Doc. No. 1, ¶¶ 72-75. AddShoppers associated Lineberry's email address with an earlier visit to Dia's website that triggered an email to brendajshill@gmail (presumably owned by "Brenda Hill" – her friend's mother). *See supra*, III.C. Moreover, even if

---

[14] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) does not preclude courts from considering difficulties with identifying class members. *See Walker*, 953 F.3d at 632-33; *see also Briseno*, 844 F.3d at 1126 (noting that the superiority criterion already mandates considering "the likely difficulties in managing a class action.").

[15] His contrary opinion (*see* Smith Decl., ¶¶ 85-87) should be excluded. *See, infra* III.G. But even if considered, it is not persuasive. *See, e.g., Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1225, n. 3 (9th Cir. 2024) (courts must "rigorously analyze" testimony on class certification and "weigh [its] persuasiveness")

AddShoppers always associated the correct email addresses with website visitors, "the presence of an email address alone does not guarantee it correlates with the person currently using the device." *See* Catapang Decl.*,* Ex. A [Feamster Report, pp. 25:12-17 (citing examples)].

These association errors are compounded by the fact that AddShoppers' often associates <u>multiple</u> email addresses with a <u>single</u> device. King Decl., ¶¶ 8, 11. AddShoppers associated two other email addresses with devices associated with Cordero's email address, but neither was his. *Id.*, ¶ 16; *see* Catapang Decl.*,* Ex. F [Cordero Depo., 14:21-15:7]. In many cases, AddShoppers is not able to associate <u>any</u> email address with the device used to visit a brand partner's website. King Decl., ¶ 8.

Plaintiffs' own expert undermined the suggestion that "geolocation data such as IP addresses" can be used to reliably identify persons who visited Peet's and Dia's websites. *See* Catapang Decl.*,* Ex. B [Smith Depo., pp. 46:5-22; 48:10-18; 51:16-52:12], Ex. A [Feamster Report, p. 26:15-23 (IP addresses "do[] not tell AddShoppers anything about the identity of the person who may be operating a device at that address"). AddShoppers also does not always store IP address information. *Id.*, Ex. C [King Depo., pp. 38:7-13, 53:6-13, 72:16-74:23], Ex. A [Feamster Report, ¶ 6].

The suggestion that "self-identification" will cure these difficulties (*see* Doc. No. 147 at p. 25) is wrong. "[S]elf-identification" is not appropriate here because class members cannot be expected to remember the exact date and time they visited Peet's or Dia's website months or, in some cases, years ago. *See, e.g., Moore v. Mars Petcare United States, Inc*., 2024 U.S. Dist. LEXIS 176005, at **19-20 (N.D. Cal. Sept. 27, 2024) ("The use of a claims form [] is not appropriate where the form seeks to elicit recall of events prone to 'subject memory problems.'"); *Mobile Emergency Hous. Corp.*, 2023 U.S. Dist. LEXIS 235084 at *36 ("self-identification" does not work when it "would require a putative class member to attest to not seeing one of several potential disclosures more than two years ago about something as innocuous and unmemorable in an individual's life as their printer"). Allowing class members to "self-identify" would also deprive AddShoppers of its right to challenge whether they were

the person who actually visited the websites, like AddShoppers intends to do with Lineberry's claim she went to Dia's website.[16]

### 2.    Whether Class Members Were "In California"

The three "verification methods" Plaintiffs say they will use to determine whether class members were in California when they visited Peet's or Dia's website will not work. *See* Doc. No. 147 at p. 20. First, AddShoppers does <u>not</u> possess a "comprehensive list of potential class members." Unlike well-known internet behemoths, AddShoppers does <u>not</u> collect or store even the most basic identifying information, such as names, dates of birth, Social Security Numbers, addresses, or phone numbers. *See supra*, II.  AddShoppers does associate email addresses with unique, randomly assigned device id numbers in its database, but that association is often incorrect. *See supra*, II & III.D.1.

Next, the suggestion that class members can simply "self-identify as California residents" does not solve the problem. This would <u>not</u> establish they were physically located in California on the date and time AddShoppers' database shows a device visited Peet's or Dia's website. Most individuals, including, presumably, California residents, use devices that can access the internet from anywhere in the country. Nor would asking potential class members to remember whether they were in California when they visited the websites be an appropriate use of self-identification. *See supra*, III.D.1. Indeed, Plaintiffs' expert could not even remember what state he was in when he browsed certain websites in connection with his testing.  *See* Catapang Decl., Ex. B [Smith Depo., p. 200:9-14].

Lastly, AddShoppers' expert opined that "IP address records" in AddShoppers' database are not a reliable indicator of geographic location, an opinion that was largely <u>confirmed</u> by Plaintiffs' expert. *See* Catapang Decl.*,* Ex. B [Smith Depo. pp. 46:5-47:3, 202:1:22], Ex. A [Feamster Report, p. 9, ¶ 7 & pp., 10:13-24, 33:16-36:2]. AddShoppers only

---

[16] *Kellman v. Spokeo, Inc*., 2024 U.S. Dist. LEXIS 95525 (N.D. Cal. May 29, 2024) is easily distinguishable because class members would simply need to confirm their "name and address" matched the profile the defendant published online. *See id*. at **26-27.

stores IP address information in particular circumstances, so there are no "records" to review in many cases. *Id.* [Feamster Report, ¶ 6]. When AddShoppers receives an IP address from a data partner, it is the IP address of a site visitor's earlier visit to a different site (when consent to sharing was obtained), <u>not</u> the IP address at the time of a visit to Peet's or Dia. *Id.,* Ex. C [King Depo. pp. 72:16-74:23], Ex. A [Feamster Report, p. 35:3-7].[17]

### 3.    Article III Standing Is An Individualized Inquiry

"Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 2021. Thus, "[w]hen individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 668 (9th Cir. 2022). An individualized inquiry is required to determine whether class members had a protectable privacy interest in the "detailed browsing activity" AddShoppers allegedly collected. *See, e.g., Posados v. Goodyear Tire & Rubber Co*., 2024 U.S. Dist. LEXIS 228992, at *9 (S.D. Cal. Dec. 13, 2024) (no standing for CIPA claim; plaintiff did not identify private information that was collected). The different data AddShoppers received about Cordero's and Lineberry's purported visits prove the point.

AddShoppers collected <u>no</u> information about the webpages Cordero claims he visited or the products he allegedly viewed on the Peet's site. *See, supra* III.C. The URL information about the product Lineberry claims she put in her cart when she allegedly visited Dia's website is not private information, but if it were, an individual inquiry will be necessary to determine what data was or was not collected about each class member's visit to Peet's or Dia's website. *See, e.g., Griffin v. TikTok, Inc*., 2024 U.S. Dist. LEXIS 176403, at **16-19 (C.D. Cal. Sept. 9, 2024) (whether plaintiffs had a reasonable expectation of privacy in information collected

---

[17] That AddShoppers purportedly "uses IP addresses to block users from . . . the European Union and Canada" says nothing about California.  Doc. No. 147, p. 7.

would require an individual inquiry).

Similarly, determining whether a class member visited Peet's or Dia's website for personal purposes or work-related purposes (like when Lineberry allegedly visited medterrahemp.org) would require individual inquiries.[18] A class member is not harmed by the collection of their work-related browsing history because it reveals nothing about them personally, such as her "likes, dislikes, interests, and habits" or their "private li[fe]." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).

### 4.    Consent Is An Individual Inquiry

Plaintiffs concede they must prove class members did not consent to the alleged collection of their data.  *See* Doc. No. 147, p. 18; *see also Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App.'x 989, 990, n. 1 (9th Cir. 2019) ("plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record"). They say lack of consent can be determined on a class-wide basis because Peet's and Dia's privacy policies supposedly "concealed" the alleged collection and use of class member data.[19] They are wrong.

Peet's privacy policies plainly disclosed that "third-party advertising companies that use tracking technologies . . . may collect information about [site visitors'] visits to [Peet's site]." *See* Suehiro Decl. ISO Peet's Opposition, Ex. A at PEETS_000018. They specified the data could include "viewed webpages, links that are clicked, IP address, mobile device identifier, [and] other click-stream or site usage data." *Id*. at PEETS_000017. They stated the data could be used "to provide [visitors] with [] targeted offers, promotions and advertising [] via email." *Id*. at PEETS_000016. As AddShoppers' expert explained, Peet's privacy policy "amply and accurately describe[d] …the implementation and functioning of Addshoppers' [sic] technology…consistent with industry best practice." Clayton Report (Plaintiffs' Ex. 34), ¶¶ 12,

---

[18] *See* Doc. No. 135, ¶¶ 53-57.

[19] Plaintiffs failed to submit any evidence of Dia's privacy policy.  The erroneously attached a privacy policy for DIA, a completely different and unrelated company from the company whose website Lineberry claims she visited. *See* Doc. No. 147-32; Catapang Decl., ¶¶ 10-11.

¶ 52.  At least one version of Dia's privacy policy in effect during the relevant period contains similar disclosure language. *See* Catapang Decl., ¶ 11, Ex. J. There is no requirement that the policies refer to AddShoppers specifically.  *See In re Google RTB Consumer Priv. Litig*., 2024 U.S. Dist. LEXIS 119157, at *44 (N.D. Cal. Apr. 4, 2024) ("Though Google does not name RTB explicitly in its disclosures, Google tells users that it collects and sells various categories of information from its account holders to serve personalized ads").[20]

Determining whether class members consented to the alleged collection of their data requires an analysis of "individual, and subjective, interactions of what certain class members knew, read, saw, or encountered." *Brown v. Google, LLC*, 2022 U.S. Dist. LEXIS 233893, at *58 (N.D. Cal. Dec. 12, 2022). Such "fact-intensive inquiry" will involve numerous individualized inquiries that are certain to overwhelm any common questions. *See e.g., In re Google RTB Consumer Priv. Litig*., 2024 U.S. Dist. LEXIS 119157, at *43-44 ("Because consent is a central issue to all six of plaintiffs' claims, this individualized inquiry will drive the litigation for plaintiffs' damages remedy."). Here, there is evidence that many visitors to Peet's website consent to Peet's privacy policy by clicking "Accept" on Peet's cookie banner. *See* Peet's Opposition, pp. 10-11. Those class members expressly consented to the collection and sharing of their data. Determining who else consented will require an individualized assessment. *See In re Google Inc. Gmail Litig*., 2014 U.S. Dist. LEXIS 36957 at *58-59.

**E.  Plaintiffs Cannot Seek An Injunctive Relief Class**

Plaintiffs seek to certify a Rule 23(b)(2) injunctive relief class that includes visitors of *any* website from which AddShoppers collected any person's browsing data while they were in California. They seek incredibly broad injunctive relief (*see* Doc. No. 147, p. 26) that would sweep in people who consented to any collection of their data, and indeed, people who likely

---

[20] Plaintiffs cite cases where the policies did not disclose the challenged practices at all. *See In re Meta Pixel Healthcare Litigation,* 647 F.Supp.3d 778, 793 (N.D. Cal. Dec. 22, 2022) (no disclosure Meta may acquire users' health information from third-party websites); *Campbell v. Facebook, Inc*., 77 F.Supp.3d 836, 848 (N.D. Cal. Dec. 23, 2014) (no disclosure of practice of scanning message content for targeted advertising purposes).

look forward to receiving valuable discounts. A class-wide injunction is not appropriate.

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class <u>as a whole</u>.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (emphasis added). Thus, "[t]he key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (citation omitted).

Plaintiffs' requested injunction is not appropriate to the class <u>as a whole</u>. The injunctive relief class is wildly overbroad as it encompasses every website with AddShoppers' code, including sites that indisputably <u>do disclose</u> the data collection and whose visitors therefore have <u>consented</u> to the alleged conduct. *See Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 566 (N.D. Cal. 2009) (declining to certify injunctive relief class against 92 Burger King stores in ADA case because some stores could be ADA-compliant); *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 317 F.R.D. 91, 105 (N.D. Cal. 2016), aff'd, 867 F.3d 1093 (9th Cir. 2017) (same; declining to certify injunctive relief class against 142 hotels). Indeed, many putative class members may have *wanted* to receive the promotional emails sent by SafeOpt.[21] The injunctive relief sought by Plaintiffs is, for many class members, not relief at all. *See Parsons v. Ryan*, 754 F. 3d 657 at 689, n. 35 (9th Cir. 2014) (at class certification stage, plaintiffs must "describe[] the general contours of an injunction that would provide relief to *the whole class*") (emphasis added).

Separately, Plaintiffs lack Article III standing to seek the requested injunctions. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that

---

[21] Consider the common scenario in which a savvy customer adds an item to their cart before leaving the page without purchasing it, all in the hopes that they will receive a retargeting email offering a discount on that item. *See* Kristin McGrath, *Does Leaving an Item in Your Online Cart Get You a Discount?,* The Real Deal by RetailMeNot (Apr. 29, 2024), https://www.retailmenot.com/blog/abandoned-cart-discounts.html.

relief."). Lineberry and Cordero must demonstrate a "threat of injury [that is] 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). For prior conduct, they must show "either continuing, present adverse effects due to [their] exposure" to AddShoppers' past conduct or "a sufficient likelihood that [they] will again be wronged in a similar way." *Campbell v. Facebook*, 951 F. 3d 1106, 1119-20 (9th Cir. 2020) (quotations and citations omitted). Lineberry and Cordero do not even attempt to make this showing.

They have no evidence that AddShoppers' widget is currently on any of their devices. *See Revitch v. New Moosejaw, LLC,* 2021 U.S. Dist. LEXIS 109315, at **1-2 (N.D. Cal. June 10, 2021) (dismissing named plaintiff's claims and denying motion for class certification because no evidence defendant's cookie was on plaintiff's device). Both Plaintiffs have taken (or easily could take) the very simple measures available to all class members to prevent SafeOpt's emails or AddShoppers' data collection altogether (*e.g.*, unsubscribing and using a browser that blocks cookies or installing a cookie blocker).[22] They cannot establish they are at risk of having their data collected again. *See Mikulsky v. Bloomingdale's, LLC*, 731 F. Supp. 3d 833, 846-47 (S.D. Cal. 2024) (dismissing injunctive relief claim under CIPA; plaintiff knew of defendant website's use of tracking code); *see also Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) (declining 23(b)(2) certification because once consumers are "aware of the realities of [a] product[ ]" they "will not benefit from … injunctive relief[,] as they cannot demonstrate a probability of injury; if they know the 'truth' they cannot be further deceived"). In short, any possible future injury to Lineberry or Cordero is due solely to their own future failure to protect their browsing data. *See* Catapang Decl., Ex. A [Feamster Report, p. 37:2-20].

---

[22] Lineberry unsubscribed from SafeOpt emails "immediately" after receiving a January 17, 2023 email from MedTerra Hemp via SafeOpt.  *See* Catapang Decl., Ex. G [Lineberry Depo., pp. 168:8-9, 178:20-179:11].  She testified she declines cookies when presented with a cookie banner. *Id*. [Lineberry Depo., 146:19-22].  Cordero testified that he often uses Firefox Focus, a browser that blocks cookies, and that his general practice is to decline cookies.  *Id*., Ex. F [Cordero Depo., pp. 92:8-11, 95:24-96:3, 110:8-11, 256:21-25, 338:3-20].

### F.  The Classes Are Overbroad

The statute of limitations for CIPA's claims is one year from when the alleged violation occurred (*i.e.*, when a class member visited Peet's or Dia's website and had their browsing data collected).  *See supra*, III.C. The statute of limitations for Computer Access and Data Fraud Act ("CDAFA") claims is "three years of the date of the act complained of, or the date of the discovery of the damage, whatever is later." Cal. Pen. Code § 502(e)(5). None of the classes Plaintiffs seek to certify are limited to class members whose claims fall within the limitations period. They are overbroad and should not be certified.  *See, e.g., Perez v. First Am. Title Ins. Co.*, 2010 U.S. Dist. LEXIS 46393, at **4-5 (D. Ariz. Apr. 14, 2010) (improper to certify class that contains members with time-barred claims).

### G.  The Court Should Exclude Several Of Mr. Smith's Opinions

Plaintiffs must show Mr. Smith's opinions are "both relevant and reliable" to avoid exclusion under *Daubert* and Federal Rule of Evidence 702.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014); *see also Klein v. Meta Platforms, Inc*., 2025 U.S. Dist. LEXIS 13366, at *22 (N.D. Cal. Jan. 24, 2025) (excluding expert offered in support of class certification).  Several of his opinions should be excluded.

Mr. Smith's opinion that AddShoppers' "database can identify class members" (*see* Smith Decl., ¶¶ 85-87, ¶ 13) is patently unreliable and, indeed, contradicted by his own testing. He says "the AddShoppers database contains email addresses of consumers which can be used to identify class members." *Id*., ¶ 85. But the only testing he performed to substantiate this opinion showed it was wrong. The email address he used to perform his testing, sotester2022@gmail.com, contains no information about its user and cannot be directly connected to Mr. Smith by anyone except Mr. Smith. AddShoppers associated some of his browsing data with a different email address, which Mr. Smith confirmed does not belong to him. *See supra*, III.D.1. In other words, Mr. Smith's testing yielded a 100% error rate. His opinion that email addresses in AddShoppers' database can be used to identify class members is unreliable, "is connected to existing data only by the *ipse dixit*" of the expert and should be

excluded. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).[23]

Mr. Smith's opinion that a class member's location can be determined by looking at IP addresses allegedly collected when the person visited Peet's or Dia's website (*see* Smith Decl., ¶¶ 13, 88-89) is based on pure guesswork. *See Ollier*, 768 F.3d at 861 ("speculative testimony is inherently unreliable"); *Klein*, 2025 U.S. Dist. LEXIS 13366 at *22 (excluding expert opinion based on "guesswork"). He does not cite any testing or scientific research indicating IP addresses are a reliable method for determining what state a person is physically located in. *Id*.[24] And he testified that IP address information may not accurately reflect the state where a person is accessing the internet. *See* Catapang Decl., Ex. B [Smith Depo., pp. 46:5-47:3 ("Q: In other words, one example is if you've got a mobile device that you take with you, it might maintain an IP address that indicates one location, one state, but you would actually be in a different state when you're browsing; correct? A. That's correct.")], 202:1:22 (acknowledging IP addresses can inaccurately misidentify the state a person is in). Recent studies have shown "IP geolocation techniques are unreliable, due to significant inaccuracies and inconsistencies across geolocation databases." *Id*., Ex. A [Feamster Report, pp. 33:20-35:2]. Moreover, the use of VPNs, web proxies, and the fact that "the geolocation associated with an IP address can and

---

[23] There are numerous reasons why an email address in AddShoppers' database may not reflect the person who visited the Peet's or Dia's website. *See* Catapang Decl., Ex. A [Feamster Report, pp. 25-26]. Mr. Smith did not perform any testing of the accuracy of the email addresses, or any survey or other method to demonstrate how many email addresses were correctly associated with the individuals who visited Peet's or Dia's website. His opinion is based on a sample size of one – his visits to a handful of websites – which is not enough under *Daubert*. *See Grodzitsky v. Am. Honda Motor Co*., 957 F.3d 979, 985 (9th Cir. 2020) (affirming exclusion of expert opinion in part because expert sought to utilize a "small sample size to prove a common defect.").

[24] He again references the purported collection of his own IP address, but a sample size of one is not sufficient. Moreover, one of the IP addresses associated with the email address he used to conduct his testing is currently associated with Kentucky, *see* King Decl., ¶ 18, even though there is no indication he conducted his testing outside of Massachusetts, where he resides. *See* Catapang Decl., Ex. B [Smith Depo., pp. 200:9-14].

---

does change over time" further undercut the reliability of using an IP address in this manner. *Id*. [Feamster Report, pp. 35:3-36:2]. Mr. Smith's contrary opinion is at odds with the applicable research and conflicts with his own testimony. *See Klein*, 2025 U.S. Dist. LEXIS 13366 at *27 ("an expert does not have license to simply disregard reality and base a 'necessary link' in his theory on guesswork or speculation").

Mr. Smith's opinion that AddShoppers "tracked" Lineberry, Plaintiff Cook, and former Plaintiff Greg Dessart (*see* Smith Decl., ¶¶ 12, 68-76) is pure speculation. He based it entirely on the fact that AddShoppers' database associated certain website visits with Plaintiffs' email addresses. But email addresses do not reliably indicate the identity of the person who visited the website (*e.g.*, Mr. Smith, or his daughter; Mr. Dessart, or his wife; Lineberry, or "Brenda Hill"). *See supra*, III.D.1. Mr. Smith essentially conceded the only way to reliably determine Lineberry, Cook, or Dessart visited the websites reflected in AddShoppers' data is to ask them (which he did not do). *See* Catapang Decl., Ex. B [Smith Depo., pp. 268:20-269:2 ("A. I mean, it's really up to the named plaintiffs to talk about what – what websites they go to and use; you know, were they at these websites.")]. His opinion is admittedly speculative and therefore not admissible. *See Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997) (Rule 702 "demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation or subjective beliefs.").

**H. The Motion To Exclude Will Clayton's Opinions Should Be Denied**

Plaintiffs' attack Will Clayton's wholly uncontroversial conclusion that website technology like AddShoppers – *i.e*., JavaScript-based behavioral analytics – is "more than common" on the web. *See* Clayton Report (Ex. 34) ¶¶ 2, 6-8. But Plaintiffs' own expert concurs.[25] Their criticisms – (1) that Clayton did not factor in statements made in

---

[25] *See, e.g.,* Catapang Decl., Ex. B [Smith Depo, pp. 22:1-21, 155:2-5, 156:25-157:14, 161:10-20, 164:21-165:1 (confirming similarity of Google Analytics to AddShoppers technology);154:12-20, 167:11-17 (acknowledging at that at least a million websites deploy Google Analytics and that use of the Meta Pixel is "common").

AddShoppers' marketing material (which say nothing about whether AddShoppers technology is in common use on the web); and (2) that Clayton's definition of "personal information," which plays no role in his finding of ubiquity, differs from some statutory definitions – are inapposite. Plaintiffs do not challenge any aspects of Clayton's detailed analysis of AddShoppers technology nor his comparison of such technology to widely used alternatives.[26]

Based on his decades of directly relevant experience, Clayton reviewed Peet's privacy policy and compared its disclosures to the actual operation of the AddShoppers technology, finding those disclosures to be accurate. Plaintiffs (1) misrepresent Clayton's testimony as endorsing the omission of tracking technology from privacy policies (where he in fact confirmed that the inclusion of such disclosures is considered "best practice"), *see* Catapang Decl., Ex. L [Clayton Depo., p. 123], and then (2) criticize him for not opining on how a "reasonable user" might read Peet's policies, a question he was *not* designated to address. Plaintiffs' request to exclude Clayton's opinions should be denied.

## IV.    <u>CONCLUSION</u>

The Court should deny the motion for class certification, exclude paragraphs 12-13, 68-76, 85-89 of Richard Smith's declaration, and deny the motion to exclude Will Clayton's report.

//

//

//

//

//

//

---

[26] Clayton's decades of experience enable him to explain in plain English how AddShoppers' technology operates and how its component technologies that "are common to many advertising solutions used very broadly online for decades …" including in Google Analytics ("the most popular and common website analytics tool"). Clayton Report, ¶ 23; *see also id.*, ¶¶ 10-11,13-25, 49-50 (footnotes omitted)).

1

DATED February 10, 2025

2

**WOMBLE BOND DICKINSON (US) LLP**
TOMIO B. NARITA

3

JEFFREY A. TOPOR
R. TRAVIS CAMPBELL

4

SAMUEL R. MELAMED
MICHELLE F. CATAPANG

5

6

By:    /s/R. Travis Campbell

7

R. Travis Campbell
Attorneys for Defendant

8

AddShoppers, Inc.

9

10

**BRANN & ISAACSON**
DAVID W. BERTONI

11

12

By:    /s/David W. Bertoni

13

David W. Bertoni
Attorneys for Defendant

14

AddShoppers, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28