MORGAN, LEWIS & BOCKIUS LLP
Megan A. Suehiro, Bar No. 316104
megan.suehiro@morganlewis.com
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: +1.213.612.2500

Phillip J. Wiese, Bar No. 291842
phillip.wiese@morganlewis.com
M. Abigail West, Bar No. 324456
abigail.west@morganlewis.com
Alexandra M. Gonsman, Bar No. 339361
alexandra.gonsman@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000

Ezra D. Church (*admitted pro hac vice*)
ezra.church@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

Attorneys for Defendant
PEET'S COFFEE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBY LINEBERRY, TERRY MICHAEL COOK and MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADDSHOPPERS, INC., and PEET'S COFFEE INC.,<br><br>Defendants. | Case No. 3:23-cv-01996-VC<br><br>**DEFENDANT PEET'S COFFEE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>Date:  March 20, 2025<br>Time:  10:00 a.m.<br>Ctrm:  4 – 17th Floor<br>Judge:  Hon. Vince Chhabria |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 3

    A.    Peet's Coffee Business.............................................................................. 3

    B.    AddShoppers' SafeOpt Technology ......................................................... 5

    C.    Cordero's and Cook's Claims ................................................................... 6

III.  ARGUMENT ...................................................................................................... 7

    A.    Plaintiffs Bear the Burden of Satisfying the Exacting Rule 23 Standard. ............. 7

    B.    Individual Issues Predominate Over Any Common Questions of Law or
Fact........................................................................................................... 8

        1.    Whether Plaintiffs and Putative Class Members Consented to the
At-Issue Data Collection is a Fact-Intensive Inquiry................................. 9

        2.    The Information SafeOpt Collects Depends on Myriad Factors that
Vary Across the Class. ............................................................................ 11

        3.    Whether Plaintiffs and Putative Class Members Have Article III
Standing is an Individualized Inquiry. ...................................................... 13

        4.    Individualized Statute of Limitations Issues Will Predominate. ............. 14

        5.    Individualized Choice of Law Issues With Respect to the CDAFA
Class Will Predominate........................................................................... 16

    C.    Plaintiffs' Claims Are Not Typical of the Putative Class and Plaintiffs Are
Inadequate Representatives.................................................................... 16

    D.    Plaintiffs Have Not Met Their Burden to Prove Numerosity, Superiority,
or Manageability, Rendering the Class Vehicle an Inferior Method of
Adjudication............................................................................................ 19

    E.    There Is No Basis to Exclude Clayton's Opinions. ............................... 20

IV.   CONCLUSION.................................................................................................. 20

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Berger v. Home Depot USA Inc.*,
  2011 WL 13224881 (C.D. Cal. Mar. 28, 2011) ...................................................17

*Berman v. Freedom Fin. Network LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) .....................................................................9

*Brodsky v. Apple, Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ..............................................................14, 15

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ...........................................................................17

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .............................................................................................7, 19

*In re Dalkon Shield Prods. Liab. Litig.*,
  693 F.2d 847 (9th Cir. 1982), *abrogated on other grounds by Baxter
  Healthcare Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 121 F.3d 714 (9th
  Cir. 1997) .............................................................................................................19

*Davis v. AT&T Corp.*,
  2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ..........................................................9

*Doe v. Meta Platforms, Inc*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................................18

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ...........................................................................................15

*In re Google RTB Consumer Privacy Litig.*,
  2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ..........................................................13

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) ...........................................................................19

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023) ..............................................................14, 15

*Laboratory Corp. of Am. Holdings v. Davis*,
  No. 24-0304 (U.S. argued Apr. 2025) ....................................................................14

*Lierboe v. State Farm Mut. Auto. Ins. Co*.,
  350 F.3d 1018 (9th Cir. 2003) .................................................................................1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- ii -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) *overruled on other grounds by Olean Wholesale
Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ...................7, 16

*N. Alaska Salmon Co. v. Pillsbury*,
174 Cal. 1 (1916) .......................................................................................................17

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) ...............................................................................18

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .............................................................13, 17

*Sandoval v. Cnty. of Sonoma*,
912 F.3d 509 (9th Cir. 2018) ......................................................................................17

*Stiner v. Brookdale Senior Living, Inc.*,
665 F. Supp. 3d 1150 (N.D. Cal. 2023) ......................................................................14

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ..............................................................................................16

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021)....................................................................................................14

*United States v. Crawford*,
239 F.3d 1086 (9th Cir. 2001) ....................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...........................................................................................7, 8, 15

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) ......................8, 20

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ...............................................................................13, 19

**Federal Statutes**

Fed. R. Civ. P. 23 .............................................................................................................2, 7

Fed. R. Civ. P. 23(a) .........................................................................................................7, 8, 19

Fed. R. Civ. P. 23(b) .........................................................................................................7

Fed. R. Civ. P. 23(b)(3).....................................................................................................8, 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- iii -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

**State Statutes**

Alaska Stat. § 11.46.740 ...............................................................................................16

Ariz. Rev. Stat. Ann. § 13-2316 ....................................................................................16

Cal. Code Civ. Proc. § 340(a) .......................................................................................14

Cal. Penal Code § 502(a) ...............................................................................................17

California Unfair Competition Law ...............................................................................18

Colo. Rev. Stat. Ann. § 18-5.5-101-102 .......................................................................16

Computer Data Access and Fraud Act ................................................................... *passim*

Haw. Rev. Stat. § 708-890 to 708-895.7 .......................................................................16

Idaho Code Ann. § 18-2202 ...........................................................................................16

Ind. Code Ann. § 35-43-1-8 ...........................................................................................16

Ind. Code Ann. § 35-43-2-3 ...........................................................................................16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
                                              - iv -                    PEET'S COFFEE'S OPP. TO PLAINTIFFS'
                                                                       MOTION FOR CLASS CERTIFICATION
                                                                       3:23-cv-01996-VC

## I.    **INTRODUCTION**

Class certification should be denied because factual and legal questions necessary to the resolution of Plaintiffs' claims are individual, not common, and Plaintiffs are not typical or adequate. At the core of this litigation is Peet's Coffee, Inc.'s ("Peet's") use for a limited time on its website AddShoppers, Inc.'s ("AddShoppers") technology used to recognize a device and send a user associated with the device up to two marketing emails on behalf of Peet's.[1] The operation of this technology is anything but uniform. Many visitors to Peet's website did not have any information collected, and in the limited instances in which AddShoppers' technology did collect information, the nature of that information differed based on the visitor's unique interactions with the Peet's website, including how they browsed the website, the browser they used, and device and browser settings. Further still, some of those website visitors consented to the use of AddShoppers' technology through AddShoppers or its marketing partners, or directly on Peet's website, which, at all relevant times displayed a cookie notice banner disclosing the use of the technology being challenged here.

The named Plaintiffs with claims against Peet's—Terry Michael Cook and Miguel Cordero—exemplify the individualized nature of experiences with AddShoppers' technology. While Cook alleges that AddShoppers collected information about the coffee products that he viewed on Peet's website, the only information Cordero alleges AddShoppers collected is the date and time of his visit to Peet's website, occurring over three years ago. Cook alleges he received an email from AddShoppers showing the pictures of the coffee products he viewed on Peet's

---

[1] Plaintiffs' causes of action against Peet's for violations of the California Invasion of Privacy Act ("CIPA") and Computer Data Access and Fraud Act ("CDAFA") lack merit for the reasons set forth in Peet's pending Motion to Dismiss (Dkt. 139). Peet's maintains that Plaintiffs lack standing, which precludes class certification. *See Lierboe v. State Farm Mut. Auto. Ins. Co*., 350 F.3d 1018, 1022 (9th Cir. 2003) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue.").

website, while Cordero never received an email from or on behalf of Peet's at all. And Cook testified that he understood the cookie notice banner on Peet's website to mean he would be allowing the website to install cookie technology on his phone, and he knowingly elected to continue to browse the website anyway.

Plaintiffs cannot meet Rule 23's demanding requirements, and the record demonstrates the impossibility of class certification.

***First***, common issues do not predominate and Plaintiffs overlook individualized issues required to adjudicate the claims and defenses. Plaintiffs' claims under both CIPA and CDAFA center on AddShoppers' alleged collection of Plaintiffs' electronic communications without consent. Key questions necessary to the resolution of those causes of action, including what, if any, information was collected and whether the user consented, are necessarily individualized. At the outset, not every visit to the Peet's website triggered AddShoppers' technology depending on the browser being used, the browser's settings, and the use of ad blockers, each of which independently could have precluded the operation of AddShoppers' technology altogether. Even when active, the type of information collected through AddShoppers' technology would necessarily differ based on what the particular site visitor viewed on the website and whether that visitor took certain actions, such as placing a product in a shopping cart. Whether each putative class member consented to the collection of their data, either impliedly or expressly, will require individualized assessment of the evidence, and mini-trials also will be necessary to establish when each putative class member knew or had inquiry notice that their data was being collected to determine whether each claim is within the applicable statutory limitations period. These and other individualized issues alone preclude certification.

***Second***, Cook and Cordero are not typical of the other putative class members, and neither

Morgan, Lewis &
Bockius LLP
Attorneys at Law

- 2 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

is an adequate class representative.  Cook, a non-California resident, seeks to represent the nationwide CDAFA class, despite the fact that CDAFA applies only to California residents. Cordero seeks to represent the CDAFA class and the CIPA subclass, despite the fact that AddShoppers did not collect any browsing information in connection with his visit to Peet's website and he did not receive any email from or on behalf of Peet's.  Cordero is not even a member of the putative class of those whose "detailed browsing activity" was collected from Peet's website since nothing more than the date and time of his visit were collected.

*Third*, Plaintiffs have not demonstrated that the putative class as to Peet's is so numerous that joinder of all members is impracticable or that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.  Managing a class action that presents the many individualized issues noted above will be unduly difficult.  Class certification is plainly inappropriate in this case.

## II.     STATEMENT OF FACTS

### A.     Peet's Coffee Business

Peet's is a specialty coffee roaster based in the San Francisco Bay Area with both a brick-and-mortar and online presence.  Declaration of Jay Georgianna ("Georgianna Decl."), ¶ 2.  In its brick-and-mortar stores, Peet's sells similar products offered on its website, ranging from coffee and teas to mugs and gear.  *Id.*  Shopping at Peet's storefronts is a public experience.  *Id.*, ¶ 3.  As part of this experience, consumers may handle Peet's products, read their labels, and discuss them with Peet's employees, who may encourage them to make purchases.  *Id.*

Peet's website operates in a similar fashion.  After being presented with a cookie banner to select privacy and cookie preferences, visitors to the Peet's website may peruse Peet's various product offerings, including by clicking on various hyperlinks to obtain more detailed product information.  *Id.*, ¶ 4.  To make an online purchase, website visitors can add one or more products

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 3 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

to their shopping cart, just like they would in a physical store.  *Id.*

While Peet's has maintained a cookie notice banner on its website since at least 2021, the language of the cookie banner has changed over time.  *Id.*, ¶ 5.  Peet's current cookie banner states that Peet's website "uses various technologies including cookies for personalization, website usage and performance measurement, and targeted advertising.  Information about your visit may be stored by or shared with third parties as identified in our Privacy Policy."  *Id.*, ¶ 7.  An earlier version of the cookie banner, live from January 2021 to April 2024, stated that the Peet's website "uses cookies to ensure you get the best experience on our website."  *Id.*, ¶ 8.  Both versions of the cookie banner hyperlinked to Peet's Privacy Policy, which at all relevant times disclosed:

- Peet's may collect contact information to "to send [the website visitor] catalogs, information, newsletters, promotional materials and other offerings from Peet's or on behalf of our partners and Affiliates, to offer . . . other promotion . . . to provide [the consumer] with offers that may be of interest."  Suehiro Decl., Ex. A (PEETS_000014 at 000015).  That information may be sent to Peet's service providers.  *Id.*

- Peet's may collect a consumer's IP address, geolocation information, and information about a consumer's device and browser settings, and provide such information to "third-party vendors and other service providers that perform website analytic or advertising services for us."  *Id.* at PEETS_000017.

- Peet's uses cookies to collect information aimed at "understand[ing] the effectiveness of [Peet's] ad or promotional campaigns" to provide the consumer with "internet-based ads."  *Id.* at PEETS_000018.

- Peet's uses "web beacons, pixels, JavaScript, or other electronic markers that monitor some types of use."  *Id.*  It uses those tools to, among other things, "customize our presentation of content to our private users, including our advertising," and works with service providers to "track, collect and analyze this information."  *Id.*

In addition, from January 12, 2024 to March 25, 2024, the Privacy Policy expressly identified AddShoppers/SafeOpt as one of Peet's partners that would have access to the "web beacons, pixels, JavaScript, or other electronic markers."  Youngentob Decl., Ex. 24 at 10.

In all capitalized letters, the Privacy Policy states: "BY ACCESSING THE SITES ON ANY COMPUTER . . . OR OTHER DEVICE . . . OR OTHERWISE INTERACTING WITH

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
- 4 -
PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

PEET'S, YOU AGREE TO THE TERMS OF THIS PRIVACY POLICY."  Suehiro Decl., Ex. A at PEETS_000014.

### B.    AddShoppers' SafeOpt Technology

Plaintiffs' allegations arise from AddShoppers' SafeOpt technology, a free-to-consumers email marketing service.  In its most general terms, ████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██.  *Id.*, Ex. B (King Depo. at 19:19-24).  For example, ██████████████████ ██████████████████████████████████████████████████ ███████████████████████.  *Id.*, Ex. C (Ledford Depo at 118:10-24).  As represented to and understood by Peet's, website users would only receive emails when they either (a) ██████ ███████████████████████, or (b) ████████████████████████████████████. *Id.*, Ex. B (King Depo., at 61:22-62:11).  In addition, Peet's prohibited SafeOpt from sending emails to website visitors who had already signed up for Peet's emails, regularly providing AddShoppers with an exclusion list.  *Id.*, Ex. D (Hahm Depo. at 84:18-85:9).

Critically, in the limited instances where SafeOpt collected browsing information from Peet's website, ██████████████████████████████████████████████ ██████████████████████████████████████.  *Id.*, Ex. B (King Depo. at 206:23-207:19); *Id.*, Ex. E (King Depo. Ex. 6).  And ████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████.  *Id.*, Ex. B (King Depo. at 106:9-107:18).

In March 2021, Peet's contracted with AddShoppers through a website consultant called Commission Junction ("CJ").  Youngentob Decl., Ex. 16; *see also id.*, Ex. D (Hahm Depo. at

Morgan, Lewis &
Bockius LLP
Attorneys at Law

- 5 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

21:12-23:18)). Peet's use of AddShoppers' services was extremely limited, running only from March 2021 to May 2023, when Peet's informed AddShoppers that it would no longer be using its services. Georgianna Decl., ¶ 9. Unbeknownst to Peet's, and although not used to send emails to website visitors, the SafeOpt pixel remained active on its website from May 2023 to August 2024. *Id.*, ¶ 10. Peet's took action to remove the SafeOpt tag from its website in August 2024. *Id.*

### C.    Cordero's and Cook's Claims

Of the three named Plaintiffs, only Cook and Cordero assert claims against Peet's. Cook is a resident of Seminole, Florida, who claims that he visited Peet's website on March 3, 2023. FAC ¶¶ 7, 58. During that visit, Cook alleges that he clicked on and reviewed certain Peet's products, but did not provide any personal information to Peet's, agree to any terms on Peet's website, or click "accept" on Peet's cookie notice banner. *Id.* ¶ 58. Cook alleges that AddShoppers' SafeOpt technology tracked his visit to Peet's website, including the "exact coffee products" that he viewed, and that he later received two emails to his personal email account from peets@safeopt.com with pictures of those coffee products. *Id.* ¶¶ 59-61. ████████████

████████████████████████████████████████████████████████

███████████████████████████████████. Suehiro Decl., Ex. B (King Depo., 206:23-207:2). Despite pursuing California statutory claims, Cook testified that he █████████████████████████████. Suehiro Decl., Ex. F (Cook Depo., 16:14-15, 74:14-15, 102:10-11).

Cordero is a resident of Sacramento, California. FAC ¶ 8. He claims that AddShoppers' data shows that "he had been tracked by at least a dozen companies for several years," which included "surreptitiously captured information about [his] visit to [Peet's] website on November 9, 2021." *Id.* ¶ 63. As to Peet's website, the "data" Cordero claims AddShoppers collected is limited to the date and time of one visit to Peet's website. *Id.* Cordero acknowledges that he

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
- 6 -
PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

"never provided personal information (including his email) to Peet's." *Id*. Unlike Cook, Cordero does not allege that AddShoppers received information about the products he viewed on Peet's website, and he has never received any email communications from Peet's—through SafeOpt or otherwise. *Id*. ¶¶ 63-66.

As stated in the Motion, Cook and Cordero seek to represent a "Nationwide CDAFA Class" consisting of "[a]ll natural persons who visited Peet's website and for whom AddShoppers collected their detailed browsing activity." Mot. at 14. Cordero alone seeks to represent a "California CIPA Subclass" consisting of "[a]ll natural persons who, while in California, visited Peet's website and for whom AddShoppers collected their detailed browsing activity." *Id.*

## III.   ARGUMENT

### A.   Plaintiffs Bear the Burden of Satisfying the Exacting Rule 23 Standard.

A "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).[2] The Court must conduct a "rigorous analysis" to determine whether Plaintiffs have proven that the Rule 23 requirements are met—an analysis that "[f]requently . . . will entail some overlap with the merits of plaintiff's underlying claim." *Id.* at 351; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

Plaintiffs bear the evidentiary burden of demonstrating that each of the Rule 23 requirements is met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation as required by Rule 23(a),"

---

[2] Unless otherwise noted, all quotations and citations have been omitted.

but "must also satisfy through ***evidentiary proof*** at least one of the provisions of Rule 23(b)." *Id.*

(emphasis added). Where, as here, certification is sought under Rule 23(b)(3), Plaintiff must also

meet the burden of demonstrating that "common" issues "predominate" over issues for individual

class members, a standard that "is ***even more demanding*** than" Rule 23(a)'s exacting commonality

requirement. *Id.* at 34 (emphasis added).

Class certification cannot be based principally on abstracted "common questions," because

"[a]ny competently crafted class complaint" is capable of suggesting such issues. *Dukes*, 564 U.S.

at 349, 359. "What matters to class certification . . . is not the raising of common questions—even

in droves—but rather, the capacity of a class-wide proceeding to generate ***common answers apt***

***to drive the resolution of the litigation***." *Id.* at 350 (emphasis added).[3]

Even if Plaintiffs believe they can offer class-wide proof of an element, Defendants have a

right to disprove issues on an individual basis. *Dukes*, 564 U.S. at 367 (courts must consider

defendant's due process "entitle[ment] to litigate its statutory [or other] defenses to individual

claims"). Class certification should be denied where "the main issues in a case require the separate

adjudication of each class member's individual claim or defense." *Zinser v. Accufix Research*

*Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).

## B.    Individual Issues Predominate Over Any Common Questions of Law or Fact.

Numerous facts in this case support a finding that individual issues of fact predominate,

including whether the putative class members provided consent, what information SafeOpt

captured about each putative class member, whether class members have standing, and whether

Plaintiffs and the putative class members are within the one-year CIPA statute of limitations.

---

[3] Plaintiffs repeatedly state the mistaken premise that that they only need to show that common
***questions***, rather than common answers, predominate. Mot. at 15, 17 (claiming that the Rule
23(b)(3) factors are satisfied because "[c]ommon questions predominate").

These individualized issues, among others, will overwhelm the presentation of evidence at trial and militate against certification.

> **1.  Whether Plaintiffs and Putative Class Members Consented to the At-Issue Data Collection is a Fact-Intensive Inquiry.**

Courts routinely deny class certification where, as here, individualized inquiries are required to ascertain whether putative class members consented to the alleged wrongful conduct. *See, e.g.*, *Berman v. Freedom Fin. Network LLC*, 400 F. Supp. 3d 964, 987 (N.D. Cal. 2019) (litigation of class members' consent arguments "threaten[ed] to overwhelm other issues in the litigation"); *Davis v. AT&T Corp.*, 2017 WL 1155350, at *14-16 (S.D. Cal. Mar. 28, 2017) (denying class certification where individualized consent issues predominated). Plaintiffs concede that they must prove that their communications were collected without consent. Mot. at 18, 23. Accordingly, to resolve their claims, the finder of fact will need to make individualized determinations about whether each putative class member consented to AddShoppers' collection of their browsing data.

Consent to the use of AddShoppers' technology may have been obtained in three ways. ***First***, putative class members may have █████████████████████████████████████, thus consenting directly to AddShoppers' collection of data and subsequent SafeOpt emails. Suehiro Decl., Ex. B (King Depo., at 61:22-62:11). ***Second***, putative class members could have ██████████████████████████████████████████████ and therefore consented to join SafeOpt's network. *Id.* ***Third***, specific to Peet's website, putative class members may have consented by clicking "Accept" on Peets' cookie notice banner, thereby agreeing to Peet's use of marketing cookies, as well as Peet's Privacy Policy. Mot. at 12; Youngentob Decl., Exs. 21-25.

As explained in AddShoppers' Opposition, determining which putative class members consented to AddShoppers' collection of data and marketing practices would require

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 9 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

individualized inquiries into AddShoppers' records.  *See* AddShoppers' Opp. at 13.  Likewise, putative class members' acceptance of AddShoppers' technology through Peet's website would necessitate determination of (i) when the putative class member visited Peet's website; (ii) the version of the cookie banner that appeared on the website at that time; (iii) the version of the Peet's Privacy Policy in effect at that time; and (iv) whether the putative class member clicked "Accept" on Peet's cookie banner or otherwise consented.

As described in Section II.A. above, the language in Peet's cookie banner changed over time, as did the language in Peet's Privacy Policy.  From January 2021 to April 2024, Peet's cookie banner stated that Peet's website "uses cookies to ensure you get the best experience on our website."  Georgianna Decl. ¶ 8.  The current cookie banner discloses that Peet's website "uses various technologies including cookies for personalization, website usage and performance measurement, and targeted advertising.  Information about your visit may be stored by or shared with third parties as identified in our Privacy Policy."  *Id.* ¶ 7.  Peet's Privacy Policy at all relevant times disclosed that Peet's would use cookies, JavaScript, and other technology for "advertising" and would share that information with "service providers."  Moreover, from January 12, 2024 to March 25, 2024, Peet's Privacy Policy specifically identified AddShoppers as a partner that may receive usage information.  Youngentob Decl., Ex. 24 at 9-10.  What a visitor saw and potentially agreed to on Peet's website would differ depending on the date of their purported visit.

There can be no doubt that during the class period, at least some visitors to Peet's website affirmatively clicked "Accept" on Peet's cookie banner, consenting to the use of use of cookies and other tracking technologies.  In fact, approximately 15% of visitors to Peet's website click the "Accept" button on Peet's cookie banner.  Georgianna Decl., ¶ 6.  Yet other users, like Cook, ████

████████████████████████████████████████████████████████████████

Morgan, Lewis &
Bockius LLP
Attorneys at Law

- 10 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

███████████████████████████████.  Suehiro Decl., Ex. F (Cook Depo., 43:1-10).

Plaintiffs claim that Peet's "consent tracking system was broken," arguing that the "preferences" button on Peet's cookie banner was "completely ineffective."  Mot. at 13.  Even accepting Plaintiffs' argument that the "preferences" settings did not function correctly by not allowing users to disable cookies, that would not change the fact that some website visitors saw the cookie banner and "Accepted" the disclosed practices either by directly clicking "Accept" or by continuing to browse without further action.  Whether cookie preferences were properly tracked does not detract from the fact that some visitors provided consent to begin with.

Finally, while Plaintiffs claim that Peet's Privacy Policy is not "legally sufficient" to provide notice, the Privacy Policy disclosed the use of "web beacons" or "pixels" for "advertising" purposes at all relevant times, and that Peet's may "work with service providers" to accomplish those advertising goals.  Youngentob Decl., Ex. 21 at 11.  Plaintiffs cite no authority that obligated Peet's to specifically name AddShoppers or describe its advertising campaign in more detail.  Moreover, Will Clayton, AddShoppers' expert, confirmed that Peet's Privacy Policy ███████████ ████████████████████████████████████████████████████████████████████.

Suehiro Decl., Ex. G (Clayton Depo. Ex. 1 at ¶ 52).

### 2. The Information SafeOpt Collects Depends on Myriad Factors that Vary Across the Class.

Plaintiffs erroneously claim that the SafeOpt tag is a "standardized tracking code" that operates the same for everyone, foreclosing any variation across class members.  Mot. at 1, 5.  From this entirely false premise, Plaintiffs assert that common evidence can prove (1) the "contents" of Plaintiffs' private communications were captured to prove their CIPA claim, (Mot. at 18-19), and (2) that AddShoppers misappropriated valuable data, which constitutes sufficient damage or loss to prove their CDAFA claim.  Mot. at 23-24.  However, the nature of information

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 11 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

the SafeOpt tag collects ████████████████████████████████████████████

███████████████████████████████████████████████. *See*

Suehiro Decl., Ex. H (Feamster Depo. 91:21-92:19); *id.*, Ex. I (Smith Dep. 314:24-315:9).

      Peet's expert, Professor Jaideep Srivastava, explained—based on his own extensive testing

of the SafeOpt technology—that the amount of information a tracking pixel can capture varies

based on the type of browser used during a website visit, as well as that browser's privacy settings.

Suehiro Decl., Ex. J (Declaration of Prof. Srivastava at ¶¶ 57-80).  This is because "most browsers

have their own default privacy settings that are enabled when a visitor begins a session," and some

default privacy settings offer greater privacy protections than others.  *Id.* ¶¶ 70-80.  ██████████

█████████████████████████████████████████████████████████████████████

████.  *Id.*, Ex. I (Smith Depo. 14:2-18).  For instance, ████████████████████████

█████████████████████████████████████████████████████████████████████

████████████  *Id.*, Ex. H (Feamster Depo. 92:20-93:4).

      Remarkably, Plaintiffs' expert similarly conceded that ██████████████████

██████████████████████████████████.  *Id.*, Ex. I (Smith Depo.

314:24 -315:9).  ██████████████████████████████████████.  *Id.* at 283:4-9.

For example, ██████████████████████████████████████████████████

████████████████████████████████████.  *Id.* at 282:9-18.  Indeed,

variations between each named Plaintiff during their respective visits to Peet's website illustrate

these variations across the class.  Cook claims that ████████████████████████████

████████████████████████, *see id.*, Ex. F (Cook Depo. at 37:4-16), while Cordero

admits that ████████████████████████████████████████████████

████████████████, *id.*, Ex. K (Cordero Depo. 58:5-21).

These individualized differences are critical to determine whether a putative class member even has a CIPA or CDAFA claim. To prove a claim under CIPA, the data allegedly collected must be "contents" of a private communication.[4] *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107-09 (9th Cir. 2014). To prove a CDAFA claim, the data at issue must be "valuable." *See Rodriguez v. Google LLC*, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024).

Plaintiffs cannot provide common evidence to prove that AddShoppers captured the "contents" of putative class members' communications, let alone prove that all these communications were private and of equal value. Each of these elements will require an individualized inquiry to determine the type of information collected, whether this information is considered "content" and private under CIPA, and whether the information has value sufficient to constitute damage or loss under CDAFA. Plaintiffs' inability to demonstrate commonalities in the information captured amongst themselves underscores the impossibility of producing common evidence to prove the elements of their CIPA and CDAFA claims on a class-wide basis.

### 3. Whether Plaintiffs and Putative Class Members Have Article III Standing is an Individualized Inquiry.

Class certification should be denied for the additional reason that individualized questions predominate with respect to whether Plaintiffs and putative class members have Article III standing. As a threshold matter, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion, LLC v. Ramirez*, 594 U.S. 431 (2021). Although the Ninth Circuit and its progeny have held that classes including uninjured putative class members

---

[4] Plaintiffs claim that AddShoppers and Peet's concede that the information AddShoppers collected constitutes "content" under CIPA. Mot. at 19. However, Plaintiffs mischaracterize testimony of lay witnesses who cannot testify to legal conclusions. *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness may not, however, testify as to a legal conclusion.").

Morgan, Lewis &
Bockius LLP
Attorneys at Law

- 13 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

may be certified,[5] this Court has refused to certify a class requiring individualized questions to determine "whether class members actually suffered an injury sufficient to confer Article III standing." *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1199 (N.D. Cal. 2023). In *Stiner*, the Court found that "whether and to what extent the members of the proposed class were concretely injured [by the defendant] raise[d] evidentiary questions that likely will vary by class member." *Id.* at 1198. Because "highly individualized" and "complicated" inquiries were necessary to determine whether putative class members "were harmed in a way giving rise to liability," the plaintiffs could not prove predominance. *Id.* at 1199.

So too here. Individualized questions regarding whether and to what extent class members were injured predominate over any common questions of law or fact. Individualized inquiries are required to determine, among other things, whether and how putative class members consented to the alleged wrongful conduct, the information collected by SafeOpt during their visit to the Peet's website, and whether they received any emails from or on behalf of Peet's. Because individualized inquiries are necessary to determine whether class members suffered an injury, the proposed class does not meet the predominance requirement. *Id.*

### 4. Individualized Statute of Limitations Issues Will Predominate.

Plaintiffs' CIPA claims have a one-year statute of limitations. Cal. Code Civ. Proc. § 340(a); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023). The statute of limitations begins to run when the data is collected. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. 2020). Plaintiffs filed their complaint on April 24, 2023. Dkt. 1. As a result, any data collection prior to April 24, 2022 is outside the statute of limitations, yet Plaintiffs' putative classes have no temporal limitation. Mot. at 14. Plaintiffs' proposed classes would

---

[5] As a result of a Circuit split, the Supreme Court recently granted certiorari on this question. *See Laboratory Corp. of Am. Holdings v. Davis*, No. 24-0304 (U.S. argued Apr. 2025).

include anyone whose data from the Peet's website was *ever* collected by AddShoppers. *Id.*

Importantly, adding the one-year time limitation to the class definition would result in Cordero's exclusion from the class. Cordero's only visit to the Peet's website, the visit that triggered his data collection, was on November 9, 2021—more than a year before the lawsuit was initially brought. Youngentob Decl., Ex. 29 at ¶ 6 (Cordero Declaration).

Cordero cannot rely on the "delayed discovery doctrine"[6] to toll the statute of limitations because had he been reasonably diligent about investigating his privacy concerns, he would have reviewed Peet's Privacy Policy and could have contacted Peet's with any questions through the contact information provided therein. *Id.* at 9; *see Javier*, 649 F. Supp. 3d at 901. However, even if the delayed discovery doctrine applied, it would serve as yet another barrier to class certification. Application of the doctrine would require individualized inquiries to determine when each class member received enough information to "at least suspect a factual basis" of a CIPA violation. *Brodsky*, 445 F. Supp. 3d at 138. Each putative class member would need to submit information about when he or she (i) visited the Peet's website, (ii) viewed the Privacy Policy, (iii) received an AddShoppers email about Peet's, (iv) received an AddShoppers email about another AddShoppers partner, or (v) obtained from AddShoppers the data it had collected. Any of those events could have provided inquiry notice to the putative class member and started the clock on the statute of limitations. Peet's would be entitled to develop that defense as to each putative class member at trial with respect to Plaintiffs' CIPA claims. *Dukes*, 564 U.S. at 367.

/ / /

/ / /

---

[6] The delayed discovery doctrine "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Javier*, 649 F. Supp. 3d at 901 (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 15 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

5.    **Individualized Choice of Law Issues With Respect to the CDAFA Class Will Predominate.**

Plaintiffs' proposed CDAFA class also raises individualized choice of law issues. Plaintiffs purport to apply California law on a nationwide basis without performing the required choice of law analysis.  Non-California residents cannot recover damages under California law. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (applying the "presumption against extraterritorial application" of California law).  California law may be applied to a nationwide class only if "the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012).  In determining whether other states' interests outweigh California's, the Court must determine (1) whether the laws of each of the other states are materially different from California law,[7] (2) whether other states have an interest in having their law applied, and (3) which state's interest would be most impaired if its law were not applied.  In other words, the proposed nationwide class would require a state-by-state choice of law analysis, just to determine the applicable law for the members of each relevant state—something that Plaintiffs have not undertaken. *See Mazza* 666 F.3d at 589-90.  Thus, additional individualized legal issues predominate as to the proposed CDAFA class.

C.    **Plaintiffs' Claims Are Not Typical of the Putative Class and Plaintiffs Are Inadequate Representatives.**

Courts evaluating typicality consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

---

[7] CDAFA is materially different from other states' laws, which themselves vary from state-to-state.  For example, many states do not provide a private right of action in their anti-hacking laws. *See* Alaska Stat. § 11.46.740; Ariz. Rev. Stat. Ann. § 13-2316; Colo. Rev. Stat. Ann. § 18-5.5-101-102; Haw. Rev. Stat. §§ 708-890 to 708-895.7; Idaho Code Ann. § 18-2202; and Ind. Code Ann. §§ 35-43-1-8, 35-43-2-3.

whether other class members have been injured by the same course of conduct." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018). A "named plaintiff is not typical where evidence needed to prove his claims is not probative of other class members' claims or where putative class members face different defenses." *Berger v. Home Depot USA Inc.*, 2011 WL 13224881, at *6 (C.D. Cal. Mar. 28, 2011).

Plaintiffs have not met their burden to show that they are adequate or typical, including because Plaintiffs are subject to unique defenses that will create credibility concerns and distract from resolution of any class claims. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 557 (C.D. Cal. 2012) ("[A]n arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation.").

**Extraterritoriality.** While Plaintiffs have identified Cook as a class representative for the nationwide CDAFA class, he cannot bring a claim under CDAFA. "Ordinarily, the statutes of a state have no force beyond its boundaries." *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). CDAFA is expressly aimed at "protect[ing] the privacy of individuals . . . ***within this state***." Cal. Penal Code § 502(a) (emphasis added). Cook ████████████████████████ ████████████████████████████████████████. Suehiro Decl., Ex. G (Cook Depo., 16:14-15, 74:14-15, 102:10-11). He cannot avail himself of the laws of California, making him an inadequate representative for the nationwide CDAFA class.[8]

Plaintiffs' authority on this point does not necessitate a different conclusion. They cite one case where extraterritoriality was not considered (*Rodriguez v. Google, LLC*, 2024 WL 38302, at

---

[8] Under the required choice of law analysis, *see supra*, Section III.B.5, Cook's purported anti-hacking claims would arise under Florida law, making his claims atypical of the putative nationwide CDAFA Class and rendering him an inadequate representative.

*13 (N.D. Cal. Jan. 3, 2024)), one case that was decided at the motion to dismiss stage and therefore no evidence was considered that the plaintiff lacked a California connection (*Doe v. Meta Platforms, Inc*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023)), and one case analyzing the California Unfair Competition Law rather than CDAFA or any other provision of the California Penal Code (*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008)).  *See* Mot. at 22-23.

      **Differences in Consent.**  Cook's claims are subject to the unique argument that he consented to the technology at issue.  ██████████████████████████████████ ████████████████████████████████████████████████████████████████ Suehiro Decl., Ex. F (Cook Depo., 43:1-10).  ███████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████.  *Id.* at 43:11-13.  Other class members may have a different understanding, or no understanding, of whether cookies would be placed on their computers or devices.

      **Differences in Data Collected.**  As discussed above, the data AddShoppers collected from each Plaintiff confirms that their claims are atypical of the classes they seek to represent.  Cordero concedes that AddShoppers only collected the date and time of his visit to the Peet's website.  FAC ¶ 63; *see also* Suehiro Decl., Ex. L (PLTF00001321-22).  Moreover, while Plaintiffs define the classes as individuals from whom "AddShoppers collected their ***detailed browsing history***," Plaintiffs do not define what "detailed browsing history" entails, only describing it as including "shopping cart contents, and product viewing content."  Mot. at 5, 10, 13.  No shopping cart contents or product viewing content were ever collected from Cordero, making his claims atypical

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 18 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

and excluding him from the classes he purports to represent.[9]

**D.  Plaintiffs Have Not Met Their Burden to Prove Numerosity, Superiority, or Manageability, Rendering the Class Vehicle an Inferior Method of Adjudication.**

Plaintiffs must provide "evidentiary proof" to satisfy each of the Rule 23(a) factors, including numerosity, superiority, and manageability. *Comcast*, 569 U.S. at 33. They have failed to do so. First, in support of numerosity, Plaintiffs claim that "AddShoppers collected detailed browsing information on over a million people across Peet's and Dia's websites," citing Exhibit 30 of the Youngentob Declaration in support. Mot. at 15. But Exhibit 30 does not provide any information about the number of people who would fall into any of Plaintiffs' vague and ill-defined putative classes. Youngentob Decl., Ex. 30. Plaintiffs fail to meet their burden on numerosity.

Next, Plaintiffs have not proven manageability. To support their argument that "[t]his case is readily manageable as a class action," Plaintiffs assert that "[t]he claims at issue do not present individualized questions that would overwhelm the trial." Mot. at 24. But, as discussed above, numerous individualized issues predominate. *See supra*, section III.B; *see also* Suehiro Decl., Ex. F (Cook Depo., 94:5-9). As the Ninth Circuit has recognized, "problems of commonality merge into problems of management." *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982), *abrogated on other grounds by Baxter Healthcare Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 121 F.3d 714 (9th Cir. 1997). In such circumstances, a case cannot be managed as a class action. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 654 (C.D. Cal. 1996) ("[T]he number of individual issues existing in this case hampers the 'manageability' of a class action.").

---

[9] The fact that no browsing history was collected for Cordero also undermines Plaintiffs' mistaken and unsupported argument that "every triggered data transmission would include . . . content information." Mot. at 19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 19 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

Finally, Plaintiffs cannot demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs' proposal would require mini-trials on key, individualized issues, including, among other things:  (1) the type of information collected for each putative class member and whether he or she has standing to bring a claim; (2) whether each putative class member impliedly or expressly consented to AddShoppers' technology; (3) whether the information in AddShoppers' database is accurately associated with the putative class member;[10] and (4) when each putative class member was on notice that AddShoppers may have collected their browsing history to determine whether their claims are timely.  In addition, for Plaintiffs' proposed California subclass, the factfinder would need to determine whether the putative class member visited Peet's website while in California—a challenging task given ███████████████████████████████ ██████████████. *See* Suehiro Decl., Ex. I (Smith Depo., 58:6-19).

Plaintiffs propose no trial plan to deal with these individualized issues, which is fatal to their request for certification.  *See Zinser*, 253 F.3d at 1190 (upholding denial of class certification where "there was no manageable trial plan adequate to deal with individualized issues").

### E.    There Is No Basis to Exclude Clayton's Opinions.

The Court should reject Plaintiffs' attempt to disqualify AddShoppers' expert, Will Clayton, for the reasons described in AddShoppers' Opposition.  *See* AddShoppers Opp. at 19-20.

## IV.    CONCLUSION

For the foregoing reasons, Peet's requests that the Court deny Plaintiffs' Motion.

---

[10] Plaintiffs' expert Richard Smith testified that ████████████████████████████████ ███████████████████████████████████████████████████. Suehiro Decl., Ex. J (Smith Depo., 66:12-67:9).  To establish a claim, ████████████████████████████████. *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC

Dated: February 10, 2025

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Megan A. Suehiro*
    Megan A. Suehiro
    Phillip J. Wiese
    M. Abigail West
    Alexandra M. Gonsman
    Ezra D. Church (*admitted pro hac vice*)

    Attorneys for Defendant
    PEET'S COFFEE, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

- 21 -

PEET'S COFFEE'S OPP. TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
3:23-cv-01996-VC