**WOMBLE BOND DICKINSON (US) LLP**
TOMIO B. NARITA (SBN 156576)
*Tomio.Narita@wbd-us.com*
JEFFREY A. TOPOR (SBN 195545)
*Jeff.Topor@wbd-us.com*
R. TRAVIS CAMPBELL (SBN 271580)
*Travis.Campbell@wbd-us.com*
SAMUEL R. MELAMED (SBN 301303)
*Samuel.Melamed@wbd-us.com*
MICHELLE F. CATAPANG (SBN 308038)
*Michelle.Catapang@wbd-us.com*
50 California Street, Suite 2750
San Francisco, California 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

**BRANN & ISAACSON**
DAVID W. BERTONI (admitted *pro hac vice*)
*dbertoni@brannlaw.com*
113 Lisbon Street
Lewiston, ME 04243-3070
Telephone: (207) 786-9325
Facsimile: (207) 783-9325

Attorneys for Defendant
ADDSHOPPERS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ABBY LINEBERRY and MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADDSHOPPERS, INC. and PEET'S COFFEE, INC.,<br><br>Defendants. | CASE NO. 3:23-cv-01996-VC<br><br>**DEFENDANT ADDSHOPPERS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF DECLARATION OF RICHARD SMITH**<br><br>Date: March 20, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## I. ARGUMENT

### A. Mr. Smith's Opinion About Identifying Class Members Is Unreliable

Mr. Smith's opinion that the "AddShoppers database contains email addresses of consumers that can be used to identify class members" is unsupported and must be rejected. He failed to test the accuracy of <u>any</u> of the millions of email addresses in AddShoppers' database, let alone the 123,000 email addresses Plaintiffs now assert are associated with class members who visited Peet's website.[1] His opinion is based entirely on "underlying testing" he claims to have performed, but no evidence of his "testing" has been offered.[2] Nor do Plaintiffs contend – let alone cite authority establishing – that Mr. Smith employed an acceptable methodology to test the accuracy of the email addresses, or their utility when attempting to identity site visitors. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) (court must "assess whether the reasoning or methodology underlying the testimony is valid"). The opinion should be excluded. *See In re Google Play Store Antitrust Litig.*, 2023 U.S. Dist. LEXIS 151490, at *43 (N.D. Cal. Aug. 28, 2023) (plaintiffs bear burden to establish admissibility of their expert's testimony).

Mr. Smith's opinion is fundamentally unreliable and fails the threshold requirements under *Daubert* and Federal Rule of Evidence 702 because it "do[es] not rest on a sufficient factual foundation." *See, e.g., Klein v. Meta Platforms, Inc.*, 2025 U.S. Dist. LEXIS 13366, at *17 (N.D. Cal. Jan. 24, 2025) (citation omitted). Whatever "testing" he performed (it is not in the record) was demonstrably flawed because it yielded inaccurate results. *See* Doc. No. 178 at p. 34, II.E.1; Doc. No. 163 at p. 9, III.D.1. He conceded his testing "shows that [his] own web browsing appears to have triggered promotions to an e-mail address that wasn't even connected to [his]

---

[1] Plaintiffs contend "AddShoppers' database contains about 123,000 email addresses with detailed browsing activity from Peet's website and public IP addresses geolocated to California." Doc. No. 178 at p. 23, II.B.1. They have not said how many email addresses are associated Dia & Co.'s website. *See* Doc. No. 163 at pp. 4-5, III.B; Doc. No. 173 at p. 4, I.C.

[2] Mr. Smith refers to his testing at Appendix B (Smith Decl., ¶ 7), but Plaintiffs did not file any appendix with their motion or reply papers.

web browsing[.]" Doc. No. 163-10, Catapang Decl., Ex. B [Smith Depo., p. 258:2-9]. He then conceded that "[t]he entire basis for identifying class members depends on accurate correlation between e-mail addresses and browsing history[,]" and that the incorrect association of his browsing history with an email address that was <u>not</u> his is "pretty troubling." *Id*. [Smith Depo., pp. 263:20-264:14]. Based on his own admissions, "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

AddShoppers was only able to confirm the email address belonged Mr. Smith's daughter by asking him. *See* Doc. No. 163-10, Catapang Decl., Ex. B [Smith Depo., p. 255:11-22]. The same individualized inquiry would be required for each email address in the database that is associated with a visit to Peet's or Dia & Co.'s websites.[3] The fact that AddShoppers database is not <u>always</u> wrong when it associates an email address to a site visitor, *see* Doc. No. 178 at p. 34, II.E, does not mean Mr. Smith's opinion is reliable. Nor does the <u>inaccurate</u> association of Mr. Smith's browsing data with his daughter's email address somehow "confirm[]" that "AddShoppers' database associates specific browsing activity with identifiable individuals," as Plaintiffs wrongly claim. *Id*. And Plaintiffs' contention that "[c]ourts routinely approve notice lists" that are "overinclusive" (if it were true) is irrelevant because that does not make Mr.

---

[3] A putative class member would also need to confirm they visited the websites on the date and time reflected in AddShoppers database while they were in California. This is not the type of information that is appropriate for "self-identification." *See* Doc. No. 163 at pp. 10-11, III.D.1. None of the cases Plaintiffs cite hold that self-identification is appropriate to determine the date and time potential class members visited specific websites. *See, e.g., Torres v. Prudential Fin., Inc.*, 2024 U.S. Dist. LEXIS 215487, at **22-24 (N.D. Cal. Nov. 26, 2024) (affidavits attesting to whether potential class members submitted insurance form on defendants' website were appropriate in addition to defendant cross-checking member's email address and phone number against its database); *Gold v. Midland Credit Mgmt., Inc.,* 306 F.R.D. 623, 629 (N.D. Cal. 2014) (potential class members could submit credit card statements to prove membership); *Krueger v. Wyeth, Inc*., 310 F.R.D. 468, 475-476 (S.D. Cal. 2015) (affidavits appropriate to determine whether class members were exposed to "widespread advertising campaign" contain false representations about drug products sold nationwide) ; *Ang v. Bimbo Bakeries USA, Inc*., 2018 U.S. Dist. LEXIS 149395, at * 2 & n. 5 (N.D. Cal. Aug. 31, 2018) (lack of records confirming class member purchases in food labeling case does not preclude certification).

Smith's opinion reliable. *See* Doc. No. 178 at p. 34, II.E.1.[4]  Regardless, Plaintiffs are incorrect. *See, e.g., Hilsely v. Ocean Spray Cranberries, Inc.*, 2019 U.S. Dist. LEXIS 185477, at **3-7 (S.D. Cal. Feb. 5, 2019) (collecting case rejecting class notice plans that sought to use overinclusive email lists).

### B.   Mr. Smith's Opinion About IP Addresses Is Pure Speculation

Mr. Smith conceded that IP addresses are <u>not</u> a reliable means of identifying what state a person is in when accessing the internet. *See* Doc. No. 163-10, Catapang Decl., Ex. B [Smith Depo., pp. 46:5-47:3]. Specifically, he admitted that when a person accesses the internet from a cell phone while traveling out-of-state, the IP address information for the device may be inaccurate. *Id*. The fundamental flaws in IP-based geolocation are widely recognized. As Mr. Feamster explained, recent studies have shown IP geolocation services can be wrong by hundreds or even thousands of kilometers. *Id*. Ex. A [Feamster Report, pp. 33:20-34:6]. Plaintiffs do not challenge Mr. Feamster's opinion. Indeed, one of the IP addresses associated with the email address Mr. Smith used to conduct his testing in this case is associated with Kentucky,[5] even though he conducted his testing in Massachusetts. *See* Doc. No. 163-10, Catapang Decl., Ex. B [Smith Depo., pp. 200:9-14]. Beyond these fundamental problems, here, "many of the IP addresses" in AddShoppers' database "were provided to it by a data partner" and therefore they "do not indicate anything about the location of the device at the time it was connected to the brand partner's website." *Id*., Ex. A [Feamster Report, p. 35:3-5]. Plaintiffs ignore all this.

Plaintiffs claim that Defendants purportedly use IP addresses to determine geographic location. *See* Doc. No. 178 at p. 34, II.E.2. But the fact that Defendants may use IP addresses for business purposes (*e.g.*, to attempt to distinguish site visitors from outside the United States,

---

[4] In the only case Plaintiffs cite – *Macarz v. Transworld Sys., Inc*., 201 F.R.D. 54 (D. Conn. 2001) – the court had already certified a class under the Fair Debt Collection Practices Act and was deciding whether to require individual mailed notice. Here, no class has been certified, there is no class list, and the record demonstrates the email addresses in AddShoppers' database are not a reliable way to compile such a list.

[5] *See* Doc. No. 163-1, King Decl., ¶ 18.

*see* Doc. No. 147, p. 7, II.D.) says nothing about the scientific soundness of Mr. Smith's opinion that IP addresses are a reliable method for determining the state-specific geographic location of site visitors in this case.

*Torres* is distinguishable. Here, unlike *Torres*, many of the IP addresses do not reflect anything about the location of the device at the time the potential class member visited Peet's or Dia & Co's websites because the IP addresses came from AddShoppers' data partner and relate to a previous site visit. *See* 2024 U.S. Dist. LEXIS 215487 at **24-25. Moreover, unlike *Torres*, Plaintiffs' own expert admits that IP address information is unreliable, and AddShoppers' expert testified about the significant errors that commonly occur when using IP address geolocation services.[6] Indeed, unlike *Torres*, here, there is evidence of significant errors in the record. *See, e.g.,* Doc. No. 163-10, Catapang Decl., Ex. B [Smith Depo., pp. 200:9-14].

The court in *Strike 3 Holdings, LLC v. Doe* did not find IP addresses can be used to determine class members' locations. 319 F. Supp. 3d 326 (D.D.C. 2018). That court allowed the plaintiff to subpoena defendant's internet service provider, concluding plaintiff had "established a good faith belief" regarding personal jurisdiction because geolocation technology had traced the defendant's IP address to a location in the District of Columbia. *Id*. at 329. *Third Degree Films, Inc. v. Does 1-131* involved a similar request by a plaintiff to subpoena the internet service provider of an anonymous defendant who had illegally downloaded videos. *See* 280 F.R.D. 493, 500 (D. Ariz. 2012). Neither case supports Mr. Smith's opinion.

C.   **Mr. Smith Is Merely Guessing That AddShoppers Tracked Lineberry**

Plaintiffs concede the sole basis for Mr. Smith's opinion that AddShoppers' "tracked" Lineberry is the fact that AddShoppers' database associated certain website visits with her email

---

[6] The defendants' expert in *Torres* focused on the impact of VPNs on the reliability of IP address information. *See* 2024 U.S. Dist. LEXIS 215487 at **25-26. AddShoppers' expert identifies numerous additional problems. *See* Doc. No. 163-10, Catapang Decl., Ex. A [Feamster Report, pp. 33:16-36:2]. Additionally, zip codes were available to use as a cross-reference in *Torres*. Zip codes are not available here.

address. Plaintiffs' contention that Mr. Smith is permitted to rely on AddShoppers' data, *see* Doc. No. 178 at p. 35, II.E.3, misses the point.

The fundamental flaw in Mr. Smith's opinion is that he assumes, without any independent verification, that Lineberry visited the websites associated with her email address in AddShoppers' database. This assumption is not supported by the evidence. *See* Doc. No. 163 at pp. 8-11, III.D.1. For example, the evidence shows Brenda Hill, not Lineberry, visited Dia & Co's site on April 11, 2022. *See* Doc. No. 173 at p. 1-2 & 4; Doc. No. 163 at p. 6, III.C.[7]

The "analytical gap between" AddShoppers' data and Mr. Smith's opinion is "simply too great" because AddShoppers' data does not reliably indicate whether Lineberry visited any of the websites associated with her email address. *See Joiner*, 522 U.S. at 146. As Mr. Smith explained, "it's really up to the named plaintiffs to talk about" whether they visited those websites, but he never spoke to Lineberry, and she never provided evidence on this point. *See* Doc. No. 163-10, Catapang Decl., Ex. B [Smith Depo., pp. 268:20-269:2]. There is no factual basis for Mr. Smith to opine that Lineberry was tracked on that site.

## II. CONCLUSION

For the reasons set forth herein, and in AddShoppers' Opposition (Doc. No. 163), the Court should exclude paragraphs 12-13, 68-76, 85-89 of Richard Smith's declaration.

---

[7] Plaintiffs contend Lineberry "testified during her deposition about visiting Dia's website on her phone specifically to shop for clothing." Doc. No. 178 at p. 27, II.B.2.b. She did not testify that she visited Dia & Co. on April 11, 2022, or that she shopped for the blouse that appears in AddShoppers' database. Notably, she did not submit a declaration with her reply claiming she visited the website on that date. Nor did she submit any other evidence, such as a copy of her browsing history or an email she received from AddShoppers, proving it was her. Her failure to provide evidence on this key issue is telling.

DATED March 10, 2025

**WOMBLE BOND DICKINSON (US) LLP**
TOMIO B. NARITA
JEFFREY A. TOPOR
R. TRAVIS CAMPBELL
SAMUEL R. MELAMED
MICHELLE F. CATAPANG

By: /s/R. Travis Campbell
R. Travis Campbell
Attorneys for Defendant
AddShoppers, Inc.