David M. Berger (SBN 277526)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9713
Facsimile: (510) 350-9701
dmb@classlawgroup.com

Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Kasey Youngentob (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
(816) 714-7100 (tel.)
siegel@stuevesiegel.com
moore@stuevesiegel.com
youngentob@stuevesiegel.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBY LINEBERRY and MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>ADDSHOPPERS, INC., and PEET'S COFFEE, INC.,<br><br>    Defendants. | Case No. 3:23-cv-01996-VC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON ORDER RE MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Vince Chhabria |

I.    **Plaintiffs Miguel Cordero and Abby Lineberry have shown exceptional commitment to the class.**

Throughout this litigation, Plaintiffs have diligently represented the proposed class by actively participating in every stage of the proceedings. They each completed full-day depositions and provided comprehensive responses to multiple rounds of written discovery. With only a few days' notice, both immediately contacted their bosses to request time off work and traveled from out of town to be cross-examined in open court, demonstrating their commitment to pursuing these claims on behalf of the entire class. And they have clearly articulated the specific harm caused by this surveillance, which is explicitly recognized under California privacy law. *See*, *e.g.*, (Ex. 49, 62:14-63:11, 65:13-67:4); (Ex. 50, 20:5-24) (Brenda Hill explaining she is upset her family's personal information is in AddShoppers' system).

II.    **AddShoppers tracked Cordero and Lineberry across many websites.**

AddShoppers does not meaningfully dispute Cordero and Lineberry were tracked across numerous websites. (Class Cert. Reply at 24). For example, Lineberry first learned of AddShoppers after receiving an email containing the exact product she viewed shortly after visiting Medterra's website for work.[1] This tracking makes Lineberry an adequate representative for the injunctive relief class.

III.    **Lineberry is a typical and adequate class representative.**

   A.    **Lineberry consistently testified she visited Dia's website on April 10, 2022.**

AddShoppers' data shows it captured the content of Lineberry's visit to Dia's website on April 10, 2022.[2] Lineberry has consistently testified that she visited the site, and that it was typical

---

[1] AddShoppers may argue Lineberry is not an adequate representative because she deleted her browsing history after experiencing significant phone problems. (Ex. 49, 72:10-73:1). But that argument fails. Lineberry has already produced objective evidence that AddShoppers tracked her on Medterra's website (Ex. 51), and any alleged document retention concerns can be addressed through standard discovery procedures.

[2] AddShoppers database currently contains about ███ email addresses with product or cart content from Dia's website and a public address geolocated to California. *See* (Ex. 52, Interrogatory No. 17).

of her browsing habits to add items to her cart. (Ex. 27). During her deposition, Lineberry testified unequivocally that she remembered visiting Dia's website (as opposed to other websites she did not recall visiting). (Reply at 27). At the hearing, she again testified that she visited Dia's website (a plus-size clothing retailer) upon her mother's recommendation. (Ex. 49, at 73:12-74:6 89:2-23).

AddShoppers' attempt to attribute Lineberry's website visit to Brenda Hill failed. Ms. Hill, a disinterested third party, testified unequivocally—including in response to the direct Court's questioning—that she never visited Dia.com and did not shop online for plus-size clothing. (Ex. 50, 12:4-20, 13:23-14:1, 17:12-18:6, 21:3-11).

### B.  AddShoppers arguments against Lineberry reinforce her typicality.

Despite trying to pin the site visit on Ms. Hill, AddShoppers has argued in other contexts that it regularly associates devices with the wrong email address. (Reply at 17-19). AddShoppers "will no doubt assert the same defense" about its database against many class members, reinforcing Lineberry's typicality. *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642, 648 (W.D. Wash. 2007); *see also Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 39 (E.D.N.Y. 2008) (finding typicality met where defense would be common to a large number of class members).

A finding that Lineberry fails to meet the preponderance standard would require the Court to disregard not only her consistent and credible testimony, but also the corroborating testimony of Brenda Hill and AddShoppers' own statements regarding the propensity of its tracking system to misassociate devices and email addresses. On this record, the evidence overwhelmingly supports Lineberry's account.

## IV.  Cordero is a typical and adequate class representative.

### A.  The objective evidence proves AddShoppers collected Cordero's browsing activity during his November 9, 2021 Peet's web visit.

Cordero's claim that AddShoppers collected his browsing activity during his November 9, 2021 Peet's visit is proven through substantial, objective corroborating evidence:

1. Peet's selects two advertising campaign types: browse abandon and cart abandon. Both campaign types *require* AddShoppers to collect detailed browsing activity. So

Peet's configures the tracking pixel to send detailed browsing activity to AddShoppers' servers when a web visitor adds an item to their cart.

2. When Cordero downloaded his data from AddShoppers' website, it showed he visited Peet's at 2:39 p.m. Pacific on November 9, 2021.

3. Cordero's personal browsing history shows he viewed a chicken waffle sandwich on Peet's website at 2:39 p.m. Pacific on November 9, 2021.

4. AddShoppers' database spreadsheet produced in discovery shows Cordero visited Peet's website at 2:39 p.m. Pacific on November 9, 2021.

5. Richard Smith's testing shows the tracking pixel sends detailed browsing activity to AddShoppers' servers when the behavioral triggers are met.

6. AddShoppers' database records a "true" cart value for Cordero's visit to Peet's website, suggesting he triggered the tracking pixel by adding something to his cart.

AddShoppers' contends its database does not contain a URL of Coredero's product, so content must not have been captured. But that account does not fit the objective evidence. First, Peet's campaign configuration required AddShoppers to collect and transmit detailed content data—such as product views and cart activity—as a condition of operating both its "browse abandon" and "cart abandon" campaigns. It is undisputed that Cordero's visit was recorded by AddShoppers, which means the tracking pixel was triggered and content data was necessarily transmitted. Second, AddShoppers offers no plausible explanation for why its database reflects a "true" cart value associated with Cordero's visit, which strongly suggests that product content was in fact captured, even if the URL was not stored indefinitely. At bottom, this presents a factual dispute about how AddShoppers stores and presents its data, making it appropriate for resolution at summary judgment—not a reason to find Cordero atypical. Indeed, Cordero's position is not unique. AddShoppers' own database includes at least █████ emails associated with California IP addresses users whose browsing activity was captured and whose records reflect a "true" cart

value,[3] placing them in the same evidentiary posture. *See Hadley v. Kellogg Sales Co.*, 324 F.Supp.3d 1084, 1119 (N.D. Cal. 2018) (Koh, J.) (finding adequacy met despite credibility issues where evidence showed class membership); *accord Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 632 (N.D. Cal. 2014) (credibility less relevant where court could look at objective evidence).

### B. Cordero's testimony is consistent with the objective evidence that AddShoppers' collected his browsing activity during his November 9, 2021 Peet's web visit.

Cordero has consistently testified about his November 9, 2021 visit to Peet's website. In his declaration, Cordero stated he accessed Peet's website on November 9, 2021. (Ex. 29). During his deposition, Cordero repeatedly confirmed he visited the website on November 9, 2021. (Reply at 25). And during the Court's evidentiary hearing, Cordero testified he visited the Peet's website on November 9, 2021. (Ex. 49, 30:19-34:19).

The Court should not fault Cordero for recalling more details about his website visit after reviewing his personal browsing history. *Wilcox v. Swapp*, 330 F.R.D. 584, 593 (E.D. Wash. 2019). Indeed, the Federal Rules of Evidence explicitly recognize that documents can refresh a witness's recollection. *See* FRE 612. His browsing history simply reminded him that he added the chicken waffle sandwich to his cart. Cordero's declaration was not inconsistent with this testimony; he initially stated that he "typically browse[d] multiple pages and product listings when visiting retail pages."[4] (Ex. 29); *See In re Talis Biomedical Corp. Sec. Litig.*, 2024 WL 536303, at

---

[3] *See* (Ex. 52, Interrogatory No. 19). AddShoppers' database also contains approximately ███ email addresses that have a "true" cart value and are associated with public IP addresses geolocated to California. From this total, Plaintiffs have subtracted the roughly ███ email addresses that currently contain product or cart content from Peet's website and are associated with public IP addresses geolocated to California.

[4] *Accord Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *8-9 (C.D. Cal. Sept. 23, 2020) (plaintiffs adequate where they could remember purchase "admittedly with some stumbles"); *Orshan v. Apple Inc.*, 2024 WL 4353034, at *10 (N.D. Cal. Sept. 30, 2024) (Davila, J.) (inconsistent testimony about relevant events that happened years ago did not render plaintiff inadequate).

4

*5 (N.D. Cal. Feb. 9, 2024) (finding no direct inconsistencies between interrogatory answers and testimony). "This type of memory lapse does not expose [plaintiff] to a unique defense of credibility that might defeat typicality." *Wilcox*, 330 F.R.D. at 593. Rather, Cordero "supplemented the facts as his memory of the events in question became clearer." *Id.* (cleaned up). His testimony has never cast doubt on whether he visited Peet's website on November 9, 2021.

### C. AddShoppers' declaration is insufficient to overcome Plaintiffs' substantial evidence showing they were tracked.

Nor should Plaintiffs' credibility be examined in isolation. As in most litigation, AddShoppers has its own credibility issues. For example, AddShoppers has defended this case by claiming it tracks devices rather than people—an argument so implausible that even AddShoppers' witnesses couldn't maintain consistency in their statements. (Reply at 18 n.24). AddShoppers also represented to the Court that Lineberry did not visit Dia's website and instead attempted to attribute the visit to Ms. Hill—even though Ms. Hill had already informed AddShoppers' counsel that she had never visited the site (which she reaffirmed in open court). (Ex. 50, 18:9-19:18). Against this backdrop of inconsistencies and the weight of evidence against it, AddShoppers offers only a declaration stating little more than "we didn't collect Cordero's browsing activity because it is not currently in the database." A jury could reasonably reach a different conclusion.

### D. The Court's credibility concerns about a visit to Peet's website unrelated to his claim do not render him not typical or inadequate.

The Court also raised credibility concerns about Cordero's visit to Peet's in July 2024. But that visit is irrelevant to his CIPA claim, which is premised only on his earlier 2021 visit. In any event, "credibility problems do not automatically render a proposed class representative inadequate." *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) (Chen, J.). Instead, "only when attacks on credibility of the representative are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class member inadequate." *Id.* So "a finding of inadequacy based on the representative plaintiff's credibility is only appropriate where the representative's credibility is seriously questioned on issues directly relevant to litigation or there are confirmed examples of dishonesty, such as criminal convictions or fraud."

*Lee v. Pep Boys-Manny Moe & Jack of California*, 2015 WL 9480475, at \*9 (N.D. Cal. Dec. 23, 2015) (Corley, J.) (quotations omitted). "Even if [Cordero] faced credibility concerns, those issues would not destroy typicality." *DZ Reserve v. Meta Platforms, Inc,* 96 F.4th 1223, 1239 (9th Cir. 2024). Cordero's July 2024 Peet's visit has no relevance to his claims because CIPA does not allow for retroactive consent. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at \*2 (9th Cir. May 31, 2022) (unpublished). These credibility concerns therefore "are not directly relevant *to the claims related to the [November 2021 visit]*." *Harris*, 753 F.Supp.2d at 1015 (emphasis in original). Cordero can prevail on his claim that AddShoppers tracked him during his November 2021 visit even if the jury does not believe his reasons for visiting Peet's website in July 2024. As a result, "credibility problems regarding [this visit] does not render [Cordero] an inadequate representative." *Id.* at 1016.

Indeed, courts in this district consistently reject similar adequacy challenges.[5] For example, in *McArdle v. AT&T Mobility LLC*, the court ruled credibility concerns were insufficient to disqualify a plaintiff as class representative, even though an arbitrator had previously found him "not credible" regarding his phone usage in Italy. 2018 WL 6803743, at \*7 (N.D. Cal. Aug. 13,

---

[5] *See*, *e.g.*, *Simon v. City and County of San Francisco*, 2024 WL 590360, at \*19 (N.D. Cal. Feb. 13, 2024) (Tigar, J.) (omissions in communications do not rise to disqualifying level); *Miller v. Travel Guard Group, Inc.*, 2023 WL 7106479, at \*10 (N.D. Cal. Sept. 15, 2023) (Thompson, J.) (inconsistencies are grounds for cross-examination, not disqualification); *In re JUUL Labs, Inc. Marketing Sales Practices and Prods. Liab. Litig.*, 609 F.Supp.3d 942, 966 (N.D. Cal. 2022) (Orrick, J.) (ambiguous testimony does not disqualify plaintiff); *Corcoran v. CVS Health*, 2019 WL 6250972, at \* (N.D. Cal. Nov. 22, 2019) (verified "inconsistencies provide ground for cross-examination, but do not warrant a finding of atypicality"); *Swamy v. Title Source, Inc.*, 2018 WL 1586139, at \*2 (N.D. Cal. Apr. 2, 2018) (Alsup, J.) (rejecting credibility attack based on inconsistencies between testimony and declarations); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at \*7 (N.D. Cal. July 15, 2016) (Gonzalez Rogers, J.) (rejecting credibility attack despite conflicting discovery responses); *Palana v. Mission Bay Inc.*, 2015 WL 4110432, at \*4 (N.D. Cal. July 7, 2015) (Illston, J.) (credibility issues not directly relevant to litigation insufficient); *Rodman v. Safeway*, Inc., 2014 WL 988992, at \*15 (N.D. Cal. Mar. 10, 2014) (Tigar, J.) (rejecting challenge despite inconsistent statements under oath); *Greko v. Diesel USA, Inc.*, 277 F.R.D. 419, 426–27 (N.D. Cal. 2011) (Seeborg, C.J.) (rejecting inconsistencies); *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at \*8 (N.D. Cal. June 7, 2011) (White, J.) (holding credibility undermines adequacy only when directly related to litigation or with "confirmed examples of dishonesty").

2018). Likewise, in *Ries v. Arizona Beverages USA LLC*, when faced with inconsistencies in a plaintiff's testimony about her understanding of high fructose corn syrup in AriZona Iced Tea, the court determined this was a credibility issue for the trier of fact to assess, not a disqualifying defect in her ability to demonstrate reliance on the "All-Natural" label claims. 287 F.R.D. 523, 531 (N.D. Cal. 2012) (Seeborg, J.). This Court has also held that credibility challenges must address core testimony essential to the fundamental claim for relevancy. *Wallenstein v. Mondelez Int'l, Inc.*, 2024 WL 4293904, at *1 (N.D. Cal. Sept. 25, 2024).

Courts have found named plaintiffs inadequate due to credibility issues only in limited cases involving material misrepresentations central to the claims. For instance, in *Fosmire v. Progressive Max Ins. Co.*, the named plaintiff's material misrepresentations on her insurance application could have provided a defense to coverage for the defendant insurer. 277 F.R.D. 625, 633 (W.D. Wash. 2011). Such findings require direct evidence of inconsistencies. In *Guido v. L'Oreal, USA, Inc.*, the plaintiff produced new evidence contradicting prior testimony one day before the class certification hearing.[6] 2012 WL 2458118, at *4 (C.D. Cal. June 25, 2012). Simply put, "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished." *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990).

The Court's concerns about adequacy and typicality appear to rest primarily on factual disputes—namely, whether Lineberry visited Dia.com and whether AddShoppers captured content from Cordero's initial visit to Peet's. These questions are not unique to these plaintiffs; they implicate broader questions that will apply across the class. Plaintiffs therefore would not oppose frontloading summary judgment on these discrete issues, either before or after certification, as doing so would assist in addressing the Court's concerns without undermining the class's ability to seek relief on common grounds.

---

[6] *See also Bohn v. Pharmavite, LLC*, 2013 WL 4517895, at *2-3 (C.D. Cal. Aug. 7, 2013) (the plaintiff's inconsistent testimony her ability to prove her own reliance, she "failed to conduct basic due diligence," and had "an eight-year friendship [with counsel] involving weekly gatherings.").

Dated: April 18, 2025                    Respectfully submitted,

                                         /s/ *Kasey A. Youngentob*
                                         Norman E. Siegel (*pro hac vice*)
                                         J. Austin Moore (*pro hac vice*)
                                         Kasey Youngentob (*pro hac vice*)
                                         **STUEVE SIEGEL HANSON LLP**
                                         460 Nichols Road, Suite 200
                                         Kansas City, Missouri 64112
                                         (816) 714-7100 (tel.)
                                         siegel@stuevesiegel.com
                                         moore@stuevesiegel.com
                                         youngentob@stuevesiegel.com

                                         David M. Berger (SBN 277526)
                                         **GIBBS LAW GROUP LLP**
                                         1111 Broadway, Suite 2100
                                         Oakland, California 94607
                                         Telephone: (510) 350-9713
                                         Facsimile: (510) 350-9701
                                         dmb@classlawgroup.com