MORGAN, LEWIS & BOCKIUS LLP
Megan A. Suehiro, Bar No. 316104
megan.suehiro@morganlewis.com
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

Phillip J. Wiese, Bar No. 291842
phillip.wiese@morganlewis.com
M. Abigail West, Bar No. 324456
abigail.west@morganlewis.com
Alexandra M. Gonsman, Bar No. 339361
alexandra.gonsman@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

Ezra D. Church (*pro hac vice*)
ezra.church@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel:    +1.215.963.5000
Fax:    +1.215.963.5001

Attorneys for Defendant
PEET'S COFFEE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBY LINEBERRY, TERRY MICHAEL COOK, and MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADDSHOPPERS, INC. and PEET'S COFFEE, INC.,<br><br>Defendants. | Case No. 3:23-cv-01996-VC<br><br>**DECLARATION OF MEGAN A. SUEHIRO IN SUPPORT OF DEFENDANT PEET'S COFFEE, INC.'S SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>Ctrm:    4 – 17th Floor<br>Judge:    Hon. Vince Chhabria |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DECL. ISO SECOND SUPP. BRIEF
IN OPP. TO CLASS CERTIFICATION
3:23-CV-01996-VC

I, Megan A. Suehiro, declare as follows:

1.       I am a partner at the law firm of Morgan, Lewis & Bockius LLP, which is counsel of record for Defendant Peet's Coffee, Inc. ("Peet's") herein.  I am an attorney admitted to practice in the State of California and am admitted to practice before this Court.  I submit this declaration in support of Peet's Second Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification and Motion to Exclude Expert Testimony filed concurrently herewith.  I have personal knowledge of the matters stated herein and can testify competently thereto.

2.       Attached hereto as **Exhibit A** is a true and correct copy of excerpts from the transcript of the evidentiary hearing proceedings held in this action on March 21, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of April 2025 at Los Angeles, California.

Dated: April 18, 2025                        MORGAN, LEWIS & BOCKIUS LLP

                                         By  */s/ Megan A. Suehiro*
                                              Megan A. Suehiro

Morgan, Lewis &
Bockius LLP
Attorneys at Law

1

DECL. ISO SECOND SUPP. BRIEF
IN OPP. TO CLASS CERTIFICATION
3:23-CV-01996-VC

EXHIBIT A

Volume 1

Pages 1 - 108

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
ABBY LINEBERRY, TERRY MICHAEL   )
COOK, and MIGUEL CORDERO,       )
individually and on behalf of   )
all others similarly situated,  )
                                )
            Plaintiffs,         )
                                )
   VS.                          )   NO. 3:23-CV-01996 VC
                                )
ADDSHOPPERS, INC., and PEET'S   )
COFFEE, INC.,                   )
                                )
            Defendants.         )
_____)
```

San Francisco, California
Friday, March 21, 2025

**TRANSCRIPT OF EVIDENTIARY HEARING PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    STUEVE SIEGEL HANSON
                    460 Nichols Road, Suite 200
                    Kansas City, Missouri  64112
            BY:  **J. AUSTIN MOORE, ATTORNEY AT LAW**
                 **KASEY YOUNGENTOB, ATTORNEY AT LAW**

                    GIBBS LAW GROUP LLP
                    1111 Broadway, Suite 2100
                    Oakland, California 94607
            BY:  **DAVID M. BERGER, ATTORNEY AT LAW**

            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant AddShoppers, Inc.:

3                          WOMBLE BOND DICKINSON (US) LLP
                           50 California Street, Suite 2750
                           San Francisco, California 94111
4                    BY:  **TOMIO B. NARITA, ATTORNEY AT LAW**
                          **VICTORIA M. CATAPANG, ATTORNEY AT LAW**
5                         **R. TRAVIS CAMPBELL, ATTORNEY AT LAW**
                          **JEFFREY A. TOPOR, ATTORNEY AT LAW**

6

7                          BRANN & ISAACSON
                           184 Main Street, Fourth Floor
8                          Post Office Box 3070
                           Lewiston, Maine 04243-3070
9                    BY:  **DAVID WALLER BERTONI, ATTORNEY AT LAW**

10

11   For Defendant Peet's Coffee, Inc.:

                           MORGAN, LEWIS & BOCKIUS LLP
12                         2222 Market Street
                           Philadelphia, Pennsylvania 19103
13                   BY:  **EZRA D. CHURCH, ATTORNEY AT LAW**

14                         MORGAN, LEWIS & BOCKIUS LLP
                           300 South Grand Avenue, 22nd Floor
15                         Los Angeles, California 90071
                     BY:  **MEGAN A. SUEHIRO, ATTORNEY AT LAW**
16
                           MORGAN, LEWIS & BOCKIUS LLP
17                         One Market Plaza
                           Spear Street Tower
18                         San Francisco, California 94105
                     BY:  **PHILLIP J. WIESE, ATTORNEY AT LAW**
19

20   Also Present:        **Eugene Chang, Director of Legal**
                          **Peet's Coffee, Inc.**
21

22

23

24

25

<pre>
 1                          I N D E X

 2

 3   Friday, March 21, 2025 - Volume 1

 4

 5   PLAINTIFFS' WITNESSES                      PAGE   VOL.

 6   CORDERO, MIGUEL
     (SWORN)                                      6     1
 7   Cross-Examination by Mr. Narita              7     1
     Cross-Examination by Mr. Church             58     1
 8   Redirect Examination by Mr. Youngentob      61     1

 9

10   LINEBERRY, ABBY
     (SWORN)                                     69     1
11   Cross-Examination by Mr. Narita             70     1
     Redirect Examination by Mr. Moore          91     1
12   Recross-Examination by Mr. Narita          99     1

13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

PROCEEDINGS

```
 1                (Witness steps forward to be sworn.)

 2           MR. NARITA:  Your Honor, question.  Are we invoking

 3    the rule today?  Because we do have --

 4           THE COURT:  Are we what?

 5           MR. NARITA:  Well, Ms. Lineberry is in the audience.

 6    Shall she remain, or do you want her in the courtroom?

 7           THE COURT:  I don't have strong feelings about it.

 8    What are you all -- what do you think?

 9           MR. NARITA:  Well, I mean, I think it's up to

10    the Court's discretion.

11           THE COURT:  I don't care.  So if nobody -- if

12    everybody is okay with Ms. Lineberry being in here for

13    Mr. Cordero's testimony and vice versa, it's fine with me.

14           MR. MOORE:  We're fine with it.

15           MR. NARITA:  Then there's no objection from

16    AddShoppers, Your Honor.

17           THE COURT:  Okay.

18       Hi.

19           THE WITNESS:  Good morning.

20                        MIGUEL CORDERO,

21    called as a witness for the Plaintiffs, having been duly sworn,

22    testified as follows:

23           THE WITNESS:  I do.

24           THE COURTROOM DEPUTY:  Can you please state your name

25    and spell your last name for the record.
```

CORDERO - CROSS / NARITA

1      **THE WITNESS:**  Yes.  Miguel Cordero.  Last name is

2   C-o-r-d-e-r-o.

3      **THE COURTROOM DEPUTY:**  Thank you.

4      **THE COURT:**  Okay.  You can proceed.

5      **MR. NARITA:**  Thank you, Your Honor.

6                    **CROSS-EXAMINATION**

7   **BY MR. NARITA:**

8   **Q.**  Good morning, Mr. Cordero.

9   **A.**  Good morning.

10  **Q.**  Thank you very much for being with us today.

11  **A.**  Thank you.

12  **Q.**  I don't think we've met before.  I'm Tomio Narita.  I'm

13  one of the lawyers for AddShoppers in this case.

14  **A.**  Pleasure to meet you.

15  **Q.**  Likewise.

16      Sir, we're here to talk about browsing and emails and lots

17  of things.  I just want to get a few basic facts squared away

18  for the record.

19  **A.**  Okay.

20  **Q.**  So you told us in the last five years that you've had

21  three email addresses that you've used; right?

22  **A.**  Correct, yes.

23  **Q.**  Okay.  And I don't have to read them into the record, but

24  one of them is a Gmail address; correct?

25  **A.**  Correct.  Yes, it is.

CORDERO - CROSS / NARITA

1  **Q.**   And one of them is a Yahoo! email address; correct?

2  **A.**   Correct.

3  **Q.**   And then the third one is a Hotmail address; correct?

4  **A.**   Correct.

5  **Q.**   Okay.  And you've looked through your records that you

6  have available to you for any emails that were sent to any of

7  those accounts that relate to this case; right?

8  **A.**   Correct, yes.

9  **Q.**   You've done searches?

10  **A.**   I have, yes.

11  **Q.**   And in connection with the searches that you've done,

12  you've not found any emails sent to you by Peet's; correct?

13  **A.**   By Peet's, no.

14  **Q.**   Okay.

15  **A.**   Correct.

16  **Q.**   And you've not found any emails sent to you by SafeOpt.com

17  on behalf of Peet's, have you?

18  **A.**   No, I have not.

19  **Q.**   Okay.  And you've done a diligent search; right?

20  **A.**   I have, yes.

21  **Q.**   Okay.  And that's consistent with the records that you've

22  seen that AddShoppers has produced in this case; right?  You've

23  seen some of those records?

24  **A.**   Yes, I have.

25  **Q.**   And none of those records show that AddShoppers

1  transmitted any emails to you on behalf of Peet's, do they?

2  **A.**   No, not that I've seen.

3  **Q.**   Okay.  But you did get some emails from AddShoppers;

4  right?  Because you've produced those to us.

5  **A.**   Correct.  That's correct.

6  **Q.**   Okay.  And the first one that you got, we can take a look

7  at, was actually, over three years ago, you got an email sent

8  by SafeOpt.com on behalf of a website called EveryPlate.com;

9  right?

10            **THE COURT:**  Every what?

11            **MR. NARITA:**  EveryPlate, Your Honor.

12  **BY MR. NARITA:**

13  **Q.**   Isn't that correct, sir?

14  **A.**   I would have to see it.  I don't remember that off --

15  **Q.**   Okay.

16  **A.**   -- the top of my --

17  **Q.**   We're going to --

18  **A.**   -- head.

19  **Q.**   We're going to try and find that --

20  **A.**   Okay.

21  **Q.**   -- for you.

22            **MR. NARITA:**  Ms. Catapang, could we try and find a

23  copy of the email that Mr. Cordero produced to us that he

24  received from SafeOpt.  I believe it was Exhibit 5 to his

25  deposition on December 30th, 2021.  It was his email.

1   **A.**   I did.  I was a customer for them probably -- probably a

2   year or so.

3   **Q.**   You signed up for some sort of a meal kit?

4   **A.**   Yes, that's what it was, a meal kit.  It was kind of -- I

5   did kind of pay it as I wanted to, kind of skipped some, did

6   others.  But that was probably over a year, maybe a year and a

7   half maybe.

8   **Q.**   Okay.  And, again, just looking at -- before we leave this

9   send history, there's nothing -- if you look at the websites in

10  Column G there, sir, there's nothing in there indicating any

11  send history on behalf of Peets.com, is there?

12  **A.**   No, there is not.

13  **Q.**   And that's consistent with your records because you looked

14  for emails that you might have received from my client or from

15  Peet's and you didn't find any; right?

16  **A.**   Correct, I did not -- I don't remember ever seeing a

17  Peet's email.

18  **Q.**   Got it.

19      Do you have some special reason to doubt, sir, that you,

20  in fact, clicked on that promotional email that my client sent

21  you and that was part of your, you know, saving some money to

22  make that purchase from EveryPlate?

23          **MR. MOORE:**  Object.  Asked and answered.

24          **THE COURT:**  Overruled.

25          **THE WITNESS:**  Do I have any doubts?  I just don't

1    conduct this search?

2    **A.**    That is correct.  And specifically, I went to my Google

3    account and selected the tab for my activity, and that's -- so

4    it's kind of searching for any activity related to Peet's.

5    **Q.**    Okay.  So is it your understanding, then, that this search

6    parameter that you entered into Google would have picked up any

7    search activity that Google had a record of that reflected

8    browsing history at Peet's?

9    **A.**    Correct.  And, actually, it goes into more depth than

10   that, because when I was searching for another item -- I think

11   it was for AutoQuote.com or something like that -- it even

12   shows you if I had an app, and it would show -- it would even

13   show the history of me selecting that app and using that app.

14       So if I had the Peet's app on my phone, it would also show

15   it on there that I used it.

16   **Q.**    Okay.  But as far as you know, this is a comprehensive

17   list of all the times that you browsed the Peet's site during

18   this time period from any device; right?

19   **A.**    As far as I'm aware, yes, as long as I -- as long as

20   Google captured it, because it's Google's activity.

21   **Q.**    Okay.  And so there's an entry there for November 9th,

22   2021; right?

23   **A.**    That is correct, yes.

24   **Q.**    Okay.  And that's the -- isn't that the famous chicken

25   waffle sandwich, sir?

1   A.    It is, yes.

2   Q.    What do you understand is reflected on this entry,

3   November 9th, 2021, sir?

4   A.    So it is my understanding that that is -- I searched for

5   "chicken waffle sandwich from Peet's."  And what this is

6   reflecting is I did a Google search.  And I think specifically

7   on my phone, there is -- on the very first page, once you open

8   up my phone, has a Google search bar, so it's quicker access to

9   the Internet.  And so I searched for "chicken waffle sandwich

10  from Peet's," and it sent me to that -- to that page on Peet's,

11  is what my understanding is.

12  Q.    Okay.  But that doesn't -- that entry that we're looking

13  at right now doesn't say anything about whether you put

14  anything in a cart when you got to the Peet's site on that day,

15  does it?

16  A.    While this result doesn't, I do remember adding it to the

17  cart to see kind of taxes, how much it would be, allergen

18  information, things of that nature.

19  Q.    Okay.  So you now remember adding a chicken waffle

20  sandwich to a cart on November 9th, 2021, to see how much it

21  would cost and what the tax would be?

22  A.    I do, yeah.  And that's based on patterns of -- I did it

23  with Cruise America, for example, where how much an RV would

24  be.  So I do it fairly often, to see how something -- how

25  something costs -- how much it costs.  And I do remember doing

1    THE WITNESS:  I think in the -- in the cart, it's

2    mostly about the price; but I do remember -- if I remember

3    correctly, the landing page on the chicken and waffle sandwich

4    had, like, allergen information.  So it wasn't necessarily

5    about the cart, but I think what I mean by that is just

6    searching for that item.  But the cart is me selecting it

7    for -- to see the total price.

8         THE COURT:  Sorry.  I just want to make sure I have it

9    clear.  So are you saying that you didn't put the product in

10   the cart to discern allergen information?  You put it in the

11   cart to discern the price?

12        THE WITNESS:  That is correct, yes.  Yes.

13        THE COURT:  Okay.  And so allergen information, you're

14   saying you could -- and I'm not meaning to put words in your

15   mouth, so don't hesitate to correct me if I'm misunderstanding.

16        THE WITNESS:  Sure thing.

17        THE COURT:  But for allergen information, you would

18   just click on the product and learn about the ingredients?

19        THE WITNESS:  That is correct, yeah, because if I

20   remember correctly, Peet's -- you search for an item, and then

21   it'll kind of give you the ingredients in that -- in this -- I

22   don't know if it does it for coffee, but in this, it shows you

23   the ingredients.  And then I would put it in the cart to see

24   the price.  So I think it says all the ingredients before that,

25   if I recall correctly.

1    Crocker Village.  It's about, I would say, a five-,

2    ten-ish-minute drive from my apartment.

3    Q.    Okay.  And were you a frequent customer at the shop, your

4    local Peet's, in November of 2021?

5    A.    Frequent?  No.  Probably a handful of times maybe.

6    Q.    You enjoy their coffee?

7    A.    It's pretty good.  I like the, as you can see here, Iced

8    Havana Cappuccino too, so...

9    Q.    Did you ever wind up trying that chicken waffle sandwich?

10   A.    I did eventually, yeah.  I don't remember how long after

11   that, though.

12   Q.    Do you think you just got it at the local Peet's?

13   A.    Probably.  If I had to guess, it'd probably be the Crocker

14   Village Peet's.

15   Q.    But that would just be a guess; right?

16   A.    Yeah.  That would be just kind of a feeling.

17   Q.    Okay.  And on November 9th, 2021, did you navigate to any

18   other pages on the Peet's website?

19   A.    I don't recall that, unfortunately.

20   Q.    There's none -- there's none shown in your -- in your

21   Google history; right?  There's just the one -- the one thing

22   shown in your Google history; right?

23   A.    That is correct, yes.

24   Q.    So does that suggest to you that that's just the only --

25   the only page that you -- that you clicked on?

1   A.   Yes.   That's all I would have to go on.   I don't remember

2   anything else.

3        MR. NARITA:   Okay.   And then let's scroll up a little

4   bit on this document that you produced.

5        A little bit higher.   A little bit higher.   Right there.

6        A little bit farther down now.   July 23, twenty- -- a

7   little farther down, Ms. Catapang.

8        Yeah, right there.

9   BY MR. NARITA:

10  Q.   So now, there's some more entries here, aren't there?

11  A.   Correct, yes.

12  Q.   And they're all on July 23rd, 2024; right?

13  A.   Correct, yes.

14  Q.   That was the same day that Mr. Youngentob called you to

15  give you that status update on how this litigation was going

16  against AddShoppers and Peet's; right?

17  A.   I believe so.   According to the declaration, yes.

18  Q.   And according to your memory too; right?

19  A.   Correct, yes.

20  Q.   So on the day that Mr. Youngentob called you and gave you

21  that status update on this litigation, it looks like you went

22  to a bunch of product pages at Peet's site on that day; right?

23  A.   That is correct, yes.

24  Q.   And you hadn't been there for almost three years?

25  A.   Correct, yes.

1    Q.    That's a funny coincidence, isn't it, Mr. Cordero?

2    A.    Well, not so funny in the sense that it wasn't until a

3    couple of days -- so on July 23rd, one of the specific things

4    that Mr. Youngentob requested was that I request my data

5    specifically for Gmail, because that's when I noticed that I

6    got the SafeOpt email from In-Shape.

7          And it wasn't until I received that data that I saw Peet's

8    at all on my -- that they were tracking me.

9          So the data probably came in a day, maybe two days after

10   that.  So I don't -- at this point in time, while it is the

11   same date, I had no idea that Peet's was tracking me.

12   Q.    Okay.  But a little bit different question.  Don't you

13   find it to be a funny coincidence, Mr. Cordero, that on the day

14   that Mr. Youngentob called you to give you an update on the

15   status of this litigation, that for the first time in nearly

16   three years, you went and hit four different product pages on

17   the Peet's website?

18   A.    Just a coincidence, I suppose.  It was -- I remember in my

19   deposition, I said that I was shopping -- I like to do

20   Christmas shopping or at least I like to think about what I'm

21   going to get people for Christmas.  One of the things I look at

22   is bagged coffee, things of that nature.

23         So cosmically a coincidence, but not anything nefarious or

24   anything.

25   Q.    Nothing nefarious about it, but by some cosmic

CORDERO - CROSS / NARITA

1    coincidence, on the day that Mr. Youngentob called you to give

2    you an update on this case, you decided to do some Christmas

3    shopping on a website that you hadn't been on in three years;

4    right?

5    **A.**    That is correct, yeah.

6    **Q.**    In late July of 2024; right?

7    **A.**    Correct.  At this point in time, I didn't know Peet's was

8    tracking me.  So Peet's -- I had been a customer from them,

9    you know, on and off at Crocker Village.  I had nothing -- I

10   had no bad experiences with Peet's before.

11   **Q.**    Mr. Cordero, weren't you just deliberately trying to

12   trigger an email to be sent to you by SafeOpt on behalf of

13   Peet's that day?

14   **A.**    Absolutely not.

15   **Q.**    That's not what you were doing?

16   **A.**    Nope.

17   **Q.**    And then, so after this burst of activity that we see here

18   on the Peet's website, a day or two later you request your data

19   from my client; right?

20   **A.**    A day or two from this date?

21   **Q.**    Yeah.

22   **A.**    No.  I requested it that day, if I remember correctly.  It

23   took a day or two after that for AddShoppers to comply with my

24   request.

25   **Q.**    Okay.  So on the same day that you hit the Peet's website

1   four times and looked at four different products, the same day

2   you talked to Mr. Youngentob, you logged in and got your data

3   from AddShoppers.  Is that your testimony?

4   **A.**   That is, yes.

5   **Q.**   Okay.  And then when it came back, you looked at it;

6   right?

7   **A.**   I did, yes.

8   **Q.**   And did it show the activity that you had had on the

9   previous day?

10   **A.**   It did not.  It only showed the November 9th, 2021,

11   instance.

12   **Q.**   Were you disappointed?

13   **A.**   No.  I barely knew how to read the data.  You know,

14   looking at it, it's not very user-friendly.  So I didn't --

15   **Q.**   You just turned it over to Mr. Youngentob; right?

16   **A.**   I did, yes.

17   **Q.**   Okay.  Did he express some disappointment?

18   **A.**   No.

19   **Q.**   And after you hit the Peet's website and looked at four

20   different products on July 23rd, 2024, did you get a

21   promotional email from my client, AddShoppers?

22   **A.**   No.  Not from Peet's, no.

23   **Q.**   And not from SafeOpt.com either; right?

24   **A.**   No.

25   **Q.**   Did you give some Peet's coffee out for Christmas presents

1    that year?

2    **A.**    No, I did not.

3    Q.    Now, the next thing that you did after these searches for

4    products on the Peet's website was, a couple of weeks later,

5    you filed a lawsuit; right?

6    **A.**    Yes, I believe so.  I'm not aware of the -- I don't recall

7    the timing specifically.

8    Q.    It was August 9th, 2024, you filed a different

9    class action lawsuit in Utah; and Mr. Youngentob was, and still

10    is, your lawyer in that case.  Right?

11    **A.**    That is correct, yes.

12    Q.    And you're there as the named class representative in that

13    class action; correct?

14    **A.**    That is correct, yes.

15    Q.    And in that class action, you're seeking to represent a

16    class of people who had their browsing history tracked by

17    AddShoppers while they were in California; correct?

18    **A.**    That is correct.

19        **MR. NARITA:**  Okay.  Can we take a look at that

20    complaint.

21        Go up to the top real quick so Mr. Cordero can see the

22    date.

23    **BY MR. NARITA:**

24    Q.    Do you see the date that's printed across the top of that

25    document, Mr. Cordero?

1  a chicken waffle sandwich, do you?

2  **A.**    No.

3  **Q.**    Why not, sir?

4  **A.**    I hadn't done a search at that point with my Gmail.  So at

5  the point -- at this point, all we knew was that on

6  November 9th, 2021, I triggered some criteria from Peet's

7  website and that's why it showed up in my data request.  So at

8  this point, we didn't know what specifically I was doing on the

9  website at the time of November 9th, 2021.

10  **Q.**    Okay.  Well, let's break apart that answer for a moment.

11       You said you knew, when you filed this first amended

12  complaint, that something had happened on the Peet's website?

13  **A.**    Just because it was on my data that I requested back in

14  July of that year.  Peet's showed up as -- I think it listed as

15  "Event created," or something along those lines, in the data

16  that I requested.

17  **Q.**    The only thing that showed up in that data was the date

18  and time of a visit to the site; right?

19  **A.**    I believe so, yes.

20  **Q.**    And that was that date.  It was the November 9th, 2021,

21  date; right?

22  **A.**    Yes, that's the date it listed on there.

23  **Q.**    Okay.  So you had that data because you had downloaded it

24  from the AddShoppers site, but you didn't know anything about a

25  chicken waffle sandwich?

1    **A.**    No.    I hadn't done a browsing history search in my

2    activity specifically to see.

3    **Q.**    But, sir, you could have; right?  I mean, you could have

4    just logged into your Google account and done that search --

5    right? -- the one that generated this document?

6    **A.**    I suppose so, yes.  I didn't think to do that.  All this

7    is very new to me.  My first lawsuit.  So I didn't know -- I

8    kind of just followed direction as -- and asked questions as

9    much as I could.

10    **Q.**    Okay.  So you relied on the advice of your attorneys and

11    asked questions when you thought it was appropriate; right?

12    **A.**    Correct, yeah.  I'm in uncharted waters, so I contacted my

13    attorney when I could.

14    **Q.**    Okay.  Fine.  And then there was a -- there was a motion

15    for class certification that was filed in this case; right?

16    **A.**    Correct.

17    **Q.**    That's actually -- we're here in connection with that

18    motion; right?

19    **A.**    Correct, yeah.

20    **Q.**    And then you filed a declaration in support of that

21    motion; right?

22    **A.**    I did, yes.

23    **Q.**    Okay.  And let's take a look at that.  The date is

24    January 7th, 2025; right?  Do you see that date?

25    **A.**    I do, right at the top, yes.

CORDERO - CROSS / CHURCH

1   A.   That is correct, yes.

2   Q.   And the specific claim as to Peet's is that Peet's aided

3   and abetted AddShoppers' alleged collection of detailed

4   browsing activity on the Peet's site.  Is that your

5   understanding?

6   A.   That is my understanding, yes.

7   Q.   You've testified about a lot of data today, and we

8   appreciate your time and patience.

9        I understand your testimony today and in your deposition

10  to be that you requested your data from AddShoppers on three

11  occasions.  Is that right?

12  A.   Yes.  If I recall correctly, yes.

13  Q.   It was November 2023 and then again July 2024 for the two

14  accounts?

15  A.   Yes.  Yes, yes.

16  Q.   And those three requests that you made, you got some data

17  back from AddShoppers; that's right?

18  A.   That is correct, yes.

19  Q.   Those requests show that AddShoppers recorded just one

20  single visit to Peet's website recorded on November 8th, 2021;

21  is that correct?

22  A.   I think it was November 9th, 2021.

23  Q.   November 9th.

24  A.   Yes.

25  Q.   Thank you.

CORDERO - CROSS / CHURCH

1   A.   You're welcome.

2   Q.   No other records of any other visit to Peet's website in

3   the information you received back from AddShoppers; correct?

4   A.   None.   Just that one instance and that one date.

5   Q.   And the only information as to the visit on November 9th,

6   2021, was date and time; is that right?

7   A.   If I remember correctly, yes.

8   Q.   Nothing from those records you received from AddShoppers

9   reflected any specific product?

10  A.   No.   To my recollection, no.

11  Q.   And nothing from those records showed any specific product

12  pages that you viewed; is that right?

13  A.   No.   No.

14  Q.   And nothing from those records showed anything in your

15  Peet's cart; is that right?

16  A.   That is correct.   Nothing in there showed that.

17  Q.   And nothing showed anything you purchased from Peet's

18  website; is that right?

19  A.   No.   It was just very basic.   Some event triggered and it

20  cataloged it.

21  Q.   We saw today in your testimony, I think in responses to

22  the questions that Mr. Narita was asking you, that in

23  July 2023, the same day that you spoke to your attorney, you

24  went to the Peet's website and you looked at some different

25  coffee products.   Do you recall that?

CORDERO - REDIRECT / YOUNGENTOB

1    A.    That is correct, yes.

2    Q.    And there's no information related to those visits that

3    shows up in the AddShoppers data; correct?

4    A.    Not that I can think of.    I was just browsing.    But the

5    only date that's listed on the data that was provided to me by

6    AddShoppers is the November date.

7    Q.    The November 2021 date?

8    A.    2021 date, yes, correct.

9              MR. CHURCH:    Thank you.

10        I don't have anything further.

11             MR. YOUNGENTOB:    Your Honor, as brief housekeeping,

12   Ms. Hill would like to testify today.    So if we can do that

13   after this witness.

14             THE COURT:    After this witness?

15             MR. YOUNGENTOB:    Yes, Your Honor.

16             THE COURT:    Okay.

17             MR. YOUNGENTOB:    Thank you.

18                        <u>REDIRECT EXAMINATION</u>

19   BY MR. YOUNGENTOB:

20   Q.    Thank you, Mr. Cordero.    If you don't mind turning to

21   Tab 13, which I believe is the declaration you were previously

22   shown, if you go to paragraph 6.

23        During that visit, you said, "Because I typically browse

24   multiple pages and product listings when visiting retail

25   websites"; you didn't say, "On that instance, I for sure

1

2                    **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    DATE:  Friday, March 28, 2025

7

8

9

10

11    _____

12          Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG

13        CSR No. 7445, Official United States Reporter

14

15

16

17

18

19

20

21

22

23

24

25